UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DECATUR COUNTY GENERAL HOSPITAL,** 969 Tennessee Avenue South Parsons, TN<br><br>**NORTH MEMORIAL HEALTH CARE,** 3300 Oakdale Avenue North Robbinsdale, MN<br><br>Plaintiffs<br><br>v.<br><br>**MICHAEL O. LEAVITT, Secretary of the United States Department of Health and Human Services,** 200 Independence Avenue, S.W. Washington, D.C. 20201<br><br>Defendant | Case No. |

## COMPLAINT

The above-named Plaintiffs (the "Hospitals"), by and through their undersigned counsel,

state the following in the form of this Complaint against Michael O. Leavitt, Secretary of the

United States Department of Health and Human Services (the "Secretary"):

### NATURE OF THE CASE

1.    The instant action involves a Medicare issue relating to the proper reimbursement

for hospital ambulance services.  The underlying issue for Decatur County General Hospital

("Decatur") relates to the hospital's Medicare reimbursement for ambulance services for fiscal

years ending in 2000 and 2001.  For North Memorial Health Care ("North Memorial"), the

underlying issue relates to the hospital's Medicare reimbursement for ambulance services for the

fiscal year ending in 2000.  The foregoing cost report years for both Decatur and North

Memorial, taken collectively, will hereinafter be referred to as "the Covered Cost Report Years."

      2.      The Hospitals challenge their respective decisions issued by the Administrator for

the Centers for Medicare and Medicaid Services ("CMS") with respect to the Covered Cost

Report Years.  The Administrator issued a single decision covering Decatur's 2000 and 2001

cost report years on June 27, 2007.  The decision is attached as Exhibit "A".  The Administrator

issued a single decision covering North Memorial's 2000 cost report year on June 27, 2007.  The

decision is attached as Exhibit "B".

## JURISDICTION AND VENUE

      3.      This action arises under Title XVIII of the Social Security Act, 42 U.S.C. § 1395

et seq. (the "Medicare Statute"), and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551

et seq.

      4.      This Court has jurisdiction under 42 U.S.C. § 1395oo(f)(1).

      5.      Pursuant to 42 U.S.C. § 1395oo(f)(l), venue for a plaintiff such as these Hospitals

is proper in the United States District Court for the District of Columbia.

## PARTIES

      6.      Decatur is a fully-licensed, acute care hospital located at 969 Tennessee Avenue

South, Parsons, Tennessee.  Decatur's Medicare provider number is 44-0070.

      7.      North Memorial is a fully-licensed, acute care hospital located at 3300 Oakdale

Avenue North, Robbinsdale, Minnesota.  North Memorial's Medicare provider number is 24-

0001.

      8.      Defendant Michael O. Leavitt is the Secretary of the Department of Health and

Human Services, the federal department responsible for the administration of the Medicare and

the Medicaid programs.

## THE MEDICARE PROGRAM

9.    Congress enacted the Medicare Program (Title XVIII of the Social Security Act) in 1965.  As originally enacted, Medicare was a public health insurance program that furnished health benefits to participating individuals once they reached the age of 65.  Over the years, it has been expanded to provide health benefits to qualifying disabled persons and to individuals suffering from end-stage renal disease.

10.    Among the benefits covered by Medicare are hospital services.  For cost reporting years beginning before October 1, 1983, the Medicare Program reimbursed hospital services on a "reasonable cost" basis.  42 U.S.C. § 1395f(b).  Effective with cost reporting years beginning on or after October 1, 1983, Congress adopted a prospective payment system ("PPS") to reimburse most hospitals for inpatient operating costs.  42 U.S.C. § 1395ww(d).  Under PPS, hospitals are paid a fixed amount for each of approximately 490 diagnosis-related groups, subject to certain payment adjustments.

11.    The Secretary has delegated much of the responsibility for administering the Medicare Program to CMS, formerly known as the Health Care Financing Administration (herein collectively referred to as "CMS").  The Secretary, through CMS, contracted out many of his audit and payment functions under Medicare to organizations known as "fiscal intermediaries."

12.    At the close of a fiscal year, a provider of services must submit to its fiscal intermediary a "cost report" showing both the costs incurred by it during the fiscal year and the appropriate share of those costs apportioned to Medicare.  42 C.F.R. § 413.23(f).  The intermediary is required to analyze and audit the cost report and inform the provider of a final

determination of the amount of Medicare reimbursement through a notice of program

reimbursement ("NPR"). 42 C.F.R. § 405.1803.

13.    A provider dissatisfied with its intermediary's determination may file an appeal

with an administrative body called the Provider Reimbursement Review Board ("PRRB") within

180 days of the date of the NPR. 42 U.S.C. § 1395oo(a).

14.    The CMS Administrator may review the PRRB's decision within 60 days of its

issuance. 42 U.S.C. 1395oo(f).

### THE SECRETARY'S REIMBURSEMENT OF AMBULANCE SERVICES

15.    Prior to 1997, ambulance services were reimbursed to hospitals on a reasonable

cost basis. Pursuant to the Balanced Budget Act of 1997, however, Congress enacted a "cap" on

the reimbursement of ambulance services that stated: "during fiscal year 1999, and during so

much of fiscal year 2000 as precedes January 1, 2000, the Secretary shall not recognize the costs

per trip in excess of costs recognized as reasonable for ambulance services provided on a per trip

basis during the previous fiscal year, … increased by the percentage increase in the consumer

price index for all urban consumers (U.S. city average) as estimated by the Secretary. . . ." See

42 U.S.C. § 1395 (v)(1)(U).

16.    This cap, based on the previous fiscal year's costs (the "base year") is commonly

referred to by CMS and providers alike as the "cost-per-trip-limit" on ambulance services.

17.    Separate and apart from the Medicare Statute's cap on reimbursement for

ambulance services using cost-per-trip-limits, the Medicare Statute contains two separate

constraints on the amount of reimbursement that can be reimbursed for "outpatient hospital

services." See 42 U.S.C. §§ 1395x(v)(1)(S)(ii)(I) and (II). These constraints are known,

separately, as the "5.8%" and "10%" reductions. Id.

18.    The kinds of services that qualify as "outpatient hospital services" are identified

by the Medicare Statute. See e.g., 42 U.S.C. §1395x(g) ("outpatient occupational therapy

services"); 42 U.S.C. §1395x(p) ( "outpatient physical therapy services").

19.    Ambulance services are not outpatient hospital services, but rather a sub-category

of "medical and other health services" that has not been defined as "outpatient hospital services"

for purposes of the 5.8% and 10% adjustments. See 42 U.S.C. §1395x(s)(7).

20.    The Secretary, through his Medicare fiscal intermediaries, calculated the

reimbursement for the Covered Cost Report Years by not only using the cost-per-trip-limit, but

also by reducing the base year used to determine the cost-per-trip-limit, using both the 5.8% and

10% reductions.

21.    The Secretary's method of reimbursement for the Covered Cost Report Years was

unlawful for the following separate and independent reasons:

A.    Neither the 5.8% nor 10% reductions should have been applied by the Secretary

or his intermediaries because they apply only to outpatient hospital services. Ambulance

services are not defined in the relevant portions of the Medicare Statute as "outpatient

hospital services";

B.    Neither the 5.8% nor 10% reductions should have been applied by the Secretary

or his intermediaries because ambulance services are not defined in the relevant Medicare

regulations as "outpatient hospital services";

C.    Neither the 5.8% nor 10% reductions should have been applied by the Secretary

or his intermediaries because it has been the longstanding policy of the Medicare

Program to <u>not</u> treat ambulance services as "outpatient hospital services" for purposes of Medicare reimbursement;

D.       The cost-per-trip limits should not have been applied because they had expired pursuant to 42 U.S.C. § 1395 (v)(1)(U) on the last day of 1999; and

E.       Upon information and belief, the Secretary's method of reimbursement was unlawful for other reasons under the applicable regulations and statutory provisions.

**COUNT I- DECLARATORY JUDGMENT**
**THE SECRETARY'S REIMBURSEMENT OF AMBULANCE SERVICES VIOLATED**
**THE MEDICARE STATUTE, WAS ULTRA VIRES, AND WAS OTHERWISE**
**UNLAWFUL**

22.       The foregoing paragraphs 1-21 are incorporated herein by reference, as if fully set forth below.

23.       Based on the foregoing, the Secretary's reimbursement for ambulance services, for the Covered Cost Report Years, violated the Medicare Statute and was beyond the scope of his authority.

24.       Based on the foregoing, the Secretary reimbursement for ambulance services, for the Covered Cost Report Years, violated the Medicare regulations and prior policy and was therefore unlawful.

**COUNT II-VIOLATION OF THE APA**
**THE SECRETARY'S REIMBURSEMENT OF AMBULANCE SERVICES WAS**
**ARBITRARY, CAPRICIOUS, AND UNREASONABLE AND VIOLATED THE APA**

25.       The foregoing paragraphs 1-24 are incorporated herein by reference, as if fully set forth below.

26.    Based on the foregoing, the Secretary's reimbursement for ambulance services, for the Covered Cost Report Years, was arbitrary, capricious, and unreasonable and therefore violated the APA.

**WHEREFORE**, both Decatur and North Memorial request relief for all of the cost report years referenced in this Complaint as follows:

(1)    A declaration by the Court that:

(a)    The Secretary violated the Medicare Statute.

(b)    The Secretary violated the Medicare regulations.

(c)    The Secretary violated the APA.

(2)    An order remanding the matter to the Secretary and his intermediaries and directing them to recalculate reimbursement for ambulance services based on the costs actually incurred by the hospitals, without limiting reimbursement in any way through the application of the 5.8% reduction, the 10% reduction, or cost-per-trip-limits.

(3)    An award of statutory interest pursuant to 42 U.S.C. §1395oo(f)(2).

(4)    Attorneys fees and costs of suit incurred by the Hospitals as permitted by law; and

(5)    Such other relief as this Court deems just and appropriate.

Respectfully submitted,

Jacqueline E. Bennett
DC Bar #474355
**REED SMITH LLP**
1301 K Street, N.W.
Suite 1100 – East Tower
Washington, DC  20005
(202) 414-9200
(202) 414-9299 Facsimile
JBennett@ReedSmith.com

Attorneys for Plaintiffs

Dated: August 29, 2007

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Decatur County General Hospital, North Memorial Health Care | Michael O. Leavitt, Secretary of the Unite States Department of Health and Human Services |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF **Decatur** (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____ (IN U.S. PLAINTIFF CASES ONLY) _____ NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
|---|---|

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Jacqueline E. Bennett REED SMITH LLP 1301 K Street N.W., Suite 1100 - East Tower Washington, D.C. 202-414-9200 | |

---

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

◉ 2 U.S. Government Defendant

○ 3 Federal Question (U.S. Government Not a Party)

○ 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

---

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

| ○ A. *Antitrust* | ○ B. *Personal Injury/ Malpractice* | ◉ C. *Administrative Agency Review* | ○ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane ☐ 315 Airplane Product Liability ☐ 320 Assault, Libel & Slander ☐ 330 Federal Employers Liability ☐ 340 Marine ☐ 345 Marine Product Liability ☐ 350 Motor Vehicle ☐ 355 Motor Vehicle Product Liability ☐ 360 Other Personal Injury ☐ 362 Medical Malpractice ☐ 365 Product Liability ☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act **Social Security:** ☐ 861 HIA ((1395ff) ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g) ☐ 864 SSID Title XVI ☐ 865 RSI (405(g) **Other Statutes** ☐ 891 Agricultural Acts ☐ 892 Economic Stabilization Act ☐ 893 Environmental Matters ☐ 894 Energy Allocation Act ☑ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment. *(If Antitrust, then A governs)* |

---

| ○  E.  *General Civil (Other)* | OR | ○  F.  *Pro Se General Civil* |
|---|---|---|

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ **530 Habeas Corpus-General** <br> ☐ **510 Motion/Vacate Sentence** | ☐ **442 Civil Rights-Employment** (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) <br><br> *(If pro se, select this deck)* | ☐ **895 Freedom of Information Act** <br> ☐ **890 Other Statutory Actions** (if Privacy Act) <br><br> *(If pro se, select this deck)* | ☐ **152 Recovery of Defaulted Student Loans** (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ **710 Fair Labor Standards Act** <br> ☐ **720 Labor/Mgmt. Relations** <br> ☐ **730 Labor/Mgmt. Reporting & Disclosure Act** <br> ☐ **740 Labor Railway Act** <br> ☐ **790 Other Labor Litigation** <br> ☐ **791 Empl. Ret. Inc. Security Act** | ☐ **441 Voting (if not Voting Rights Act)** <br> ☐ **443 Housing/Accommodations** <br> ☐ **444 Welfare** <br> ☐ **440 Other Civil Rights** <br> ☐ **445 American w/Disabilities-Employment** <br> ☐ **446 Americans w/Disabilities-Other** | ☐ **110 Insurance** <br> ☐ **120 Marine** <br> ☐ **130 Miller Act** <br> ☐ **140 Negotiable Instrument** <br> ☐ **150 Recovery of Overpayment & Enforcement of Judgment** <br> ☐ **153 Recovery of Overpayment of Veteran's Benefits** <br> ☐ **160 Stockholder's Suits** <br> ☐ **190 Other Contracts** <br> ☐ **195 Contract Product Liability** <br> ☐ **196 Franchise** | ☐ **441 Civil Rights-Voting** (if Voting Rights Act) |

**V. ORIGIN**

⊙ **1 Original Proceeding**    ○ **2 Removed from State Court**    ○ **3 Remanded from Appellate Court**    ○ **4 Reinstated or Reopened**    ○ **5 Transferred from another district (specify)**    ○ **6 Multi district Litigation**    ○ **7 Appeal to District Judge from Mag. Judge**

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

Action under the Medicare Statute, 42 U.S.C. § 1395 et seq., and the Administrative Procedure Act, 5 U.S.C. § 551 et seq., for declaratory judgment and remand for proper calculation of reimbursement for services

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23 | **DEMAND $** | Check YES only if demanded in complaint |
|---|---|---|---|
| | | **JURY DEMAND:** | YES ☐   NO ☒ |

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

**DATE** 8-29-07    **SIGNATURE OF ATTORNEY OF RECORD**  *Jacqueline E. Bennett*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

**I.**    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

**III.**    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

**IV.**    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

**VI.**    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

**VIII.**    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

# CENTERS FOR MEDICARE AND MEDICAID SERVICES
## *Decision of the Administrator*

| | |
|---|---|
| **In the case of:** | **Claim for:** |
| **North Memorial Health Care** | **Provider Cost Reimbursement Determination for Cost Reporting Period Ending: December 31, 2000** |
| **Provider** | |
| **vs.** | |
| **Blue Cross Blue Shield Association / Noridian Administrative Services** | **Review of: PRRB Dec. No. 2007-D27 Dated: April 20, 2007** |
| **Intermediary** | |

This case is before the Administrator, Centers for Medicare & Medicaid Services (CMS), for review of the decision of the Provider Reimbursement Review Board (Board). The review is during the 60-day period in § 1878(f) (1) of the Social Security Act (Act), as amended (42 USC 1395oo (f)). The parties were notified of the Administrator's intention to review the Board's decision. CMS' Center for Medicare Management (CMM) and the Intermediary, submitted timely comments, requesting partial reversal of the Board's decision. Accordingly, this case is now before the Administrator for final agency review.

## **BACKGROUND**

North Memorial Health Care (the Provider) is a voluntary, non-profit, acute care hospital located in Minneapolis, Minnesota that also operates rehabilitation and psychiatric sub-providers, a home health agency, hospice and a hospital-based ambulance service. As part

of the final settlement of the Provider's FYE December 31, 2000 cost report, the Intermediary reduced capital-related costs for outpatient hospital services by 10 percent and outpatient operating costs by 5.8 percent. The Provider disagreed with the application of the reduction factors to its ambulance services (which were also subject to cost per trip limits) and filed a hearing request with the Board.

## ISSUE AND BOARD'S DECISION

The issue is whether the Provider's fiscal year ending (FYE) 2000 ambulance cost per trip limits were improperly low because the Intermediary improperly applied the 5.8 percent outpatient operating cost reduction and the 10 percent outpatient capital cost reduction to base year costs utilized to calculate those limits.

The Board held that the Intermediary improperly applied the 5.8 percent outpatient operating cost reduction and 10 percent outpatient capital cost reduction to base year costs used to calculate the Provider's FYE 2000 ambulance cost per trip limits. The Board remanded the case to the Intermediary to recalculate the ambulance cost per trip limits accordingly and to modify its adjustments.

## SUMMARY OF COMMENTS

CMM submitted comments requesting that the Administrator overturn the Board's decision. Specifically, CMM requested reversal of portion of the Board's decision on the grounds that it would be contrary to consistent Medicare policy to reopen the base year for any adjustments or calculations. Across the Medicare program, and especially concerning the calculation of the base rate for ambulance services, CMM states that they have followed the procedure that, once the base year rates are determined, they are not altered as this would have ramifications for all subsequent cost years.

CMM agreed that the 5.8 and 10 percent reduction factors under Section 1861(v)(1)(S)(ii)(III) of the Act were properly applied by the Intermediary as ambulance services are considered to be outpatient hospital services. CMM stated that Medicare consistent policy is not to revise base year costs. Further, CMM stated that the Intermediary

properly applied the 5.8 and 10 percent reductions to the base year costs for the cost year in question.

The Intermediary submitted comments requesting reversal of the Board's decision. The Intermediary contended that the ambulance cost was subject to the 5.8 percent and 10 percent reductions because the ambulance service is an outpatient service subject to the cost reductions. The cost reductions were correctly computed in the base year, as the base year was to reflect reasonable cost. The Intermediary requested reversal of this part of the Board's decision.

## DISCUSSION

The entire record, which was furnished by the Board, has been examined, including all correspondence, position papers, and exhibits. The Administrator has reviewed the Board's decision. All comments were received timely and are included in the record and have been considered. After a review of the record, applicable regulations and manual instructions, the Administrator finds that the Intermediary properly applied the 5.8 percent outpatient operating cost reduction and the 10 percent outpatient capital cost reduction to the base year costs used to calculate the Provider's FYE 2000 ambulance cost per trip limits.

Section 1861(v)(1)(A) of the Social Security Act establishes that Medicare pays for the reasonable cost of furnishing covered services to program beneficiaries, subject to certain limitations. This section of the Act also defines reasonable cost as "the cost actually incurred, excluding there from any part of incurred cost found to be unnecessary in the efficient delivery of needed health services." The Act further authorizes the Secretary to promulgate regulations establishing the methods to be used and the items to be included in determining such costs. Consistent with the statute, the regulation at 42 CFR §413.9 states that all payments to providers of services must be based on the reasonable cost of services covered under Medicare and related to the care of beneficiaries.

In response to rising costs, and realizing that the original structure of reasonable costs provided little incentive for providers to operate efficiently in delivering services, Congress authorized the Secretary to establish cost limits under Section 1861(v)(1)(A) of the Act.

Specifically, the Secretary has the authority to:

> [p]rovide for the establishment of limits on the direct or indirect overall incurred costs… based on estimates of the costs necessary in the efficient delivery of needed health services…

In addition, relevant to the reasonable cost principles above, existing Medicare law contains reduction factors for application to outpatient hospital services. Section 1886(v)(1)(s)(ii) of the Act states:

> (I) … in determining the amount of the payments that may be made under this title with respect to all the capital-related costs of outpatient hospital services, the Secretary shall reduce the amounts of such payments otherwise established under this subchapter… by 10 percent for payments attributable to portions of cost reporting periods occurring during fiscal years 1992 through 1999 and until the first date that the prospective payment system under section 1833(t) of this title is implemented. (Emphasis added.)

> (II) The Secretary shall reduce the reasonable cost of outpatient hospital services (other than capital-related costs of such services) otherwise determined pursuant to section 1833(a)(2)(B)(i)(I) by 5.8 percent for payments attributable to portions of cost reporting periods occurring during fiscal years 1991 through 1999 and until the first date that the prospective payment system under section 1833(t) is implemented (emphasis added.)

As further evidence that the ambulance services at issue are outpatient hospital services, (although not covered under Outpatient PPS), Section 1833 of the Act states, in relevant part:

> (t) Prospective payment system for hospital outpatient department services–

> > (1) Amount of payment …
> > > (B) Definition of covered OPD services
> > For purposes of this subsection, the term "covered OPD services"--…

> > (iv) does not include ... ambulance services, for which payment is made under a fee schedule described in section 1834(k) of this title or section 1834(l) of this section...
>
> > (10) Special rule for ambulance services.
> > The Secretary shall pay for hospital outpatient services that are ambulance services on the basis described in section 1861(v)(1)(U) of this title, or, if applicable, the fee schedule established under 1833(l) of this title (emphasis added).

Furthermore, 42 CFR §419.22 states:

> Hospital outpatient services excluded from payment under the hospital outpatient prospective payment system.
>
> The following services are not paid for under the hospital outpatient prospective payment system:
>
> > (i) Ambulance services, as described in section 1861(v)(1)(U) of the Act, or, if applicable, the fee schedule under section 1834(1).

Accordingly, as the Board correctly determined, the ambulance services at issue are subject to the 5.8 percent and 10 percent reduction factors, as ambulance services are outpatient hospital services.

Regarding whether the costs recognized as reasonable in the base year should include the application of 5.8 percent and 10 percent reduction factors, the Administrator finds that the Intermediary properly applied the reduction factors to the Provider's base year costs. Pursuant to the Balanced Budget Act of 1997, Congress enacted Section 1861(v)(1)(U), which provided the following cost per trip limit to determine the payment for ambulance services:

> In determining the reasonable cost of ambulance services... provided during fiscal year 1998, during fiscal year 1999, and during so much of fiscal year 2000 as precedes January 1, 2000, the Secretary shall not recognize the costs per trip in excess of costs recognized as reasonable for ambulance services provided on a per trip basis during the previous fiscal year ... increased by the percentage increase in the consumer price index for all urban consumers (U.S.

city average) as estimated by the Secretary for the 12-month period ending with the midpoint of the fiscal year involved reduced by 1.0 percentage point. (Emphasis added.)

Congress was concerned with escalating outpatient costs when it established the 10 percent and 5.8 percent reduction in costs for outpatient services and also the "cost per trip" limitation. The Secretary, in implementing the further cost containment measure reflected in the "cost per trip" provision, reasonably determined that the costs "recognized as reasonable" in the base year, should reflect the 10 percent and 5.8 percent reduction. That is, the base year costs, after application of the outpatient reductions are in fact the costs "recognized as reasonable" under the Medicare program.

The Administrator finds that the application of these reductions to the cost per trip base year is consistent with the statutory language of section 1861(v)(1)(U) and congressional concerns regarding escalating costs of outpatient and ambulance services. In addition, this policy is within the Secretary's authority under the reasonable cost provisions of section 1861(v)(1)(A) of the Act and the program. In light of the foregoing, the Administrator disagrees with the Board and finds that the Intermediary's application of the 5.8 percent outpatient operating cost reduction and 10 percent outpatient capital cost reduction to base year costs used to calculate the Provider's FYE 2000 ambulance cost per trip limits was appropriate. Application of the cost reduction factors to the base year produces costs that are reasonable as recognized by the Secretary and effectuates the intent of Congress to reduce and avoid excess cost per trip. Accordingly, the Board's decision is modified and the Intermediary's determination of the Provider's cost per trip for the cost year at issue is upheld.

## DECISION

The decision of the Board is modified in accordance with the foregoing opinion. The Intermediary's determination of the Provider's cost per trip for the cost year at issue is upheld

## THIS CONSTITUTES THE FINAL ADMINISTRATIVE DECISION OF THE SECRETARY OF HEALTH AND HUMAN SERVICES

Date: 6/27/07

Herb B. Kuhn
Acting Deputy Administrator
Centers for Medicare & Medicaid Services

# CENTERS FOR MEDICARE AND MEDICAID SERVICES
### *Decision of the Administrator*

| | |
|---|---|
| In the case of: | Claim for: |
| **Decatur County General Hospital** | **Provider Cost Reimbursement Determination for Cost Reporting Period Ending: June 30, 2000 and June 30, 2001** |
| **Provider** | |
| **vs.** | |
| **Blue Cross Blue Shield Association / Riverbend Government Benefits Administrators** | **Review of: PRRB Dec. No. 2007-D28 Dated: April 20, 2007** |
| **Intermediary** | |

This case is before the Administrator, Centers for Medicare & Medicaid Services (CMS), for review of the decision of the Provider Reimbursement Review Board (Board). The review is during the 60-day period in § 1878(f) (1) of the Social Security Act (Act), as amended (42 USC 1395oo (f)). The parties were notified of the Administrator's intention to review the Board's decision. CMS' Center for Medicare Management (CMM) and the Intermediary submitted comments requesting partial reversal of the Board's decision. Accordingly, this case is now before the Administrator for final agency review.

## BACKGROUND

Decatur County General Hospital, (the Provider), is a governmental acute care hospital chartered by the State of Tennessee. The Provider operates swing beds, a home health agency and a hospital-based emergency medical ambulance service for Decatur County. For the fiscal years at issue, the Provider reported the cost of ambulance services on the cost

reports and the Medicare charges for ambulance services on Worksheet D, Part V of the cost reports. As part of the final settlement of Provider's FYE 6/30/2000 and 6/30/2001 cost reports, the Intermediary reduced capital-related costs for outpatient hospital services by 10 percent and outpatient operating costs by 5.8 percent. The Provider disagreed with the application of the reduction factors to its ambulance services (which were also subjected to cost per trip limits) and filed a hearing request with the Board.

## ISSUE AND BOARD'S DECISION

The issue is whether the Provider's fiscal years ending (FYEs) 6/30/00 and 6/30/01 ambulance cost per trip limits were improperly low because the Intermediary improperly applied the 5.8 percent outpatient operating cost reduction and the 10 percent outpatient capital cost reduction to base year costs utilized to calculate those limits.

The Board held that the Intermediary improperly applied the 5.8 percent outpatient operating cost reduction and 10 percent outpatient capital cost reduction to base year costs used to calculate the Provider's FY 2000 ambulance cost per trip limits. The Board found that the Provider is entitled to cost reimbursement for ambulance services provided during FYE 6/30/01 (subject to the 5.8 percent and 10 percent reductions). No ambulance cost per trip limits are to be applied. The Board remanded the case to the Intermediary to recalculate the ambulance cost per trip limits accordingly and to modify its adjustments.

## SUMMARY OF COMMENTS

CMM submitted comments requesting that the Administrator overturn the Board's decision. Specifically, CMM requested reversal in part of the Board's decision on grounds that it would be contrary to consistent Medicare policy to reopen the base year for any adjustments or calculations. Across the Medicare program, and especially concerning the calculation of the base rate for ambulance services, CMM stated that they have followed the procedure that, once the base year rates are determined, they are not altered as this would have ramifications for all subsequent cost years.

CMM agreed that the 5.8 and 10 percent reduction factors were properly applied by the Intermediary as they were considered to be outpatient hospital services under Section 1861(v)(1)(S)(ii)(III) of the Act. CMM agreed that the 5.8 and 10 percent reductions should be applied to the ambulance services for the base year.

CMM disagreed with the Board's finding that payments for ambulance services were not subject to the cost per trip limit as of January 1, 2000. CMM stated that Congress' intent was to have the ambulance fee schedule implemented by January 1, 2000, which would have negated the need for the cost per trip limit if there had also been no transition period to the full ambulance fee schedule payment. In fact, the ambulance fee schedule was not implemented until April 1, 2002, and, even at that point, it was implemented with a 5-year transition period. This meant that all the provisions of the reasonable cost payment method had to remain in place as established by the Balanced Budget Act (BBA) of 1997 so that Congressional intent to limit the cost of ambulance services would not be undermined until the full implementation of the ambulance fee schedule was accomplished.

The Intermediary submitted comments requesting reversal in part of the Board's decision. The Intermediary contended that the ambulance cost was subject to the 5.8 percent and 10 percent reductions because the ambulance service is an outpatient service subject to the cost reductions. The cost reductions were correctly computed in the base year, as the base year was to reflect reasonable cost.

## DISCUSSION

The entire record, which was furnished by the Board, has been examined, including all correspondence, position papers, and exhibits. The Administrator has reviewed the Board's decision. All comments were received timely and are included in the record and have been considered. After a review of the record, applicable regulations and manual instructions, the Administrator finds that the Intermediary properly applied the 5.8 percent outpatient operating cost reduction and the 10 percent outpatient capital cost reduction to the base year costs used to calculate the Provider's FYE 2000 ambulance cost per trip limits.

Section 1861(v)(1)(A) of the Social Security Act establishes that Medicare pays for the reasonable cost of furnishing covered services to program beneficiaries, subject to certain limitations. This section of the Act also defines reasonable cost as "the cost actually incurred, excluding there from any part of incurred cost found to be unnecessary in the efficient delivery of needed health services." The Act further authorizes the Secretary to promulgate regulations establishing the methods to be used and the items to be included in determining such costs. Consistent with the statute, the regulation at 42 CFR §413.9 states

that all payments to providers of services must be based on the reasonable cost of services covered under Medicare and related to the care of beneficiaries.

In response to rising costs, and realizing that the original structure of reasonable costs provided little incentive for providers to operate efficiently in delivering services, Congress authorized the Secretary to establish cost limits under Section 1861(v)(1)(A) of the Act.

Specifically, the Secretary has the authority to:

> [p]rovide for the establishment of limits on the direct or indirect overall incurred costs... based on estimates of the costs necessary in the efficient delivery of needed health services...

In addition, relevant to the reasonable cost principles above, existing Medicare law contains reduction factors for application to outpatient hospital services. Section 1886(v)(1)(s)(ii) of the Act states:

> (I) ... in determining the amount of the payments that may be made under this title with respect to all the capital-related costs of outpatient hospital services, the Secretary shall reduce the amounts of such payments otherwise established under this subchapter... by 10 percent for payments attributable to portions of cost reporting periods occurring during fiscal years 1992 through 1999 and until the first date that the prospective payment system under section 1833(t) of this title is implemented. (Emphasis added.)

> (II) The Secretary shall reduce the reasonable cost of outpatient hospital services (other than capital-related costs of such services) otherwise determined pursuant to section 1833(a)(2)(B)(i)(I) by 5.8 percent for payments attributable to portions of cost reporting periods occurring during fiscal years 1991 through 1999 and until the first date that the prospective payment system under section 1833(t) is implemented (emphasis added.)

As further evidence that the ambulance services at issue are outpatient hospital services, (although not covered under Outpatient PPS), Section 1833 of the Act states, in relevant part:

(t) Prospective payment system for hospital outpatient department services–

> (1) Amount of payment …
>> (B) Definition of covered OPD services
>
> For purposes of this subsection, the term "covered OPD services"--…
>> (iv) does not include … ambulance services, for which payment is made under a fee schedule described in section 1834(k) of this title or section 1834(l) of this section…
>
> (10) Special rule for ambulance services.
> The Secretary shall pay for hospital outpatient services that are ambulance services on the basis described in section 1861(v)(1)(U) of this title, or, if applicable, the fee schedule established under 1833(l) of this title (emphasis added).

Furthermore, 42 CFR §419.22 states:

> Hospital outpatient services excluded from payment under the hospital outpatient prospective payment system.
>
> The following services are not paid for under the hospital outpatient prospective payment system:
>
>> (i) Ambulance services, as described in section 1861(v)(1)(U) of the Act, or, if applicable, the fee schedule under section 1834(1).

Accordingly, as the Board correctly determined, the ambulance services at issue are subject to the 5.8 percent and 10 percent reduction factors, as ambulance services are outpatient hospital services.

Regarding whether the costs recognized as reasonable in the base year should include the application of 5.8 percent and 10 percent reduction factors, the Administrator finds that the Intermediary properly applied the reduction factors to the Provider's base year costs. Pursuant to the Balanced Budget Act of 1997, Congress enacted Section 1861(v)(1)(U), which provided the following cost per trip limit to determine the payment for ambulance services:

> In determining the reasonable cost of ambulance services... provided during
> fiscal year 1998, during fiscal year 1999, and during so much of fiscal year
> 2000 as precedes January 1, 2000, the Secretary shall not recognize the costs
> per trip in excess of costs recognized as reasonable for ambulance services
> provided on a per trip basis during the previous fiscal year ... increased by the
> percentage increase in the consumer price index for all urban consumers (U.S.
> city average) as estimated by the Secretary for the 12-month period ending
> with the midpoint of the fiscal year involved reduced by 1.0 percentage point.
> (Emphasis added.)

Congress was concerned with escalating outpatient costs when it established the 10 percent
and 5.8 percent reduction in costs for outpatient services and also the "cost per trip"
limitation. The Secretary, in implementing the further cost containment measure reflected in
the "cost per trip" provision, reasonably determined that the costs "recognized as
reasonable" in the base year, should reflect the 10 percent and 5.8 percent reduction. That is,
the base year costs, after application of the outpatient reductions, are in fact the costs
"recognized as reasonable" under the Medicare program.

The Administrator finds that the application of these reductions to the cost per trip base year
is consistent with the statutory language of section 1861(v)(1)(U) and congressional
concerns regarding escalating costs of outpatient and ambulance services. In addition, this
policy is within the Secretary's authority under the reasonable cost provisions of section
1861(v)(1)(A) of the Act and the program. In light of the foregoing, the Administrator
disagrees with the Board and finds that the Intermediary's application of the 5.8 percent
outpatient operating cost reduction and 10 percent outpatient capital cost reduction to base
year costs used to calculate the Provider's FYEs 2000 and 2001 ambulance cost per trip
limits was appropriate. Application of the cost reduction factors to the base year produces
costs that are reasonable as recognized by the Secretary and effectuates the intent of
Congress to reduce and avoid excess cost per trip. Accordingly, the Board's decision is
modified and the Intermediary's determination of the Provider's cost per trip for the cost
years at issue is upheld.

Further, regarding the application of the cost per trip limit after January 1, 2000, Section
4531(b)(4) of the BBA, which added section 1834(l)(3), sets forth the statutory provisions
indicating that the fee schedule was to be effective for ambulance services on or after
January 1, 2000. The Secretary was unable to implement the ambulance fee schedule until
April 1, 2002, due to system changes and Y2k compliance, payment for ambulance services
should not revert back to pre-BBA cost reimbursement. The Secretary clearly intended to

implement the reimbursement changes to ambulance services as instructed, but was forced to delay the implementation of a national fee schedule due to the difficulties it experienced.

Congress, under the BBA, mandated the establishment of a national fee schedule to remedy the problems experienced under the reasonable charge methodology, to provide consistency in payments and continue cost containment for ambulance related services. Under the fee schedule methodology, Congress was continuing to require the Secretary to establish mechanisms to control increases in expenditures for ambulance services under Part B of the Medicare program. Congress was also requiring the Secretary to ensure that aggregate payment amounts made in the first year under the fee schedule not exceed the aggregate amount of payment that would have been made for such services had the cost per trip limitation applied. Thus, there is no statutory provision to support a finding that payment for ambulance services would revert back to pre-BBA cost reimbursement without its cost per trip cost containment measure, if the ambulance fee schedule were not implemented by January 1, 2000. A policy to allow payments for the period after January 1, 2000 until the implementation of the fee schedule without application of the cost per trip limitation. would be inconsistent with, and undermine, the overall statutory scheme for ambulance services. Such a policy would also be inconsistent with the Secretary's determination of the reasonable cost of ambulance services under the Medicare program.

Thus, the Provider is not entitled to cost reimbursement for ambulance services for FYE June 30, 2001 without application of the cost per trip limits. The Administrator finds that the Intermediary's application of the cost per trip limitation for the Provider's fiscal years at issue was proper.

## DECISION

The decision of the Board is modified in accordance with the foregoing opinion. The Intermediary's calculation and application of the Provider's cost per trip limitation for the cost years at issue is upheld.

**THIS CONSTITUTES THE FINAL ADMINISTRATIVE DECISION OF THE SECRETARY OF HEALTH AND HUMAN SERVICES**

Date: _6/27/07_

Herb B. Kuhn
Acting Deputy Administrator
Centers for Medicare & Medicaid Services