UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DECATUR COUNTY GENERAL<br>HOSPITAL<br>and<br>NORTH MEMORIAL HEALTH CARE,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>MICHAEL O. LEAVITT, SECRETARY,<br>U.S. DEPARTMENT OF HEALTH AND<br>HUMAN SERVICES<br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)　**Case No.: 07-CV-01544 (JDB)**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Civil Rules of Civil Procedure and Local Rules 7(h) and 56.1 of the United States District Court for the District of Columbia, Plaintiffs Decatur County General Hospital and North Memorial Health Care respectfully move this Court for entry of an order granting summary judgment in their favor. In support of this motion, Plaintiffs respectfully refer the Court to the accompanying Memorandum of Points and Authorities and Statement of Material Facts Not in Dispute, incorporated herein by reference. The motion is supported also by the entire administrative record filed by Defendant on or before January 23, 2008.

A proposed Order granting Plaintiffs' motion and requested relief also accompanies this motion.

WHEREFORE, the Plaintiffs ask that the Court grant Plaintiffs' motion for summary judgment and enter an Order:

(i) granting declaratory judgment that the Secretary's reimbursement violated the Medicare statute, Medicare regulations and the APA;

(ii) remanding the matter to the Secretary and his Intermediaries, with the direction that they recalculate reimbursement for ambulance services without application of the 5.8% and 10% reductions, together with a payment of mandatory interest pursuant to 42 U.S.C. § 1395oo(f)(2); and

(iii) granting such further relief that the Court deems appropriate.


Respectfully submitted,

_/s/ Jacqueline E. Bennett_____
Jacqueline E. Bennett
DC Bar #474355
**REED SMITH LLP**
1301 K Street, N.W.
Suite 1100 – East Tower
Washington, DC  20005
(202) 414-9200
(202) 414-9299 Facsimile
JBennett@ReedSmith.com

Attorneys for Plaintiffs


Dated:  April 17, 2008

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DECATUR COUNTY GENERAL HOSPITAL **and** NORTH MEMORIAL HEALTH CARE, Plaintiffs, v. MICHAEL O. LEAVITT, SECRETARY, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **Case No.: 07-CV-01544 (JDB)** |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................................1

STATEMENT OF FACTS ...........................................................................................................2

A.    Medicare Part B ...............................................................................................................3

B.    The 5.8% and 10% Reductions...........................................................................................3

C.    The Balanced Budget Act of 1997.......................................................................................4

D    The Facts of the Present Dispute ......................................................................................5

ARGUMENT ...............................................................................................................................7

I.    THE SUMMARY JUDGMENT STANDARD...................................................................7

II.   THE FISCAL INTERMEDIARIES VIOLATED THE MEDICARE STATUTE BY
      APPLYING THE 5.8% AND 10% OUTPATIENT COST REDUCTIONS TO
      AMBULANCE SERVICES…… ...................................................................................8

      A.    CMS's Interpretation Defies The Language Of The Statute…………..……………9

      B.    CMS's Interpretation Defies the Accepted Canons Of Statutory Construction ....11

      C.    The 5.8% and 10% Reductions Do No Apply Because Ambulance Services Are
            Not "Outpatient Services"…………………………………………………………..13

CONCLUSION............................................................................................................................15

## INTRODUCTION

This case arises as a result of a dispute over the amount of Medicare reimbursement due to Plaintiff North Memorial Healthcare ("North Memorial") for ambulance services provided during the 2000 Medicare cost report year, and the amount of Medicare reimbursement due to Plaintiff Decatur County General Hospital ("Decatur") for ambulance services provided during the 2000 and 2001 cost report years. Historically, ambulance services were reimbursed on a cost basis. Beginning with the last nine months of 1998, and ending on December 31, 1999, the reimbursable cost of ambulance services was determined by the application of a hospital-specific cost-per-trip limit. The Medicare statute required that the cost-per-trip limit be derived from *actual* ambulance costs in a prior "base year." In the present matter, however, the cost-per-trip limits were improperly derived from reduced prior costs.

The cost-per-trip limit used to calculate ambulance reimbursement for North Memorial for the 2000 cost report year, and for Decatur for the 2000 and 2001 cost report years, was artificially and improperly low because the Medicare fiscal intermediaries (responsible for administering the Hospitals' Medicare payments) unlawfully reduced the base year ambulance costs by separate factors of 5.8% and 10% in order to calculate cost-per-trip limits. These reduction factors, however, which are set forth in the Medicare statute, do not apply to ambulance services, and were therefore applied in violation of the statute.

The actual ambulance costs and calculation and amount of reduction applied in this case are not in dispute. The parties dispute only the statutory construction and legal interpretation of the relevant legal provisions, which renders the case ripe for summary judgment.

- 1 -

## STATEMENT OF FACTS

Congress enacted the Medicare program, Title XVIII of the Social Security Act, 42

U.S.C. §§1395ww(d), in 1965. As originally enacted, Medicare was a public health insurance

program that furnished health benefits to participating individuals once they reached the age of

65. *United States v. Blue Cross and Blue Shield of Michigan,* 726 F. Supp. 1517, 1519 (E.D.

Mich. 1989). Over the years, it has been expanded to provide health benefits to qualifying

disabled persons and to individuals suffering from end-stage renal disease. *Health Ins. Ass'n. of*

*America, Inc. v. Shalala*, 23 F.3d 412, 414 (D.C. Cir. 1994).

The Secretary has delegated much of the responsibility for administering the Medicare

program to the Centers for Medicare and Medicaid Services, formerly known as the Health Care

Financing Administration. *See* 42 U.S.C. §§1395h, 1395u (both entities will hereinafter be

collectively referred to as simply "CMS"). CMS, in turn, delegated many of Medicare's audit

and payment functions to organizations known as Medicare fiscal intermediaries. *See id.*

§1395h.

At the close of a fiscal year, a Medicare provider must submit to its fiscal intermediary a

"cost report" showing both the costs incurred by it during the fiscal year and the appropriate

share of those costs to be apportioned to Medicare. 42 C.F.R. § 413.24(f). The intermediary is

required to analyze and audit the cost report and then issue a final determination of the amount of

Medicare reimbursement owed to the hospital (or owed by the hospital to Medicare) in a

document known as a "notice of program reimbursement" or "NPR." *See id.* §405.1803. A

hospital dissatisfied with its reimbursement may file an administrative appeal with a tribunal

known as the Provider Reimbursement Review Board ("PRRB") within 180 days of the date the

- 2 -

hospital received its NPR.  42 U.S.C. §1395oo(a).  Final decisions by the PRRB can be

challenged in the United States district courts.  *See id.* §1395oo(f).

### A.    Medicare Part B

The present matter involves the provisions of the Medicare statute relating to "Medicare

Part B."  S*ee* 42 U.S.C. §1395 *et seq*.  Medicare Part B covers a hodgepodge of numerous and

distinct "medical and other health services," most of which are itemized under 42 U.S.C. §

1395x(s).  Some of these services are outpatient services.  *See, e.g.,* 42 U.S.C. §1395x(s)(1)

(outpatient physician services), §1395x(s)(2) (services and supplies related to outpatient

services), and §1395x(s)(3) (diagnostic laboratory tests).  Other services that are covered by

Medicare Part B are not outpatient services.  *See e.g.,* 42 U.S.C. §1395x(s)(4) (radioactive

isotope therapy); §1395x(s)(6)(durable medical equipment), §1395x(s)(8) (prosthetic devices),

§1395x(s)(10)(vaccines), §1395x(s)(11) (services of a certified registered nurse anesthetist), and

§1395x(s)(7) (ambulance services).

Historically, Medicare Part B reimbursed hospitals based on the reasonable cost of the

services rendered or the customary charge for the service, whichever was less.  *See* 42 U.S.C. §§

13951(a)(2)(B)(i) and 1395k(a)(2)(B).  This was known as the "reasonable cost" or "cost-based"

method of reimbursement.  *See id.*

### B.    The 5.8% and 10% Reductions

In 1990, in an effort to curb Medicare spending and contain costs, Congress passed the

Omnibus Budget Reconciliation Act of 1990 which, among other things, required the Secretary,

when determining outpatient reimbursement, to reduce the reasonable cost of outpatient services

by 5.8% and the capital related costs of outpatient hospital services by 10%. 42 U.S.C.
§1395x(v)(1)(S)(ii)(I), (II).[1]

The 5.8% reduction provides that the Secretary "reduce the reasonable costs of *outpatient hospital services* . . . otherwise determined pursuant to section 1395l(a)(2)(B)(i)(I) of this title by 5.8% for payments attributable to portions of cost reporting periods occurring during fiscal years 1991 through 1999 and until the first date that the [outpatient] prospective payment system under section 1395l(t) of this title is implemented." 42 U.S.C. §1395x(v)(1)(S)(ii)(II) (emphasis added).

The 10% reduction provides that "in determining the amount of the payments that may be made under this subchapter with respect to all the capital-related costs of *outpatient hospital services*, the Secretary shall reduce the amounts of such payment . . . by 10 percent for payments attributable to portions of cost reporting periods occurring during fiscal years 1992 through 1999 and until the first date that the [outpatient] prospective payment system under section 1395l(t) of this title is implemented." 42 U.S.C. §1395x(v)(1)(S)(ii)(I) (emphasis added).

## C.    The Balanced Budget Act of 1997

As part of the Balanced Budget Act of 1997 ("BBA"), in order to "cap" the reimbursement of ambulance service costs, Congress enacted a provision, specific to ambulance services, which capped reimbursement for such services by imposing a cost-per-trip limit based on the actual costs-per-trip from a prior, "base," year. *See* 42 U.S.C. §1395x(v)(1)(U). The calculation used a rolling base year, beginning with the 1997 cost report year, and then used a

---

[1]    "Capital related costs" are costs associated with buildings, fixtures, and similar "costs of capital," as opposed to operating costs. *See* 42 C.F.R. § 412.302 *et seq.*

- 4 -

subsequent period if the cost-per-trip was less. *Id.* For periods after 2000, Congress provided

for the gradual phase-in of an ambulance fee-schedule. *See* 42 U.S.C. § 1395m(l).

At the same time, with respect to outpatient services, Congress required that CMS change

its method of reimbursement from a cost-based model to a "prospective payment system"

("outpatient PPS") in which reimbursement would be paid based on the particular classification

of the outpatient service provided to the patient. *See* 42 U.S.C. §§ 13951(t)(1)(B)(iv), (t)(10); 42

C.F.R. § 419.22(i); 65 Fed. Reg. 18434 *et seq.* (July 1, 2000). The Medicare statute expressly

provided that the change to outpatient PPS did *not* apply to ambulance services. *See* 42 U.S.C. §

13951(t)(1)(B)(iv), (t)(10).

### D.    The Facts of The Present Dispute

Decatur is a 40-bed, licensed acute-care hospital in Parsons, Tennessee, which also

operates a hospital-based emergency medical ambulance service for Decatur County. *See*

Decision of the Administrator at Administrative Record (hereinafter "AR") at 2.[2]

North Memorial Health Care is a non-profit, acute care hospital in Minneapolis,

Minnesota that also operates a hospital-based ambulance service. *See* Decision of the

Administrator, *AR* at 1365.

It is undisputed, for the cost report years at issue here, that the fiscal intermediaries

applied the 5.8% and 10% reductions to the ambulance services provided by Decatur and North

Memorial in order to determine the base year costs for the 1997 cost report year, notwithstanding

the fact that the 5.8% and 10% reductions expressly apply only to outpatient services and do not

---

2    The Defendant filed the Administrative Record for this matter with the Court on or before
     January 23, 2008. For the convenience of the Court, cited excerpts are attached as
     Exhibit A.

purport to apply to ambulance services. *See* Decision of the Administrator, *AR* at 3, 1365-66.[3] This unlawfully reduced the base year costs that were then included in the formula used to determine the Plaintiffs' cost-per-trip limits for 2000 and 2001. *See* Calculations of Amount in Controversy, *AR* at 197-199, 495, 1421. The improperly reduced 2000 and 2001 cost-per-trip limits were then multiplied by the Provider's total number of ambulance trips, and the Providers' reimbursement was lowered, in violation of the Medicare statute. *Id.*

The Plaintiffs timely and properly appealed to the PRRB. *AR* at 1118-19, 1235-36, 2219-20. The PRRB held, in partial favor of Plaintiffs, that the fiscal intermediary improperly applied the reduction factors to the base year costs. *AR* 20-27, 1382-1388. The PRRB also held, erroneously, in partial favor of the Secretary, that the ambulance services at issue did constitute outpatient hospital services, and that the final costs determined under the cost-per-trip limit were therefore subject to the 5.8 percent and 10 percent reduction factors that Congress designated for outpatient hospital service reimbursement. *AR* at 24; 1385-86.

The Administrator of CMS notified the parties of the Administrator's intention to review the Board's decisions. Upon review, the Administrator affirmed in part and reversed in part the decisions of the PRRB. *AR* at 2-9; 1365-1371.

The Administrator reversed the PRRB in holding that the Intermediaries' application of the 5.8 percent and 10 percent outpatient cost reductions to the base year costs was appropriate for calculation of the cost per trip limits, because "[a]pplication of the cost reduction factors to

---

3    The Medicare reimbursement lost by North Memorial due to improper reductions for fiscal year ("FYE") 2000 was approximately $458,176, and the reimbursement lost to Decatur was approximately $19,020 for FYE 2000 and $22,166 for FYE 2001. *See AR* at 495 (Decatur FYE 2000); 197 (Decatur FYE 2001); 1421, 1383 (North Memorial FYE 2000).

the base year produces costs that are reasonable as recognized by the Secretary and effectuates

the intent of Congress to reduce and avoid excess cost per trip." *AR* at 7; 1370.[4]

The Administrator also held, in favor of the Secretary, that the ambulance services at

issue constituted outpatient hospital services, and were therefore subject to the 5.8 percent and 10

percent reduction factors. *AR* at 6; 1369.

On August 30, 2007, the Plaintiffs filed suit. They now move for summary judgment.

There exist in this case no disputed issues of material fact, and Plaintiffs request that the Court

grant Plaintiffs judgment as a matter of law.

## ARGUMENT

## I.    THE SUMMARY JUDGMENT STANDARD

Summary judgment is warranted where the moving party establishes that there exists no

genuine issue of material fact in dispute, and that it is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c); *District of Columbia Hosp. Ass'n. v. D.C.*, 224 F.3d 776, 779 (D.C. Cir.

2000). "Summary judgment is especially appropriate in cases such as this where the Court is

called on to review a decision of an administrative agency. In these cases, what is often in issue

are not the facts, but whether the agency erred in applying the law." *Keystone Shipping Co. v.

United States*, 801 F. Supp. 771, 776 (D.D.C. 1992), citing 10B Charles A. Wright, Arthur R.

Miller & Mary Kay Kane, *Federal Practice & Procedure* §2733 at 366-67 (2d ed. 1983).

---

4      Importantly, and as further discussed *infra*, the Administrator's use of the verb
       "produces" inadvertently reinforces Plaintiffs' position. The law requires not that base
       year costs be "produced," or manufactured, but rather that the *actual* base year costs be
       used as the starting point for calculating cost per trip limits for subsequent years.

## II.    THE FISCAL INTERMEDIARIES VIOLATED THE MEDICARE STATUTE BY APPLYING THE 5.8% AND 10% OUTPATIENT COST REDUCTIONS TO AMBULANCE SERVICES.

The Plaintiffs' claims in the present matter, both for purposes of declaratory judgment

and the Administrative Procedure Act, are based on the fiscal intermediaries' violation of the

Medicare statute.  The intermediaries violated the Medicare statute in two respects when they

applied the 5.8% and 10% reductions to the Plaintiffs' ambulance service costs.  First, the

intermediaries failed to follow the method for determining cost-per-trip limits because the cost-

per-trip provision, which is highly specific, does not contemplate the application of the reduction

to ambulance service costs.  In this regard, the Secretary violated the statute, irrespective of

whether ambulance services are considered "outpatient services."  This is addressed in

subheadings "A" and "B" below.

The second way in which the intermediaries violated the Medicare statute (which is

addressed in subheading "C" below) is by applying the 5.8% and 10% reductions—which by

their terms are limited to costs associated with *outpatient* services—to costs associated with

ambulance services.  The straightforward point here is that ambulance services are *not*

"outpatient services" and thus the 5.8% and 10% reductions cannot apply to them.  This is a

separate and independent ground upon which summary judgment must be granted.

Both of the foregoing arguments are based on the first step of the *Chevron* analysis,

which is to determine whether Congress has spoken directly to the issue.  *See Chevron, U.S.A.,*

*Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984); *see also Nat'l*

*Treasury Employees Union v. Federal Labor Relations Auth.*, 392 F.3d 498, 500 (D.C. Cir.

2004) ("[w]hen Congress has spoken, we are bound by that pronouncement and that ends this

Court's inquiry.") (citing *Chevron*).  As explained in the subheadings that follow, Congress has

clearly spoken in the present matter by setting up a legislative scheme which is coherent,

consistent, and which clearly views the 5.8% and 10% reductions as being inapplicable to

ambulance services.

In the context of the APA, once a court finds that an agency has "made an error of law,

the court's inquiry is at an end: the case must be remanded to the agency for further action

consistent with the corrected legal standards." *Baystate Medical Center v. Leavitt*, Civil Action

No. 06-1263 (JDB), 2008 WL 836012 at *33 (D.D.C. Mar. 31, 2008) (citation omitted).  In the

present matter, the agency (the Secretary acting through his agents, the fiscal intermediaries)

erred in applying the 5.8% and 10% reductions to costs associated with ambulance services.  As

a result, the Administrator's decision must be reversed, and the matter remanded so that the

Secretary can correctly calculate the Plaintiffs' ambulance service reimbursement, in accordance

with the Medicare statute, together with a payment of mandatory statutory interest pursuant to 42

U.S.C. § 1395oo(f)(2).

A.    CMS's Interpretation Defies The Language Of The Statute.

The Medicare statute expressly required that when determining the cost-per-trip limit, the

base year cost must consist of a hospital's actual costs, not reduced costs.  First, in stunning

clarity, the Medicare statute defines "reasonable cost" as being "the cost *actually incurred.* . . ."

42 U.S.C. § 1395x(v)(1)(A) (emphasis added).  The cost-per-trip provision, for its part, states

that it is this *reasonable cost*—i.e. actual cost—which is to be used as the cost figure for the base

year:

> In determining the reasonable cost of ambulance services (as described in
> subsection (s)(7)) provided during fiscal year 1998, during fiscal year 1999, and
> during so much of fiscal year 2000 as precedes January 1, 2000, the Secretary
> shall not recognize the costs per trip in excess of costs recognized as reasonable
> for ambulance services provided on a per trip basis during the previous fiscal year
> (after application of this subparagraph), increased by the percentage increase in

the consumer price index for all urban consumers (U.S. city average) as estimated by the Secretary for the 12-month period ending with the midpoint of the fiscal year involved reduced by 1.0 percentage point.

42 § U.S.C. §1395x(v)(1)(U).

Thus, by its own terms, the Medicare statue mandates that the cost-per-trip limit be calculated based on the previous year's *actual* costs. *Id.* There is no reference in the provision to the 5.8% and 10% reductions. *Id.* It was therefore unlawful for the intermediaries to apply those reductions to the base year costs used to calculate the cost per trip limit.

The Secretary's formulation (in which intermediaries apply the 5.8% and 10% reductions to the base year) violates the syntax of the cost-per-trip provision. *See* 42 U.S.C. § 1395x(v)(1)(U). According to the provision, intermediaries are required to determine reimbursement based upon "costs recognized as reasonable . . . during the previous fiscal year." *Id.* The statute does *not* state that the intermediary is to determine the cost-per-trip limit by using "the cost recognized as reasonable during the previous fiscal year, *reduced by the 5.8% and 10% reduction. . . .*" In other words, "reasonable cost" is a dollar figure that has *not* been reduced by the 5.8% or 10% reductions. The fact that Congress used this un-reduced quantity as the base year means that the Secretary's contrary construction is incorrect.

Put another way, the Secretary, to comply with the 5.8% and 10% reductions in instances in which those reductions actually apply, reduces what already exist as reasonable costs. The reduction provisions themselves make clear that the "reasonable cost" of outpatient hospital services does not include, and is not derived from, application of the 5.8% and 10% reductions. For example, 42 U.S.C. § 1395x(v)(1)(s)(ii)(II) provides that the Secretary "*shall reduce the reasonable cost of outpatient services . . . by 5.8%.*" *Id.* (emphasis added). It does not provide that the Secretary shall *obtain* the reasonable cost by reducing some other figure by 5.8%.

Rather than prescribing a method for obtaining, arriving at, or calculating "reasonable cost," the reduction sections require that the 5.8% and 10% reductions be applied to reduce the reimbursement due, by discounting the independent and pre-existing "reasonable costs" of outpatient hospital services. *Id.*

Based on the foregoing, it makes no sense for the Secretary to apply the reductions to the base year of the cost-per-trip limit since the term "reasonable cost" does not incorporate the reductions and the cost-per-trip provision does not otherwise call for the reductions to be applied to the base year. Accordingly, the decision of the Administrator must be reversed and the Court should enter summary judgment in favor of the Plaintiffs.

### B. CMS's Interpretation Defies The Accepted Canons of Statutory Construction.

Had Congress intended for the cost-per-trip provision to incorporate the 5.8% and 10% reductions, it not only would have designated ambulance services as outpatient services, but it also would have referenced the reductions in the cost-per-trip provision itself. Congress legislates against the backdrop of accepted canons of statutory construction. The Supreme Court has repeatedly observed that "[i]t is presumed that Congress legislates with knowledge of our basic rules of statutory construction." *See, e.g., King v. St. Vincent's Hospital*, 502 U.S. 215, 221-22 n.9 (1991).

The BBA was enacted approximately seven years after the Omnibus Reconciliation Act of 1990. Had Congress intended for the 5.8% and 10% reductions to apply to the 1997 calculations, it would have said so, or made reference to these sections. Rather, Congress specifically treated ambulance services differently, and deliberately created a very specific means for imposing limits on ambulance service reimbursements. It did so by creating a formula

- 11 -

for calculating ambulance cost per trip limits, 42 U.S.C. §1395x(v)(1)(U), and providing for the phase-in of a fixed fee schedule for subsequent time periods. *See* 42 U.S.C. § 1395m(l).

It is a well established canon of statutory construction that more specific legislation prevails over more general legislation, and the courts have recognized that even where general legislation could be held to apply, the specific legislation will control. *See, e.g., Morton v. Mancari*, 417 U.S. 535, 550-51 (1974) ("Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment."); *D. Ginsberg & Sons, Inc. v. Popkin*, 285 U.S. 204, 208 (1932) (citations omitted) ("General language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment. . . . Specific terms prevail over the general in the same or another statute which otherwise might be controlling."); *Ginsburg, Feldman & Bress v. Federal Energy Admin.*, 591 F.2d 717, 720 n.5 (D.C. Cir. 1978)("Where statutes deal with a subject in both general and detailed terms, and there is conflict between the two, the detailed expression prevails.").

Congress's enactment in 1997 of the cost-per-trip limits for ambulance services was a deliberate and specific legislative act, clearly intended to prescribe a unique formula for ambulance reimbursement limits for a definite time period. *See* 42 U.S.C. § 1395x(v)(1)(U). The BBA's formula is highly specific and does not incorporate the 5.8% and 10% reductions. *Id.* This specific legislation cannot be trumped or diminished by the more general provisions, consisting of the reductions enacted in 1990, which do not even mention application to ambulance services. This is an additional ground upon which summary judgment must be granted.

**C.    The 5.8% and 10% Reductions Do Not Apply Because Ambulance Services Are Not "Outpatient Services."**

An additional and alternative ground upon which summary judgment must be granted is

the fact that the 5.8% and 10% reductions only apply to "outpatient services." 42 U.S.C. §

1395x(v)(1)(S)(ii)(I)-(II). Ambulance services are not "outpatient services." Medicare Part B

covers numerous and distinct "medical and other health services," most of which are itemized

under 42 U.S.C. § 1395x(s). Some of these services are outpatient services. *See e.g.,* 42 U.S.C.

§§ 1395x(s)(1) (outpatient physician services), 1395x(s)(2) (services and supplies related to

outpatient services).

It is clear that Congress, when it wishes to refer to outpatient services, does so by either

expressly using the word "outpatient" or by making an equivalently clear reference to the

outpatient nature of the services. *See, e.g.*, 42 U.S.C. § 1395x(g) ("*outpatient* occupational

therapy services") (emphasis added); 42 U.S.C. § 1395x(p) ("*outpatient* physical therapy

services") (emphasis added); 42 U.S.C. § 1395x(s)(2)(B) ("hospital services . . . rendered to

*outpatients*") (emphasis added); 42 U.S.C. § 1395x(s)(2)(C)(i) ("diagnostic services which are. . .

furnished to an individual as an *outpatient*") (emphasis added); 42 U.S.C. § 1395x(s)(2)(C)(ii)

("diagnostic services which are. . . ordinarily furnished by such hospital. . . to its *outpatients*")

(emphasis added); 42 U.S.C. § 1395m(k) ("payment for *outpatient* therapy services") (emphasis

added); 42 U.S.C. 42 U.S.C. § 1395x(s)(2)(A) (clearly referencing outpatient services by stating

that the provision applied to "services and supplies. . . furnished as an incident to a physician's

professional service, of kinds which are commonly furnished in physicians' offices"); 42 U.S.C.

§ 1395x(s)(2)(K)(i) (clearly indicating outpatient services by referencing "services which would

be physicians' services . . . if furnished by a physician . . . and which are performed by a

physician assistant").

Congress, however, has never referred to ambulance services as "outpatient services" nor described ambulance services in such a way as to suggest that they were outpatient services.

Furthermore, for hospital outpatient services rendered after January 1, 1999,[5] the statute provides for outpatient PPS as the method of reimbursement. *See* 42 U.S.C. § 13951(t). Congress, obviously not considering ambulance services to be "outpatient services," specifically excluded ambulance services from the outpatient PPS reimbursement system. 42 U.S.C. § 13951(t)(1)(B)(iv), (t)(10); 42 C.F.R. § 419.22(i). In other words, ambulance services are not viewed by Congress as "outpatient services" because ambulance services are not covered by outpatient PPS. *Id.* Ambulance services are currently treated by Congress—as under the cost-per trip limits at issue in the present matter—as a separate and distinct kind of cost, which is covered by its own special reimbursement method that has nothing to do with outpatient PPS. *Id.* Ambulance services are, instead, currently reimbursed through a complicated fee schedule set forth in a separate part of the statute. 42 U.S.C. § 1395m(l). At no point does Congress refer to ambulance services as "outpatient services" or describe them as resembling outpatient services. *Id.*

Finally, the structure of the reduction provisions themselves further illustrate the point that they were never intended to apply to ambulance services. By specifying that the 5.8% and 10% reductions only applied until the Secretary implemented outpatient PPS, the plain language of the statute evidences that Congress intended the reductions to be limited to only those services that would be covered by outpatient PPS. 42 U.S.C. § 13951 *et seq*. As stated above, it is

---

5    Hospital outpatient PPS was not actually implemented for most services until August 1, 2000; this memorandum refers to the January 1, 1999 targeted date, as it was the date referenced in the statute. The actual implementation date is not relevant in determining the issues on summary judgment.

undisputed that ambulance services are *not* covered by outpatient PPS, and have instead been reimbursed under the cost-per-limit approach and, subsequently, pursuant to a special fee schedule that applies only to ambulance services. *See* 42 U.S.C. §§ 1395x(v)(1)(U); 1395m(l). If Congress intended to have the reduction apply to ambulance services, it would not have cut off application of the reduction upon implementation of outpatient PPS, which does not cover ambulance services.

Reading the entire text of sections 1395l and 1395x, it is clear that ambulance services do not constitute "outpatient services." This is the correct approach because "[i]nterpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." *Dolan v. U.S. Postal Service*, 546 U.S. 481, 486 (2006). Furthermore, it is apparent that the "statutory scheme is coherent and consistent," *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002) (citation omitted), and that ambulance services are not "outpatient services" and are not treated as such by Congress.

Any notion that ambulance services should be considered "outpatient services" solely for the purpose of bringing them within the 5.8% and 10% reductions makes no sense. The Secretary, by applying the reduction, has violated the plain and unambiguous intent of the Medicare statute.

## CONCLUSION

Based on all of the foregoing, the Hospitals respectfully request that summary judgment be entered in their favor. Further, the Plaintiff Providers, as part of their motion for summary judgment, also seek an award of mandatory interest under the Medicare statute. *See* 42 U.S.C. § 1395oo(f)(2). The Medicare statute provides that, in a case which comes through the

- 15 -

administrative appeals process before the PRRB, like the case here, a prevailing hospital shall be awarded mandatory interest on the amount controversy. *Id.* The interest shall compound annually, and begins to accrue on the first day of the first month beginning after the 180-day period which follows the intermediary's issuance of the initial NPR under appeal. *Id.* The rate of interest shall be "equal to the rate of interest on obligations issued for purchase by the Federal Hospital Insurance Trust Fund for the month in which the civil action . . . is commenced." *Id.* The Secretary in the present matter, in addition to being ordered to recalculate the ambulance reimbursement for the noted years, should also be required, under the noted provision, to pay mandatory interest on the amounts due in accordance with the Medicare statute. *Id.*

For all of the foregoing reasons, illustrating that there exist no genuine issues of material fact and that Plaintiffs are entitled to judgment as a matter of law, Plaintiffs respectfully request, pursuant to Rule 56 of the Federal Rules of Civil Procedure, that the Court grant Plaintiffs' motion for summary judgment and enter an Order:

(i) granting declaratory judgment that the Secretary's reimbursement violated the Medicare statute, Medicare regulations and the APA;

(ii) remanding the matter to the Secretary and his Intermediaries, with the direction that they recalculate reimbursement for ambulance services without application of the 5.8% and 10% reductions, together with a payment of mandatory interest pursuant to 42 U.S.C. § 1395oo(f)(2)

(iii) granting such further relief that the Court deems appropriate.

Respectfully submitted,


_/s/ Jacqueline E. Bennett_____
Jacqueline E. Bennett
DC Bar #474355
**REED SMITH LLP**
1301 K Street, N.W.
Suite 1100 – East Tower
Washington, DC  20005
(202) 414-9200
(202) 414-9299 Facsimile
JBennett@ReedSmith.com

Attorneys for Plaintiffs


Dated:  April 17, 2008

# CENTERS FOR MEDICARE AND MEDICAID SERVICES
### *Decision of the Administrator*

| | |
|---|---|
| **In the case of:** | **Claim for:** |
| **Decatur County General Hospital** | **Provider Cost Reimbursement Determination for Cost Reporting Period Ending: June 30, 2000 and June 30, 2001** |
| **Provider** | |
| **vs.** | |
| **Blue Cross Blue Shield Association / Riverbend Government Benefits Administrators** | **Review of: PRRB Dec. No. 2007-D28 Dated: April 20, 2007** |
| **Intermediary** | |

This case is before the Administrator, Centers for Medicare & Medicaid Services (CMS), for review of the decision of the Provider Reimbursement Review Board (Board). The review is during the 60-day period in § 1878(f) (1) of the Social Security Act (Act), as amended (42 USC 1395oo (f)). The parties were notified of the Administrator's intention to review the Board's decision. CMS' Center for Medicare Management (CMM) and the Intermediary submitted comments requesting partial reversal of the Board's decision. Accordingly, this case is now before the Administrator for final agency review.

## BACKGROUND

Decatur County General Hospital, (the Provider), is a governmental acute care hospital chartered by the State of Tennessee. The Provider operates swing beds, a home health agency and a hospital-based emergency medical ambulance service for Decatur County. For the fiscal years at issue, the Provider reported the cost of ambulance services on the cost

reports and the Medicare charges for ambulance services on Worksheet D, Part V of the cost reports. As part of the final settlement of Provider's FYE 6/30/2000 and 6/30/2001 cost reports, the Intermediary reduced capital-related costs for outpatient hospital services by 10 percent and outpatient operating costs by 5.8 percent. The Provider disagreed with the application of the reduction factors to its ambulance services (which were also subjected to cost per trip limits) and filed a hearing request with the Board.

## ISSUE AND BOARD'S DECISION

The issue is whether the Provider's fiscal years ending (FYEs) 6/30/00 and 6/30/01 ambulance cost per trip limits were improperly low because the Intermediary improperly applied the 5.8 percent outpatient operating cost reduction and the 10 percent outpatient capital cost reduction to base year costs utilized to calculate those limits.

The Board held that the Intermediary improperly applied the 5.8 percent outpatient operating cost reduction and 10 percent outpatient capital cost reduction to base year costs used to calculate the Provider's FY 2000 ambulance cost per trip limits. The Board found that the Provider is entitled to cost reimbursement for ambulance services provided during FYE 6/30/01 (subject to the 5.8 percent and 10 percent reductions). No ambulance cost per trip limits are to be applied. The Board remanded the case to the Intermediary to recalculate the ambulance cost per trip limits accordingly and to modify its adjustments.

## SUMMARY OF COMMENTS

CMM submitted comments requesting that the Administrator overturn the Board's decision. Specifically, CMM requested reversal in part of the Board's decision on grounds that it would be contrary to consistent Medicare policy to reopen the base year for any adjustments or calculations. Across the Medicare program, and especially concerning the calculation of the base rate for ambulance services, CMM stated that they have followed the procedure that, once the base year rates are determined, they are not altered as this would have ramifications for all subsequent cost years.

CMM agreed that the 5.8 and 10 percent reduction factors were properly applied by the Intermediary as they were considered to be outpatient hospital services under Section 1861(v)(1)(S)(ii)(III) of the Act. CMM agreed that the 5.8 and 10 percent reductions should be applied to the ambulance services for the base year.

CMM disagreed with the Board's finding that payments for ambulance services were not subject to the cost per trip limit as of January 1, 2000. CMM stated that Congress' intent was to have the ambulance fee schedule implemented by January 1, 2000, which would have negated the need for the cost per trip limit if there had also been no transition period to the full ambulance fee schedule payment. In fact, the ambulance fee schedule was not implemented until April 1, 2002, and, even at that point, it was implemented with a 5-year transition period. This meant that all the provisions of the reasonable cost payment method had to remain in place as established by the Balanced Budget Act (BBA) of 1997 so that Congressional intent to limit the cost of ambulance services would not be undermined until the full implementation of the ambulance fee schedule was accomplished.

The Intermediary submitted comments requesting reversal in part of the Board's decision. The Intermediary contended that the ambulance cost was subject to the 5.8 percent and 10 percent reductions because the ambulance service is an outpatient service subject to the cost reductions. The cost reductions were correctly computed in the base year, as the base year was to reflect reasonable cost.

## DISCUSSION

The entire record, which was furnished by the Board, has been examined, including all correspondence, position papers, and exhibits. The Administrator has reviewed the Board's decision. All comments were received timely and are included in the record and have been considered. After a review of the record, applicable regulations and manual instructions, the Administrator finds that the Intermediary properly applied the 5.8 percent outpatient operating cost reduction and the 10 percent outpatient capital cost reduction to the base year costs used to calculate the Provider's FYE 2000 ambulance cost per trip limits.

Section 1861(v)(1)(A) of the Social Security Act establishes that Medicare pays for the reasonable cost of furnishing covered services to program beneficiaries, subject to certain limitations. This section of the Act also defines reasonable cost as "the cost actually incurred, excluding there from any part of incurred cost found to be unnecessary in the efficient delivery of needed health services." The Act further authorizes the Secretary to promulgate regulations establishing the methods to be used and the items to be included in determining such costs. Consistent with the statute, the regulation at 42 CFR §413.9 states

that all payments to providers of services must be based on the reasonable cost of services covered under Medicare and related to the care of beneficiaries.

In response to rising costs, and realizing that the original structure of reasonable costs provided little incentive for providers to operate efficiently in delivering services, Congress authorized the Secretary to establish cost limits under Section 1861(v)(1)(A) of the Act.

Specifically, the Secretary has the authority to:

> [p]rovide for the establishment of limits on the direct or indirect overall incurred costs... based on estimates of the costs necessary in the efficient delivery of needed health services...

In addition, relevant to the reasonable cost principles above, existing Medicare law contains reduction factors for application to outpatient hospital services. Section 1886(v)(1)(s)(ii) of the Act states:

> (I) ... in determining the amount of the payments that may be made under this title with respect to all the capital-related costs of outpatient hospital services, the Secretary shall reduce the amounts of such payments otherwise established under this subchapter... by 10 percent for payments attributable to portions of cost reporting periods occurring during fiscal years 1992 through 1999 and until the first date that the prospective payment system under section 1833(t) of this title is implemented. (Emphasis added.)

> (II) The Secretary shall reduce the reasonable cost of outpatient hospital services (other than capital-related costs of such services) otherwise determined pursuant to section 1833(a)(2)(B)(i)(I) by 5.8 percent for payments attributable to portions of cost reporting periods occurring during fiscal years 1991 through 1999 and until the first date that the prospective payment system under section 1833(t) is implemented (emphasis added.)

As further evidence that the ambulance services at issue are outpatient hospital services, (although not covered under Outpatient PPS), Section 1833 of the Act states, in relevant part:

(t) Prospective payment system for hospital outpatient department services–

> (1) Amount of payment ...
>> (B) Definition of covered OPD services
>
> For purposes of this subsection, the term "covered OPD services"--...
>
>> (iv) does not include ... ambulance services, for which payment is made under a fee schedule described in section 1834(k) of this title or section 1834(l) of this section...
>
> (10) Special rule for ambulance services.
> The Secretary shall pay for hospital outpatient services that are ambulance services on the basis described in section 1861(v)(1)(U) of this title, or, if applicable, the fee schedule established under 1833(l) of this title (emphasis added).

Furthermore, 42 CFR §419.22 states:

> Hospital outpatient services excluded from payment under the hospital outpatient prospective payment system.
>
> The following services are not paid for under the hospital outpatient prospective payment system:
>
>> (i) Ambulance services, as described in section 1861(v)(1)(U) of the Act, or, if applicable, the fee schedule under section 1834(1).

Accordingly, as the Board correctly determined, the ambulance services at issue are subject to the 5.8 percent and 10 percent reduction factors, as ambulance services are outpatient hospital services.

Regarding whether the costs recognized as reasonable in the base year should include the application of 5.8 percent and 10 percent reduction factors, the Administrator finds that the Intermediary properly applied the reduction factors to the Provider's base year costs. Pursuant to the Balanced Budget Act of 1997, Congress enacted Section 1861(v)(1)(U), which provided the following cost per trip limit to determine the payment for ambulance services:

6

In determining the reasonable cost of ambulance services... provided during fiscal year 1998, during fiscal year 1999, and during so much of fiscal year 2000 as precedes January 1, 2000, the Secretary shall not recognize the costs per trip in excess of costs <u>recognized as reasonable</u> for ambulance services provided on a per trip basis during the previous fiscal year ... increased by the percentage increase in the consumer price index for all urban consumers (U.S. city average) as estimated by the Secretary for the 12-month period ending with the midpoint of the fiscal year involved reduced by 1.0 percentage point. (Emphasis added.)

Congress was concerned with escalating outpatient costs when it established the 10 percent and 5.8 percent reduction in costs for outpatient services and also the "cost per trip" limitation. The Secretary, in implementing the further cost containment measure reflected in the "cost per trip" provision, reasonably determined that the costs "recognized as reasonable" in the base year, should reflect the 10 percent and 5.8 percent reduction. That is, the base year costs, after application of the outpatient reductions, are in fact the costs "recognized as reasonable" under the Medicare program.

The Administrator finds that the application of these reductions to the cost per trip base year is consistent with the statutory language of section 1861(v)(1)(U) and congressional concerns regarding escalating costs of outpatient and ambulance services. In addition, this policy is within the Secretary's authority under the reasonable cost provisions of section 1861(v)(1)(A) of the Act and the program. In light of the foregoing, the Administrator disagrees with the Board and finds that the Intermediary's application of the 5.8 percent outpatient operating cost reduction and 10 percent outpatient capital cost reduction to base year costs used to calculate the Provider's FYEs 2000 and 2001 ambulance cost per trip limits was appropriate. Application of the cost reduction factors to the base year produces costs that are reasonable as recognized by the Secretary and effectuates the intent of Congress to reduce and avoid excess cost per trip. Accordingly, the Board's decision is modified and the Intermediary's determination of the Provider's cost per trip for the cost years at issue is upheld.

Further, regarding the application of the cost per trip limit after January 1, 2000, Section 4531(b)(4) of the BBA, which added section 1834(1)(3), sets forth the statutory provisions indicating that the fee schedule was to be effective for ambulance services on or after January 1, 2000. The Secretary was unable to implement the ambulance fee schedule until April 1, 2002, due to system changes and Y2k compliance, payment for ambulance services should not revert back to pre-BBA cost reimbursement. The Secretary clearly intended to

implement the reimbursement changes to ambulance services as instructed, but was forced to delay the implementation of a national fee schedule due to the difficulties it experienced.

Congress, under the BBA, mandated the establishment of a national fee schedule to remedy the problems experienced under the reasonable charge methodology, to provide consistency in payments and continue cost containment for ambulance related services. Under the fee schedule methodology, Congress was continuing to require the Secretary to establish mechanisms to control increases in expenditures for ambulance services under Part B of the Medicare program. Congress was also requiring the Secretary to ensure that aggregate payment amounts made in the first year under the fee schedule not exceed the aggregate amount of payment that would have been made for such services had the cost per trip limitation applied. Thus, there is no statutory provision to support a finding that payment for ambulance services would revert back to pre-BBA cost reimbursement without its cost per trip cost containment measure, if the ambulance fee schedule were not implemented by January 1, 2000. A policy to allow payments for the period after January 1, 2000 until the implementation of the fee schedule without application of the cost per trip limitation. would be inconsistent with, and undermine, the overall statutory scheme for ambulance services. Such a policy would also be inconsistent with the Secretary's determination of the reasonable cost of ambulance services under the Medicare program.

Thus, the Provider is not entitled to cost reimbursement for ambulance services for FYE June 30, 2001 without application of the cost per trip limits. The Administrator finds that the Intermediary's application of the cost per trip limitation for the Provider's fiscal years at issue was proper.

## DECISION

The decision of the Board is modified in accordance with the foregoing opinion. The Intermediary's calculation and application of the Provider's cost per trip limitation for the cost years at issue is upheld.

### THIS CONSTITUTES THE FINAL ADMINISTRATIVE DECISION OF THE SECRETARY OF HEALTH AND HUMAN SERVICES

Date: 6/27/07

Herb B. Kuhn
Acting Deputy Administrator
Centers for Medicare & Medicaid Services

# PROVIDER REIMBURSEMENT REVIEW BOARD DECISION

2007-D28

**PROVIDER -**
Decatur County General Hospital
Parsons, Tennessee

Provider No.: 44-0070

**vs.**

**INTERMEDIARY -**
BlueCross BlueShield Association/
Riverbend Government Benefits
Administrators

**DATES OF HEARINGS -**
*LIVE* - March 3, 2005 (Case No.: 03-0513)
*RECORD* - June 28, 2006 (Case No. 04-0456)

Cost Reporting Periods Ended -
June 30, 2000 and June 30, 2001

**CASE NOs.:** 03-0513 and 04-0456

## INDEX

| | Page No. |
|---|---|
| Issue | 2 |
| Medicare Statutory and Regulatory Background | 2 |
| Statement of the Case and Procedural History | 2 |
| Provider's Contentions | 3 |
| Intermediary's Contentions | 4 |
| Findings of Fact, Conclusions of Law and Discussion | 5 |
| Decision and Order | 7 |

**20**

Page 2                                         CN: 03-0513, 04-0456

ISSUE:

Whether the FYEs 6/30/00 and 6/30/01 ambulance cost per trip limits were improperly low because the Intermediary improperly applied the 5.8% outpatient operating cost reduction and the 10% outpatient capital cost reduction to base year costs utilized to calculate those limits.

MEDICARE STATUTORY AND REGULATORY BACKGROUND:

This is a dispute over the amount of Medicare reimbursement due a provider of medical services.

The Medicare program was established to provide health insurance to the aged and disabled. 42 U.S.C. §§1395-1395cc. The Centers for Medicare and Medicaid Services (CMS), formerly the Health Care Financing Administration (HCFA), is the operating component of the Department of Health and Human Services (DHHS) charged with administering the Medicare program. CMS' payment and audit functions under the Medicare program are contracted out to insurance companies known as fiscal intermediaries. Fiscal intermediaries determine payment amounts due the providers under Medicare law and under interpretive guidelines published by CMS. See 42 U.S.C. §1395(h), 42 C.F.R. §§413.20(b) and 413.24(b).

At the close of its fiscal year, a provider must submit a cost report to the fiscal intermediary showing the costs it incurred during the fiscal year and the portion of those costs to be allocated to Medicare. 42 C.F.R. §413.20. The fiscal intermediary reviews the cost report, determines the total amount of Medicare reimbursement due the provider and issues the provider a Notice of Program Reimbursement (NPR). 42 C.F.R. §405.1803. A provider dissatisfied with the intermediary's final determination of total reimbursement may file an appeal with the Provider Reimbursement Review Board (Board or PRRB) within 180 days of the issuance of the NPR. 42 U.S.C. §1395oo(a); 42 C.F.R. §405.1835.

STATEMENT OF THE CASE AND PROCEDURAL HISTORY

Decatur County General Hospital (the Provider), a governmental acute care hospital chartered by the State of Tennessee, is located in Parsons, Tennessee. The Provider operates swing beds, a home health agency and a hospital-based emergency medical ambulance service for Decatur County. For the fiscal years at issue, the Provider reported the cost of ambulance services on the cost reports and the Medicare charges for ambulance services on Worksheet D, Part V of the cost reports. As part of the final settlement of Provider's FYE 6/30/2000 and 6/30/2001 cost reports, the Intermediary reduced capital-related costs for outpatient hospital services by 10 percent and outpatient operating costs by 5.8 percent.[1] The Provider disagreed with the application of the

---

[1] This reduction was built into the software that the Provider used to file the initial cost report and the software used by the Intermediary to finalize the cost report. The

reduction factors to its ambulance services (which were also subjected to cost per trip limits) and filed a timely hearing request with the Board. The amounts in dispute are approximately $19,000 and $130,004 for FYE 6/30/00 and 6/30/01 respectively.

The Provider was represented by Stephen B. Roosa, Esq., of Reed Smith LLP. The Intermediary was represented by James R. Grimes, Esq., of Blue Cross Blue Shield Association.[2]

PROVIDER'S CONTENTIONS

The Provider contends that the Intermediary erred when it applied the 5.8% and 10% reduction factors. The Provider argues that ambulance services have always been treated differently than other outpatient services because they are excluded from the "72 hour rule"[3] under which outpatient services are paid pursuant to an inpatient diagnosis related group (DRG). Also, hospital-based ambulance services are excluded from the outpatient prospective payment system (OPPS); therefore, the fact that the application of these reductions ended upon the adoption of Outpatient PPS is further evidence that Congress did not intend for them to apply to ambulance services.

The Provider also notes that the 5.8% and 10% reduction factors apply to services listed at 42 U.S.C. §1395x(s)(2)(A-D) which define outpatient hospital services. Ambulance services, however, are separately defined at 42 U.S.C.§1395x(s)(7). Accordingly, the 5.8% and 10% reduction factors that apply to outpatient hospital services pursuant to §§1395x(v)(1)(S)(ii) (I and II), do not apply to ambulance services. This is further supported by the fact that 42 U.S.C. §1395x(v)(1)(U), which provides instruction regarding how to calculate the ambulance services cost per trip limit, does not discuss the reduction factors.

The Provider also contends that, irrespective of whether ambulance services qualify as outpatient hospital services pursuant to §§1395x(v)(1)(S)(ii)(I and II), the 5.8% and 10% reduction factors should not have been applied in the base year; rather, the Intermediary should have used the Provider's actual costs for the base year to determine the cost per trip limit. Because the reduction factors were applied to the base year costs, the Provider's ambulance trip reimbursement for the subsequent cost reporting periods was understated.

The Provider explains that 42 U.S.C. §1395x(v)(1)(U), which determines the reasonable cost of ambulance services by establishing a cost per trip limit, is based upon the costs

---

Provider filed a protested amount on its cost reports alleging that the reduction of ambulance service reimbursement was improper.

[2] Subsequent to the March 3, 2005 telephonic hearing for Case No. 03-0513, the parties agreed to adjudicate Case No. 04-0456 (FYE 6/30/2001) on the record and to officially incorporate the hearing transcript of March 3, 2005 into Case No. 04-0456. See Intermediary's Amended Final Position Paper (Case No. 04-0456) at Exhibit (Ex) 16.

[3] See 42 U.S.C. §1395ww(a)(4); 42 C.F.R. §§412.2(c)(5).

recognized as reasonable in the prior fiscal year. Accordingly, the statute is based on the premise that a base year exists, and what is recognized is the amount determined as "reasonable cost," as opposed to the amount paid for the previous year. Additionally, 42 U.S.C. §1395(x)(v)(1)(A) defines "reasonable cost" as the cost actually "incurred" (as opposed to the Medicare payment after the reduction). Likewise, the statute which establishes the reduction itself, §1395x(v)(1)(S)(ii) states that the Secretary should reduce the "reasonable costs" as opposed to making a reduction to obtain the reasonable costs. Moreover, Congress only intended these reductions to apply to outpatient operating costs and capital costs that are now covered by outpatient PPS. The Provider claims that a recognizable, discrete, distinction exists between ambulance services and outpatient services subject to the 5.8% and 10% reduction factors.

Finally, the Provider contends that the Intermediary erroneously applied the ambulance cost per trip limits in determining its ambulance cost reimbursement for FYE 2001. The Reimbursement methodology should have been based on full cost reimbursement without any limitations and without the 5.8% and 10% cost reduction factors as the statute at 42 U.S.C. §1395(v)(1)(U) states that the cost per trip limit only applies prior to January 1, 2000. If Congress had intended for the cost per trip limits to continue to apply until Outpatient PPS was actually implemented, it would have said so, rather than stating a specific cut off date.

## INTERMEDIARY'S CONTENTIONS

The Intermediary contends that the 5.8% and 10% cost reduction provisions of the Social Security Act apply because under 42 U.S.C. §1395(x)(s)(7) patients transported by ambulance (with the exception of patients being transported between hospitals) are outpatients covered under Part B. Although the Intermediary does not dispute the Provider's contention that ambulance services are treated differently from other outpatient services in certain situations, that different treatment alone does not dictate redefining ambulance services as something other than an outpatient service.

Section 1861(v)(1)(S)(ii)(III) of the Social Security Act, which provides for an exception for the cost reduction provisions applicable to the costs of outpatient services provided by critical access hospitals and sole community hospitals, does not apply to this Provider. Additionally, the cost per trip limit was reported correctly in the base year as including the 5.8% and 10% reductions. That reported amount is the reasonable cost for purposes of establishing the base year.

The Intermediary explains that the Balanced Budget Act (BBA) indicates that the fee schedule was to be effective for ambulance services on or after January 1, 2000 and that CMS, through its September 12, 2000 proposed rule, indicated its intention to implement the schedule beginning January 1, 2001. However, the fee schedule was not actually implemented until April 1, 2002. In spite of this fact, the Intermediary contends that the reimbursement for ambulance services should not revert back to pre-BBA cost reimbursement for FYE June 30, 2001 because this treatment would undermine Congressional intent to limit the cost of ambulance services.

CN: 03-051 , 04-0456

FINDINGS OF FACT, CONCLUSIONS OF LAW AND DISCUSSION:

After considering the Medicare law and program instructions, evidence presented and the
parties' contentions, the Board concludes that the ambulance services at issue are subject
to the 5.8 percent and 10 percent reduction factors, although such reduction factors
should not be applied to the base year.

42 USC §1395x(v)(1)(S)(ii) provides that such reduction factors be applied to outpatient
hospital services:

> (I) . . . in determining the amount of the payments that may be made under this
> title with respect to all the capital-related costs of <u>outpatient hospital services</u>, the
> Secretary shall reduce the amounts of such payments otherwise established under
> this subchapter . . . by 10 percent for payments attributable to portions of cost
> reporting periods occurring during fiscal years 1992 through 1999 and until the
> first date that the prospective payment system under section 1395*l*(t) of this title is
> implemented (emphasis added).

> (II) The Secretary shall reduce the reasonable cost of <u>outpatient hospital services</u>
> (other than capital-related costs of such services) otherwise determined pursuant
> to section 1395*l*(a)(2)(B)(i)(I) by 5.8 percent for payments attributable to portions
> of cost reporting periods occurring during fiscal years 1991 through 1999 and
> until the first date that the prospective payment system under section 1395*l*(t) is
> implemented (emphasis added).

Pursuant to the Balanced Budget Act of 1997 (42 U.S.C. §1395x(v)(1)(U)), Congress
enacted the following cost per trip limit to determine the reasonable cost of ambulance
services.

> In determining the reasonable cost of ambulance services . . . provided during
> fiscal year 1998, during fiscal year 1999, and during so much of fiscal year 2000
> as precedes January 1, 2000, the Secretary shall not recognize the costs per trip in
> excess of costs recognized as reasonable for ambulance services provided on a per
> trip basis during the previous fiscal year . . . increased by the percentage increase
> in the consumer price index for all urban consumers (U.S. city average) as
> estimated by the Secretary for the 12-month period ending with the midpoint of
> the fiscal year involved reduced by 1.0 percentage point.

Page 6                                    CN: 03-0513, 04-0456

Additionally, 42 U.S.C. §1395x(s)[4] has seventeen subsections that define medical and other health services. Subsection (7) defines ambulance services as medical and health services. The Board agrees with the Provider that four of the twenty-two subparts (§§A-D) of subsection (2) of 42 USC §1395(x)(s) *clearly describe* "outpatient hospital services." However, the Board finds no merit or authority for the Provider's contention that these four subparts *exclusively* define "outpatient hospital services." Thus, the Board finds that the ambulance services at issue are subject to the 10% and 5.8% reduction factors.

As further evidence that the ambulance services at issue are outpatient hospital services, (although not covered under Outpatient PPS), 42 U.S.C.§1395*l* states, in relevant part:

> …(t) Prospective payment system for hospital outpatient department services—
>
> > (1) Amount of payment. . . .
> > (B) Definition of covered OPD services
> > For purposes of this subsection, the term "covered OPD services"--…
> > > (iv) does not include…ambulance services, for which payment is made under a fee schedule described in section 1395m(k) of this title or section 1395m(l) of this section. . .
> > (10) Special rule for ambulance services
> > The Secretary shall pay for hospital outpatient services that are ambulance services on the basis described in section 1395x(v)(1)(U) of this title, or, if applicable, the fee schedule established under 1395m(l) of this title (emphasis added.)

---

[4] 42 U.S.C. §1395x(s) states, in relevant part
(s) The term "medical and other health services" means any of the following items or services:
> (2) (A) services and supplies…furnished as an incident to a physician's professional service, of kinds which are commonly furnished in physicians' offices and are commonly either rendered without charge or included in the physicians bills;
> (B) hospital services… incident to physicians' services rendered to outpatients and partial hospitalization services incident to such services;
> (C) diagnostic services which are—
> > (i) furnished to an individual as an outpatient by a hospital or by others under arrangement with them made by a hospital, and
> > (ii) ordinarily furnished by such hospital…to its outpatients for the purpose of diagnostic study;
> (D) outpatient physical therapy services and outpatient occupational therapy services;
> (7) ambulance service where the use of other methods or transportation is contraindicated by the individual's condition, but . . . only to the extent provided in regulations.

Page 7                                    CN: 03-05 i ɔ, 04-0456

42 C.F.R. §419.22 states:

> Hospital outpatient services excluded from payment under the hospital
> outpatient prospective payment system.
>
> The following services are not paid for under the hospital
> outpatient prospective payment system:
>
> (i) Ambulance services, as described in section 1861(v)(1)(U) of
> the Act, or, if applicable, the fee schedule under section 1834(l).

Accordingly, the Board finds that the ambulance services at issue are subject to the 5.8%
and 10% reduction factors, as they are outpatient hospital services.

Regarding whether the costs recognized as reasonable in the base year should include the
application of the 5.8% and 10% reduction factors, the Board agrees with the Provider
that the reductions should not be applied to the base year. The Board also agrees with the
Provider that 42 U.S.C §1395x(v)(1)(S) and the statutory scheme support the premise that
the 5.8% and 10% reductions are made to arrive at reasonable costs.[5]

The Board also finds that no statutory or regulatory provision extended the cost per trip
limits beyond January 1, 2000. 42 U.S.C. x(v)(1)(U), which establishes the cost per trip
limit, states:

> In determining the reasonable cost of ambulance services (as described in
> subsection (s)(7) of this section) provided during fiscal year 1998, during fiscal
> year 1999 and during so much of fiscal year 2000 as precedes January 1, 2000,
> the Secretary shall not recognize the costs per trip in excess of costs recognized as
> reasonable for ambulance services provided on a per trip basis during the previous
> fiscal year . . .

Accordingly, for the FYE June 30, 2001 cost reporting period, the Provider is entitled to
be reimbursed for reasonable costs for FYE 2001 without the application of the cost per
trip limit.

DECISION AND ORDER:

The Intermediary improperly applied 5.8% outpatient operating cost reduction and10%
outpatient capital cost reduction to base year costs used to calculate the Provider's FY
2000 ambulance cost per trip limits.

The Provider is entitled to costs reimbursement for ambulance services provided during
FYE 6/30/2001 (subject to the 5.8 percent and 10 percent reductions). No ambulance
cost per trip limits are to be applied. The Board hereby remands this case to the

---

[5]  See also 42 U.S.C. §§1395(x)(v)(1)(A)and (U).

Page 8                                    CN: 03-0515, 04-0456

Intermediary to recalculate the ambulance cost per trip limits accordingly and to modify its adjustments.

BOARD MEMBERS PARTICIPATING:

Suzanne Cochran, Esquire
Gary B. Blodgett, D.D.S.
Elaine Crews Powell, C.P.A.
Anjali Mulchandani-West
Yvette C. Hayes

FOR THE BOARD:
   APR 2 0 2007

Suzanne Cochran
Chairperson

27

Protested Item — Ambulance Reim~ ~ment Reductions
Decatur County General Hospital
June 30, 2001



EXHIBIT P-5

**Calculation of amount in controversy**

**Part 1 -- Subject to Cost per trip limit from 7-1-2000 through 9-30-2000**

| | |
|---|---:|
| Ambulance cost to charge ratio from cost report FYE 6-30-97: | |
| Worksheet C, Part I, line 65, column 9 | 0.836089 |
| | |
| Ambulance cost to charge ratio with cost reductions: | |
| Worksheet C, Part II, line 65, column 8 | 0.784570 |
| | |
| Difference in Ambulance ratios of costs and charges | 0.051519 |
| | |
| Medicare Ambulance Charges: | |
| Worksheet D, Part V, line 65, column 5 | $ 476,520 |
| | |
| Medicare reimbursement difference--amount in controversy FYE 6-30-97 | $ 24,550 |
| | |
| Medicare ambulance trips | 2,030 |
| | |
| Cost per trip amount in controversy | $ 12.09 |

| | |
|---|---:|
| Update factor for period (10-1-97 to 9-30-98) | 1.013 |
| Update factor for period (10-1-98 to 9-30-99) | 1.009 |
| Update factor for period (10-1-99 to 9-30-2000) | 1.024 |
| | |
| Cost per trip amount in controversy for services furnished between 7-1-2000 to 9-30-2000 | $ 12.66 |
| | |
| Number of ambulance trips between 7-1-2000 and 9-30-2000 | 400 |
| | |
| Medicare reimbursement difference--amount in controversy Part 1 | $ 5,063 |

**Part 2 -- Subject to Cost per trip limit from 10-1-2000 through 6-30-2001**

| | |
|---|---:|
| Cost per trip amount in controversy for services furnished between 7-1-2000 to 9-30-2000 | $ 12.66 |
| | |
| Update factor for period (10-1-2000 to 9-30-2001) | 1.019 |
| | |
| Cost per trip amount in controversy for services furnished between 10-1-2000 to 6-30-2001 | $ 12.90 |
| | |
| Number of ambulance trips between 10-1-2000 and 6-30-2001 | 1,326 |
| | |
| Medicare reimbursement difference--amount in controversy Part 2 | $ 17,103 |
| | |
| Medicare reimbursement difference--amount in controversy Parts 1 & 2 | $ 22,166 |

| | |
|---|---:|
| **Calculation of percentage of reduction in reimbursement:** | |
| Medicare reimbursement for ambulance | |
| Worksheet D, Part V, line 65, column 9 in cost report FYE 6-30-2001 | $ 336,853 |
| | |
| Add protested item--amount in controversy | 22,166 |
| | |
| Medicare reimbursement for ambulance before 5,8% and 10% reductions in allowable operating and capital costs, respectively | $ 359,019 |
| | |
| Percentage reduction in Medicare reimbursement | 6.17% |



Exhibit P

63

Protested Item – Ambulance Reimbursement Per Trip Limit                                    Exhibit P-6
Decatur County General Hospital
June 30, 2001


Ambulance service cost to charge ratio:
Ambulance Full Cost, Worksheet C, column 3, line 65                                        $671,920
Ambulance Total Charges, Worksheet C, column 8, line 65                                     739,470
Ratio of cost to charges (RCC)                                                             0.908651

Medicare Cost for 7/1/2000 through 6/30/2001:
Medicare Charges for 7/1/2000 through 7/31/2000, Worksheet D, Part V, column 5.02, line 65.01        46,848
Medicare Full Cost Reimbursement for 7/1/2000 through 7/31/2000                              42,568

Medicare Charges for 8/1/2000 through 6/30/2001, Worksheet D, Part V, column 5.02, line 65.02       442,487
Medicare Full Cost Reimbursement for 8/1/2000 through 6/30/2001                             402,066
Medicare Full Cost Reimbursement for 7/1/2000 through 6/30/2001                             444,635

Medicare Reimbursement Calculation with Cost Per Trip Limit for 7/1/2000 through 9/30/2000:
Cost per trip amount for 7/1/2000 through 9/30/2000, Worksheet S-2, line 56                  192.36
Ambulance trips (Medicare patients) for 7/1/2000 through 9/30/2000, Worksheet S-3, column 4, line 27        400
Medicare Limited Reimbursement for 7/1/2000 through 9/30/2000                                76,944

Medicare Reimbursement Calculation with Cost Per Trip Limit for 10/1/2000 through 6/30/2001:
Cost per trip amount for 10/1/2000 through 6/30/2001, Worksheet S-2, line 56.01              196.56
Ambulance trips (Medicare patients) for 10/1/2000 through 6/30/2001, Worksheet S-3, column 4, line 27.01        1,322
Medicare Limited Reimbursement for 10/1/2000 through 6/30/2001                              259,852

Medicare Limited Reimbursement for 7/1/2000 through 6/30/2001                               336,796

Amount in controversy for 7/1/2000 through 6/30/2001                                       $ 107,838

Protested Item – Ambulance Reimbursement Reductions                     EXHIBIT P-6
Decatur County General Hospital
June 30, 2000

**Calculation of amount in controversy**

Part 1 – Subject to Cost per trip limit from 7-1-99 through 9-30-99

| | |
|---|---:|
| Ambulance cost to charge ratio from cost report FYE 6-30-97: | |
| Worksheet C, Part I, line 65, column 9 | 0.836089 |
| | |
| Ambulance cost to charge ratio with cost reductions: | |
| Worksheet C, Part II, line 65, column 8 | 0.784570 |
| | |
| Difference in Ambulance ratios of costs and charges | 0.051519 |
| | |
| Medicare Ambulance Charges: | |
| Worksheet D, Part V, line 65, column 5 | $ 476,520 |
| | |
| Medicare reimbursement difference--amount in controversy FYE 6-30-97 | $ 24,550 |
| | |
| Medicare ambulance trips | 2,030 |
| | |
| Cost per trip amount in controversy | $ 12.09 |

| | |
|---|---:|
| Update factor for period (10-1-97 to 9-30-98) | 1.013 |
| Update factor for period (10-1-98 to 9-30-99) | 1.009 |
| | |
| Cost per trip amount in controversy for services furnished between 7-1-99 to 9-30-99 | $ 12.36 |
| | |
| Number of ambulance trips between 7-1-99 and 9-30-99 | 355 |
| | |
| Medicare reimbursement difference--amount in controversy Part 1 | $ 4,388 |

Part 2 – Subject to Cost per trip limit from 10-1-99 through 6-30-2000

| | |
|---|---:|
| Cost per trip amount in controversy for services furnished between 7-1-99 to 9-30-99 | $ 12.36 |
| | |
| Update factor for period (10-1-99 to 9-30-2000) | 1.024 |
| | |
| Cost per trip amount in controversy for services furnished between 10-1-99 to 6-30-2000 | $ 12.66 |
| | |
| Number of ambulance trips between 10-1-99 and 6-30-2000 | 1,156 |
| | |
| Medicare reimbursement difference--amount in controversy Part 2 | $ 14,632 |
| | |
| Medicare reimbursement difference--amount in controversy Parts 1 & 2 | $ 19,020 |

| | |
|---|---:|
| **Calculation of percentage of reduction in reimbursement:** | |
| Medicare reimbursement for ambulance | |
| Worksheet D, Part V, line 65, column 9 in cost report FYE 6-30-2000 | $ 289,193 |
| | |
| Add protested item--amount in controversy | 19,020 |
| | |
| Medicare reimbursement for ambulance before 5,8% and 10% reductions in allowable operating and capital costs, respectively | $ 308,213 |
| | |
| Percentage reduction in Medicare reimbursement | 6.17% |

Exhibit P-6, AmbProtest 2000

34.0456



# Decatur County General Hospital

P.O. Box 250 • Parsons, TN  38363 • Phone (731) 847-3031 • Fax (731) 847-1122

**Sent Certified Mail** (7002 0860 0003 4044 2900    )
**Return Receipt Requested**

December 11, 2003

RECEIVED

DEC 1 5 2003

PROVIDER REIMB !RSEMENT
REVIEW BOARD

Suzanne Cochran, Esquire
Department of Health and Human Services
Provider Reimbursement Review Board
2520 Lord Baltimore Drive, Suite L
Baltimore, Maryland  21244-2670

RE:  Decatur County General Hospital
     Provider No: 44-0070, 44-U070 and 44-7147
     FYE 06/30/2001

Dear Ms. Cochran:

Pursuant to 42 C.F.R. §405.1835 and §405.1839 and PRM-I, §2920, Decatur County
General Hospital (the "Provider") appeals the Notice of Program Reimbursement (the
"Notice") calculated by Riverbend Government Benefits Administrator (the
"Intermediary") for the fiscal year ended June 30, 2001, dated June 26, 2003.  The total
effect on reimbursement of the adjustment appealed is more than $10,000, which grants
the Provider the right to a hearing before the Provider Reimbursement Review Board.

List of Issues

The Provider disagrees with and takes exception to the adjustment as described in the
enclosed List of Issues letter addressed to the Intermediary in regard to their
determination of Medicare reimbursement FYE: 06/30/2001, as presented in the Notice.
The adjustment and the issue for the Provider's disagreements are described in that letter.

As a result of this adjustment, the Notice does not properly reflect the settlement due the
Provider for fiscal year ended June 30, 2001.  Included is a copy of the Notice and the
audit report containing the adjustment.  In addition, the Statement of Reimbursable Costs
that calculates the final determination presented in the Notice is also enclosed.



Community Healthcare Alliance

1118

Suzanne Cochran, Esquire
Provider Reimbursement Review Board

Page 2
December 11, 2003

<u>Letter of Representation</u>

Incorporated herein, with this appeal request, is our notice of representation.  Please
address all questions or requests for additional information regarding this Appeal to the
Provider's appointed representative:

> McKibben Consulting
> 322 Emery Drive
> P. O. Box 140137
> Nashville, Tennessee  37214-0137
> <u>Attention</u>: Michael S.McKibben,
> Principal

Thank you for your assistance in the processing of this Appeal.  Should you require any
information regarding this Appeal, which our representative cited above can not provide,
please call me at (731) 837-3031.

Sincerely,

Larry N. Lindsey, dh

Larry N. Lindsey
Administrator

Enclosures

Copies to  Mr. Raymond Pietrucha
Blue Cross / Blue Shield Association
Provider Appeals
225 N. Michigan Avenue
Chicago, Illinois  60601-7680

Mr. David Jackson, Director
Provider Reimbursement
Riverbend Government
  Benefits Administrator
801 Pine Street
Chattanooga, Tennessee
  37402-2555

Mrs. Donna Hayes, Controller, DCGH
Mr. Michael McKibben, CPA



03-0513
SNA
2/13/03



# Decatur County General Hospital

P.O. Box 250 • Parsons, TN 38363 • Phone (901) 847-3031 • Fax (901) 847-3354

<u>Sent Certified Mail</u> (7000 1530 0004 4004 8423)
<u>Return Receipt Requested</u>

January 22, 2003

Mr. Irvin W. Kues, Chairman
Department of Health and Human Services
Provider Reimbursement Review Board
2520 Lord Baltimore Drive, Suite L
Baltimore, Maryland 21244-2670

RE:  Decatur County General Hospital
     Provider No: 44-0070, 44-U070 and 44-7147
     FYE 06/30/2000

Dear Mr. Kues:

Pursuant to 42 C.F.R. §405.1835 and §405.1839 and PRM-I, §2920, Decatur County
General Hospital (the "Provider") appeals the Notice of Program Reimbursement (the
"Notice") calculated by Riverbend Government Benefits Administrator (the
"Intermediary") for the fiscal year ended June 30, 2000, dated July 31, 2002. The total
effect on reimbursement of the adjustments appealed is more than $10,000, which grants
the Provider the right to a hearing before the Provider Reimbursement Review Board.

<u>List of Issues</u>

The Provider disagrees with and takes exception to each of the adjustments as described
in the enclosed List of Issues letter addressed to the Intermediary in regard to their
determination of Medicare reimbursement FYE: 06/30/2000, as presented in the Notice.
The adjustments and the issues for the Provider's disagreements are described in that
letter.

As a result of those adjustments, the Notice does not properly reflect the settlement due
the Provider for fiscal year ended June 30, 2000. Included is a copy of the Notice and the
audit report containing the adjustments. In addition, the Statement of Reimbursable
Costs that calculates the final determination presented in the Notice is also enclosed.

**Community Healthcare Alliance**

1335

Mr. Irvin W. Kues, Chairman                                                    Page 2
Provider Reimbursement Review Board                                    January 22, 2003

Letter of Representation

Incorporated herein, with this appeal request, is our notice of representation.  Please
address all questions or requests for additional information regarding this Appeal to the
Provider's appointed representative:

> McKibben Consulting
> 322 Emery Drive
> P. O. Box 140137
> Nashville, Tennessee 37214-0137
> Attention: Michael S.McKibben,
>            Principal

Thank you for your assistance in the processing of this Appeal.  Should you require any
information regarding this Appeal, which our representative cited above can not provide,
please call me at (731) 837-3031.

Sincerely,

Larry N. Lindsey
Administrator

Enclosures

Copies to   Mr. Raymond Pietrucha                 Mr. David Jackson, Director
            Blue Cross / Blue Shield Association   Provider Reimbursement
            Provider Appeals                       Riverbend Government
            225 N. Michigan Avenue                   Benefits Administrator
            Chicago, Illinois  60601-7680          801 Pine Street
                                                   Chattanooga, Tennessee
                                                     37402-2555

            Mrs. Donna Hayes, Controller, DCGH
            Mr. Michael McKibben, CPA

# CENTERS FOR MEDICARE AND MEDICAID SERVICES
## *Decision of the Administrator*

| | |
|---|---|
| In the case of: | Claim for: |
| **North Memorial Health Care** | **Provider Cost Reimbursement Determination for Cost Reporting Period Ending: December 31, 2000** |
| **Provider** | |
| **vs.** | |
| **Blue Cross Blue Shield Association / Noridian Administrative Services** | **Review of: PRRB Dec. No. 2007-D27 Dated: April 20, 2007** |
| **Intermediary** | |

This case is before the Administrator, Centers for Medicare & Medicaid Services (CMS), for review of the decision of the Provider Reimbursement Review Board (Board). The review is during the 60-day period in § 1878(f) (1) of the Social Security Act (Act), as amended (42 USC 1395oo (f)). The parties were notified of the Administrator's intention to review the Board's decision. CMS' Center for Medicare Management (CMM) and the Intermediary, submitted timely comments, requesting partial reversal of the Board's decision. Accordingly, this case is now before the Administrator for final agency review.

## BACKGROUND

North Memorial Health Care (the Provider) is a voluntary, non-profit, acute care hospital located in Minneapolis, Minnesota that also operates rehabilitation and psychiatric sub-providers, a home health agency, hospice and a hospital-based ambulance service. As part

2

of the final settlement of the Provider's FYE December 31, 2000 cost report, the Intermediary reduced capital-related costs for outpatient hospital services by 10 percent and outpatient operating costs by 5.8 percent. The Provider disagreed with the application of the reduction factors to its ambulance services (which were also subject to cost per trip limits) and filed a hearing request with the Board.

## ISSUE AND BOARD'S DECISION

The issue is whether the Provider's fiscal year ending (FYE) 2000 ambulance cost per trip limits were improperly low because the Intermediary improperly applied the 5.8 percent outpatient operating cost reduction and the 10 percent outpatient capital cost reduction to base year costs utilized to calculate those limits.

The Board held that the Intermediary improperly applied the 5.8 percent outpatient operating cost reduction and 10 percent outpatient capital cost reduction to base year costs used to calculate the Provider's FYE 2000 ambulance cost per trip limits. The Board remanded the case to the Intermediary to recalculate the ambulance cost per trip limits accordingly and to modify its adjustments.

## SUMMARY OF COMMENTS

CMM submitted comments requesting that the Administrator overturn the Board's decision. Specifically, CMM requested reversal of portion of the Board's decision on the grounds that it would be contrary to consistent Medicare policy to reopen the base year for any adjustments or calculations. Across the Medicare program, and especially concerning the calculation of the base rate for ambulance services, CMM states that they have followed the procedure that, once the base year rates are determined, they are not altered as this would have ramifications for all subsequent cost years.

CMM agreed that the 5.8 and 10 percent reduction factors under Section 1861(v)(1)(S)(ii)(III) of the Act were properly applied by the Intermediary as ambulance services are considered to be outpatient hospital services. CMM stated that Medicare consistent policy is not to revise base year costs. Further, CMM stated that the Intermediary

properly applied the 5.8 and 10 percent reductions to the base year costs for the cost year in question.

The Intermediary submitted comments requesting reversal of the Board's decision. The Intermediary contended that the ambulance cost was subject to the 5.8 percent and 10 percent reductions because the ambulance service is an outpatient service subject to the cost reductions. The cost reductions were correctly computed in the base year, as the base year was to reflect reasonable cost. The Intermediary requested reversal of this part of the Board's decision.

## DISCUSSION

The entire record, which was furnished by the Board, has been examined, including all correspondence, position papers, and exhibits. The Administrator has reviewed the Board's decision. All comments were received timely and are included in the record and have been considered. After a review of the record, applicable regulations and manual instructions, the Administrator finds that the Intermediary properly applied the 5.8 percent outpatient operating cost reduction and the 10 percent outpatient capital cost reduction to the base year costs used to calculate the Provider's FYE 2000 ambulance cost per trip limits.

Section 1861(v)(1)(A) of the Social Security Act establishes that Medicare pays for the reasonable cost of furnishing covered services to program beneficiaries, subject to certain limitations. This section of the Act also defines reasonable cost as "the cost actually incurred, excluding there from any part of incurred cost found to be unnecessary in the efficient delivery of needed health services." The Act further authorizes the Secretary to promulgate regulations establishing the methods to be used and the items to be included in determining such costs. Consistent with the statute, the regulation at 42 CFR §413.9 states that all payments to providers of services must be based on the reasonable cost of services covered under Medicare and related to the care of beneficiaries.

In response to rising costs, and realizing that the original structure of reasonable costs provided little incentive for providers to operate efficiently in delivering services, Congress authorized the Secretary to establish cost limits under Section 1861(v)(1)(A) of the Act.

Specifically, the Secretary has the authority to:

> [p]rovide for the establishment of limits on the direct or indirect overall incurred costs… based on estimates of the costs necessary in the efficient delivery of needed health services…

In addition, relevant to the reasonable cost principles above, existing Medicare law contains reduction factors for application to outpatient hospital services. Section 1886(v)(1)(s)(ii) of the Act states:

> (I) … in determining the amount of the payments that may be made under this title with respect to all the capital-related costs of outpatient hospital services, the Secretary shall reduce the amounts of such payments otherwise established under this subchapter… by 10 percent for payments attributable to portions of cost reporting periods occurring during fiscal years 1992 through 1999 and until the first date that the prospective payment system under section 1833(t) of this title is implemented. (Emphasis added.)

> (II) The Secretary shall reduce the reasonable cost of outpatient hospital services (other than capital-related costs of such services) otherwise determined pursuant to section 1833(a)(2)(B)(i)(I) by 5.8 percent for payments attributable to portions of cost reporting periods occurring during fiscal years 1991 through 1999 and until the first date that the prospective payment system under section 1833(t) is implemented (emphasis added.)

As further evidence that the ambulance services at issue are outpatient hospital services, (although not covered under Outpatient PPS), Section 1833 of the Act states, in relevant part:

> (t) Prospective payment system for hospital outpatient department services–

> > (1) Amount of payment …
> > > (B) Definition of covered OPD services
> > For purposes of this subsection, the term "covered OPD services"--…

(iv) does not include ... ambulance services, for which payment is made under a fee schedule described in section 1834(k) of this title or section 1834(l) of this section...

(10) Special rule for ambulance services.
The Secretary shall pay for hospital outpatient services that are ambulance services on the basis described in section 1861(v)(1)(U) of this title, or, if applicable, the fee schedule established under 1833(l) of this title (emphasis added).

Furthermore, 42 CFR §419.22 states:

Hospital outpatient services excluded from payment under the hospital outpatient prospective payment system.

The following services are not paid for under the hospital outpatient prospective payment system:

(i) Ambulance services, as described in section 1861(v)(1)(U) of the Act, or, if applicable, the fee schedule under section 1834(l).

Accordingly, as the Board correctly determined, the ambulance services at issue are subject to the 5.8 percent and 10 percent reduction factors, as ambulance services are outpatient hospital services.

Regarding whether the costs recognized as reasonable in the base year should include the application of 5.8 percent and 10 percent reduction factors, the Administrator finds that the Intermediary properly applied the reduction factors to the Provider's base year costs. Pursuant to the Balanced Budget Act of 1997, Congress enacted Section 1861(v)(1)(U), which provided the following cost per trip limit to determine the payment for ambulance services:

In determining the reasonable cost of ambulance services... provided during fiscal year 1998, during fiscal year 1999, and during so much of fiscal year 2000 as precedes January 1, 2000, the Secretary shall not recognize the costs per trip in excess of costs recognized as reasonable for ambulance services provided on a per trip basis during the previous fiscal year ... increased by the percentage increase in the consumer price index for all urban consumers (U.S.

6

city average) as estimated by the Secretary for the 12-month period ending
with the midpoint of the fiscal year involved reduced by 1.0 percentage point.
(Emphasis added.)

Congress was concerned with escalating outpatient costs when it established the 10 percent
and 5.8 percent reduction in costs for outpatient services and also the "cost per trip"
limitation. The Secretary, in implementing the further cost containment measure reflected in
the "cost per trip" provision, reasonably determined that the costs "recognized as
reasonable" in the base year, should reflect the 10 percent and 5.8 percent reduction. That is,
the base year costs, after application of the outpatient reductions are in fact the costs
"recognized as reasonable" under the Medicare program.

The Administrator finds that the application of these reductions to the cost per trip base year
is consistent with the statutory language of section 1861(v)(1)(U) and congressional
concerns regarding escalating costs of outpatient and ambulance services. In addition, this
policy is within the Secretary's authority under the reasonable cost provisions of section
1861(v)(1)(A) of the Act and the program. In light of the foregoing, the Administrator
disagrees with the Board and finds that the Intermediary's application of the 5.8 percent
outpatient operating cost reduction and 10 percent outpatient capital cost reduction to base
year costs used to calculate the Provider's FYE 2000 ambulance cost per trip limits was
appropriate. Application of the cost reduction factors to the base year produces costs that
are reasonable as recognized by the Secretary and effectuates the intent of Congress to
reduce and avoid excess cost per trip. Accordingly, the Board's decision is modified and
the Intermediary's determination of the Provider's cost per trip for the cost year at issue is
upheld.

## DECISION

The decision of the Board is modified in accordance with the foregoing opinion. The Intermediary's determination of the Provider's cost per trip for the cost year at issue is upheld

**THIS CONSTITUTES THE FINAL ADMINISTRATIVE DECISION OF THE SECRETARY OF HEALTH AND HUMAN SERVICES**

Date: 6/27/07

Herb B. Kuhn
Acting Deputy Administrator
Centers for Medicare & Medicaid Services

1371

# PROVIDER REIMBURSEMENT REVIEW BOARD
# DECISION
ON THE RECORD
2007-D27

**PROVIDER -**
North Memorial Health Care
Minneapolis, Minnesota

Provider No.:  24-0001

vs.

**INTERMEDIARY -**
BlueCross BlueShield Association/
Noridian Administrative Services

**DATE OF HEARING -**
June 28, 2006

Cost Reporting Period Ended -
December 31, 2000

**CASE NO.:**  04-0552

## INDEX

| | Page No |
|---|---|
| Issue | 2 |
| Medicare Statutory and Regulatory Background | 2 |
| Statement of the Case and Procedural History | 2 |
| Provider's Contentions | 3 |
| Intermediary's Contentions | 4 |
| Findings of Fact, Conclusions of Law and Discussion | 4 |
| Decision and Order | 6 |

CN: 04-0552

ISSUE:

Whether the FY 2000 ambulance cost per trip limits were improperly low because the
Intermediary improperly applied the 5.8% outpatient operating cost reduction and the
10% outpatient capital cost reduction to base year costs utilized to calculate those limits.

MEDICARE STATUTORY AND REGULATORY BACKGROUND:

This is a dispute over the amount of Medicare reimbursement due a provider of medical
services.

The Medicare program was established to provide health insurance to the aged and
disabled. 42 U.S.C. §§1395-1395cc. The Centers for Medicare and Medicaid Services
(CMS), formerly the Health Care Financing Administration (HCFA), is the operating
component of the Department of Health and Human Services (DHHS) charged with
administering the Medicare program. CMS' payment and audit functions under the
Medicare program are contracted out to insurance companies known as fiscal
intermediaries. Fiscal intermediaries determine payment amounts due the providers
under Medicare law and under interpretive guidelines published by CMS. See 42 U.S.C.
§1395(h), 42 C.F.R. §§413.20(b) and 413.24(b).

At the close of its fiscal year, a provider must submit a cost report to the fiscal
intermediary showing the costs it incurred during the fiscal year and the portion of those
costs to be allocated to Medicare. 42 C.F.R. §413.20. The fiscal intermediary reviews
the cost report, determines the total amount of Medicare reimbursement due the provider
and issues the provider a Notice of Program Reimbursement (NPR). 42 C.F.R.
§405.1803. A provider dissatisfied with the intermediary's final determination of total
reimbursement may file an appeal with the Provider Reimbursement Review Board
(Board or PRRB) within 180 days of the issuance of the NPR. 42 U.S.C. §1395oo(a); 42
C.F.R. §405.1835.

STATEMENT OF THE CASE AND PROCEDURAL HISTORY:

North Memorial Health Care (the Provider) is a voluntary, non-profit, acute care hospital
located in Minneapolis, Minnesota that also operates rehabilitation and psychiatric sub-
providers, a home health agency, hospice and a hospital-based ambulance service. As
part of the final settlement of the Provider's FYE 12/31/2000 cost report, the
Intermediary reduced capital-related costs for outpatient hospital services by 10 percent
and outpatient operating costs by 5.8 percent. The Provider disagreed with the
application of the reduction factors to its ambulance services (which were also subject to
cost per trip limits) and filed a timely hearing request with the Board.[1] The amount in
controversy is $458,176.[2]

---

[1] On February 9, 2006, the Board on its own motion requested jurisdictional briefs noting
that the Provider on its cost report, neither claimed nor protested the costs which are the
subject of this appeal. In its May 3, 2006 response, the Intermediary conceded that

Page 3                                                          CN: 04-0552

The Provider was represented by David E. Dopf, Esq., of Reed Smith LLP. The Intermediary was represented by James R. Grimes, Esq., of Blue Cross Blue Shield Association.[3]

PROVIDER'S CONTENTIONS:

The Provider contends that the Intermediary erred when it applied the 5.8% and 10 % reduction factors. The Provider argues that ambulance services have always been treated differently than other outpatient services because they are excluded from the "72 hour rule"[4] under which outpatient services are paid pursuant to an inpatient diagnosis related group (DRG). Also, hospital-based ambulance services are excluded from the outpatient prospective payment system (Outpatient PPS); therefore, the fact that the application of these reductions ended upon the adoption of Outpatient PPS is further evidence that Congress did not intend for them to apply to ambulance services.

The Provider also notes that the 5.8% and 10% reduction factors apply to services at 42 U.S.C. §1395x(s)(2)(A-D), which defines outpatient hospital services. Ambulance services, however, are separately defined at 42 U.S.C.§1395x(s)(7). Accordingly, the 5.8% and 10% reduction factors which apply to outpatient hospital services pursuant to §§1395x(v)(1)(S)(ii) (I and II), do not apply to ambulance services. This is further supported by the fact that 42 U.S.C. §1395x(v)(1)(U), which provides instruction regarding how to calculate the ambulance services cost per trip limit, does not discuss the reduction factors.

The Provider also contends that irrespective of whether ambulance services qualify as outpatient hospital services pursuant to §§1395x(v)(1)(S)(ii)(I and II), the 5.8% and 10% reduction factors should not have been applied in the base year; rather, the Intermediary should have used the Provider's actual costs for the base year to determine the cost per trip limit. Because the reduction factors were applied to the base year costs, the Provider's ambulance trip reimbursement for the subsequent cost periods was understated.

---

jurisdiction existed on the basis that the reduction factors at issue were built into the CMS approved software that the Provider used to file the initial cost report. Thus, as the Provider filed its cost report in full compliance with the Secretary's rules and regulations, it may claim dissatisfaction with the application of the reduction factors pursuant to Bethesda Hosp. Assn. v . Bowen, 485 U.S. 399 (1988). Accordingly, the Board hereby finds that it has jurisdiction over this case.

[2] See Provider letter dated September 2, 2005, Intermediary letter dated June 26, 2006.

[3] The parties agreed to adjudicate this case on the record. Additionally, the hearing transcript of the March 3, 2005 telephonic hearing in the PRRB case Decatur County General Hospital v. Riverbend et.al (Case No. 03-0513) has been incorporated into the record with the Intermediary's Supplement Position Paper at Exhibit (Ex. 17). The parties each stated that they relied upon the arguments presented in the Decatur hearing in addition to the arguments presented in the position papers.

[4] See, 42 U.S.C. §1395www(a)(4); 42 C.F.R. §412.2(c)(5).

CN: 04-0552

The Provider explains that 42 U.S.C. §1395x(v)(1)(U), which determines the reasonable cost of ambulance services by establishing a cost per trip limit, is based upon the costs recognized as reasonable in the prior fiscal year. Accordingly, the statute is based on the premise that a base year exists, and what is recognized is the amount determined as "reasonable cost," as opposed to the amount paid for the previous year. Additionally, 42 U.S.C.§1395(x)(v)(1)(A) defines "reasonable cost" as the cost actually "incurred" (as opposed to the Medicare payment after the reduction). Likewise, the statute which makes the reduction itself, §1395x(v)(1)(S)(ii), states that the Secretary should reduce the "reasonable costs" as opposed to making a reduction to obtain the reasonable costs. Moreover, Congress only intended these reductions to apply to outpatient operating costs and capital costs which are now covered by Outpatient PPS. The Provider claims that a recognizable, discrete distinction exists between ambulance services and outpatient services subject to the 5.8% and 10% reduction factors.

INTERMEDIARY'S CONTENTIONS

The Intermediary contends that the 5.8% and 10% cost reduction provisions of the Social Security Act apply because under 42 U.S.C. §1395(x)(s)(7) patients transported by ambulance (with the exception of patients being transported between hospitals) are outpatients covered under Part B. Although the Intermediary does not dispute the Provider's contention that ambulance services are treated differently from other outpatient services in certain situations, that different treatment alone does not dictate redefining ambulance services as something other than an outpatient service.

Section 1861(v)(1)(S)(ii)(III) of the Social Security Act, which provides for an exception to the cost reduction provisions applicable to the costs of outpatient services provided by critical access hospitals and sole community hospitals does not apply to this Provider. The Intermediary also contends that including the 5.8% and 10% reductions in the calculation of the base year reasonable cost per trip limit was proper.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND DISCUSSION:

The Board, after considering the Medicare law, program instructions, evidence presented and the parties' contentions finds that the ambulance services at issue are subject to the 5.8% and 10% reduction factors, but that the reduction factors should not be applied to the base year.

42 U.S.C. §1395x(v)(1)(S)(ii) provides that such reduction factors be applied to outpatient hospital services:

> (I) …in determining the amount of the payments that may be made under this title with respect to all the capital related costs of <u>outpatient hospital services</u>, the Secretary shall reduce the amounts of such payments otherwise established under this Subchapter . . . by 10 percent for payments attributable to portions of cost reporting periods occurring during fiscal years 1992 through 1999 and until the first date that the prospective payment system under Section 1395L(t) of this title is implemented. (emphasis added)

(II) The Secretary shall reduce the reasonable cost of <u>outpatient hospital services</u> (other than capital-related costs of such services) otherwise determined pursuant to section 1395*l*(a)(2)(B)(i)(I) by 5.8 percent for payments attributable to portions of cost reporting periods occurring during fiscal years 1991 through 1999 and until the first date that the prospective payment system under section 1395*l*(t) is implemented (emphasis added).

Pursuant to the Balanced Budget Act of 1997 (42 U.S.C. §1395x(v)(1)(U)), Congress enacted the following cost per trip limit to determine the reasonable cost of ambulance services.

In determining the reasonable cost of ambulance services . . . provided during fiscal year 1998, during fiscal year 1999, and during so much of fiscal year 2000 as precedes January 1, 2000, the Secretary shall not recognize the costs per trip in excess of costs recognized as reasonable for ambulance services provided on a per trip basis during the previous fiscal year . . . increased by the percentage increase in the consumer price index for all urban consumers (U.S. city average) as estimated by the Secretary for the 12-month period ending with the midpoint of the fiscal year involved reduced by 1.0 percentage point.

Additionally, 42 U.S.C. §1395x(s)[5] has seventeen subsections that define medical and other health services. Subsection (7) defines ambulance services as medical and health services. The Board agrees with the Provider that four of the twenty-two subparts (§§A-D) of subsection (2) of 42 U.S.C. §§1395(x)(s) *clearly describe* "outpatient hospital services." However, the Board finds no merit or authority for the Provider's contention that these four subparts *exclusively* define "outpatient hospital services." Thus, the Board

---

[5] 42 U.S.C. §1395x(s) states, in relevant part
 (s) The term "medical and other health services" means any of the following items or services:
  (2) (A) services and supplies...furnished as an incident to a physician's professional service, of kinds which are commonly furnished in physicians' offices and are commonly either rendered without charge or included in the physicians bills;
   (B) hospital services... incident to physicians' services rendered to outpatients and partial hospitalization services incident to such services;
   (C) diagnostic services which are—
     (i) furnished to an individual as an outpatient by a hospital or by others under arrangement with them made by a hospital, and
     (ii) ordinarily furnished by such hospital...to its outpatients for the purpose of diagnostic study;
   (D) outpatient physical therapy services and outpatient occupational therapy services...
   (7) ambulance service where the use of other methods or transportation is contraindicated by the individual's condition, but only to the extent provided in regulations.

Page 6                                                                CN: 04-0552

finds that the ambulance services at issue are subject to the 10% and 5.8% reduction factors.

As further evidence that the ambulance services at issue are outpatient hospital services, (although not covered under Outpatient PPS), 42 U.S.C.§1395l states, in relevant part:

> . . . (t) Prospective payment system for hospital outpatient department services—
>
>> (1) Amount of payment
>> (B) Definition of covered OPD services
>> For purposes of this subsection, the term "covered OPD services"--
>>> (iv) does not include…ambulance services, for which payment is made under a fee schedule described in section 1395m(k) of this title or section 1395m(L) of this title . . .
>> (10) Special rule for ambulance services
>> The Secretary shall pay for hospital outpatient services that are ambulance services on the basis described in section 1395x(v)(1)(U) of this title or, if applicable, the fee schedule established under 1395m(l) of this title. (emphasis added.)

42 C.F.R. §419.22 states:

> Hospital outpatient services excluded from payment under the hospital outpatient prospective payment system
>
> The following services are not paid for under the hospital outpatient prospective payment system:
>
>> (i) Ambulance services, as described in section 1861(v)(1)(U) of the Act, or if applicable, the fee schedule under section 1834(L).

Accordingly, the Board finds that the ambulance services at issue are subject to the 5.8% and 10% reduction factors, as they are outpatient hospital services.

Regarding whether the costs recognized as reasonable in the base year should include the application of the 5.8% and 10% reduction factors, the Board agrees with the Provider that the reductions should not be applied to the base year. The Board also agrees with the Provider that 42 U.S.C §1395x(v)(1)(S) and the statutory scheme support the premise that the 5.8% and 10% reductions are made to arrive at reasonable costs.[6]

DECISION AND ORDER:

The Intermediary improperly applied 5.8% outpatient operating cost reduction and 10% outpatient capital cost reduction to base year costs used to calculate the Provider's FY

---

[6] See also 42 U.S.C. §§1395(x)(v)(1)(A)and (U).

Page 7                                                          CN: 04-0552

2000 ambulance cost per trip limits.  The Board hereby orders the Intermediary to recalculate the ambulance cost per trip limits accordingly and modify its adjustments.

BOARD MEMBERS PARTICIPATING:

Suzanne Cochran, Esquire
Gary B. Blodgett, D.D.S.
Elaine Crews Powell, C.P.A.
Anjali Mulchandani-West
Yvette C. Hayes

FOR THE BOARD:

APR 2 0 2007

Suzanne Cochran
Chairperson

Worksheet A
Page 1

North Memorial Health Care    24-0001
  Medical Transportation
Medicare Reimbursement
  12/31/00

|  | Cost/Chg Ratio |  | Amount |
|---|---|---|---|
| Cost | 0.573568 | times 13,045,523 | 7,482,494 |
|  |  | W/S D Parts V |  |
| Charges |  |  | 13,045,523 |

| Cost Per Run |  | # Trips |  |
|---|---|---|---|
| 1/1/00-9/30 | 520.66 | 10,584 | 5,510,665 |
| 10/1/00-12/ | 535.38 | 3,389 | 1,814,403 |
|  |  |  | 7,325,068 |

Paid Cost, Charges or Cost Per Run whichever is
Lowest

Paid on Cost Per Run                 7,325,068

Payment Rate                         56.15%
Discount Rate                        43.85%

Direct Costs                         20,831,116
Indirect Costs                        4,148,154
Capital Reduction                      -249,629
Operating Reduction                  -1,304,013
Reimbursable Costs                   23,425,628

Total Charges                        40,841,937

Cost To Charge Ratio( with cost reductions)      0.573568
Cost To Charge Ratio( without cost reductions    0.611608

Medicare Charges                     13,045,523

Paid on final Cost Report             6,866,892

Payment less than Final Report         458,176
  Amount Requested

1421

*040552*

# North Memorial
## Health Care

RECEIVED

JAN 2 6 2004

PROVIDER REIMBURSEMENT
REVIEW BOARD

In the matter of:

North Memorial Health Care
Provider # 24-0001, 24-T001, 24-7023, 24-1506
FYE 12/31/00

   vs.

Noridian Government Services

Amount in dispute: $985,000

Chairman
Provider Reimbursement Review Board
P.O. Box 31712
Baltimore, Maryland 21207-8712

Please take notice that North Memorial Health Care appeals the Intermediary's determination in the Notice of Amount of Program Reimbursement dated July 29, 2003 for the fiscal year ended December 31, 2000. This Notice provides that the period for filing an appeal ends January 25, 2004.

North Memorial Health Care wishes to appeal and requests a hearing on the following issues.

Protest is hereby made against the adjustments made for the Physcian Liability Insurance, the failure to include Observation charges for the Psych Unit, the adjustments excluding charges for Physical Therapy, Occupational Therapy and Speech Therapy.
NMHC request that Patient days for DSH Reimbursement be adjusted to include all MA eligible days.
NMHC also request that FYE 2000 be used as a new base year for Ambulance services.

In filing this protest, North Memorial Health Care waives no right and expressly reserves the right to assert new and different grounds of defense. Grounds set forth in support of this protest are not necessarily all grounds of North Memorial Health Care's defense nor are all grounds set forth necessarily covered completely.

ITERMEDIARY ADJUSTMENT ITEMS IN DISPUTE:
--------------------------------------------------------------------------------

1) Adjustment excluding $53,566 legal fees to Felhaber, Larson, Fenlon and Vogt.
   Adjustment Number 24 in the audit adjustment report.

2) Observation Charges should be included for the Psych Unit.

3) Patient outpatient charges for P.T., O.T., and Speech should be included on Worksheet D
   Part V Colums 5, 5.01, 5.02, 9, 9.01, 9.02 and 10.
   Adjustments 28, 29, 30 and 31 in the audit adjustment report

4) NMHC requests that Patient days for the DSH Calculation be increased from 11,775 days
   to 13,133 days. Adjustment Number 9 of the Audit Adjustment Report.

5) NMHC requests that FYE 12/31/00 be used as a new base year for ambulance services.
   Adjustment Number 5 of the Audit Adjustment Report.

2249

www.northmemorial.com

A)  Adjustment Number 24 are legitimate expenses for Labor Negotiations and are not Physician
    Liability Cost. The Account description should be changed. Invoice enclosed.
    Reimbursement of an additional $1,050 is requested. See Exhibit A.

B)  Patient Charges of $1,443 should be added to Worksheet D-4 for the Psych unit, so it can
    pick up its share of cost through the Observation calculations. This would result in an
    additional $1,300 Reimbursement. See Exhibit B.

C)  It appears that the PS&R is accumulating P.T, O.T. and speech charges incorrectly.
    These charges should have been accumulated on the PS&R on Report 135 labeled
    outpatient - fee reimbursed. This would have eliminated putting the charges on W/S
    D Part V. As it is now there is no cost to be offset against the Deductbles, Coinsurance
    and Payments that have been entered. Additional reimbursement of $8,552 is requested
    or the payments, Deductibles or Coinsurance should not be included on the part B
    settlement pages. Program Memorandum, Trans. No.A-03-071, Aug 15, 2003.  See exhibit C.

D)  North Memorial Health Care is requesting that all eligible Medicaid (MA) days be included
    in the DSH calculation per HCFA Ruling No. 97-2. This would result in additional reimb-
    ursement of $358,707. All applicable days have been verified by the State of Minnesota.
    See Exhibit D.

E)  North Memorial Health Care is requesting a new base year for the determination of Per
    Run Cost as the Medical Transportation department added a new Helicopter service in
    Redwood Falls. This increased the cost Per Run of the department to 535.40 per Run
    instead of the 488.11 and 501.84 that were reimbursed. This would result in additional
    reimbursement of Approximately $615,000. See Exhibit E.

F)  In conclusion:
    North Memorial is requesting Additional Reimbursement of Aproximately $985,000.

North Memorial Health Care makes this request according to 42 CFR, Part 405, Subpart R.

Dated at Robbinsdale, Minnesota this 20th day of Janurary 2004.

North Memorial Health Care

By:

Patrick Boran
VP Finance/CFO

CC: Blue Cross Association
    Noridian Administrative Services, LLC

2220

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **DECATUR COUNTY GENERAL HOSPITAL** and **NORTH MEMORIAL HEALTH CARE** | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | **Case No.: 1:07 CV 01544 (JDB)** |
| **MICHAEL O. LEAVITT, SECRETARY, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES** | ) ) ) ) | |
| Defendant. | ) ) ) | |

**PLAINTIFFS' STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

Pursuant to Rule 7.1(h) of the Rules of the United States District Court for the District of Columbia, Plaintiffs submit this Statement of Material Facts Not in Dispute to accompany their Motion for Summary Judgment, and state that there is no genuine issue to be tried with respect to the following facts:

1.      Plaintiff Provider Decatur County General Hospital is 40-bed, licensed acute-care hospital in Parsons, Tennessee, which also operates a home health agency and a hospital-based

emergency medical ambulance service for Decatur County. *See* Decision of the Administrator, Administrative Record (hereinafter "*AR*") at 2.[1]

2.      Plaintiff Provider North Memorial Health Care is a non-profit, acute care hospital in Minneapolis, Minnesota that also operates rehabilitation and psychiatric subproviders, a home health agency, hospice and a hospital-based ambulance service. *See* Decision of the Administrator, *AR* at 1365.

3.      The Plaintiff Providers submitted to the intermediaries their cost figures with regard to ambulance services, for the 2000 and 2001 Medicare cost report years and prior years, which were reported on Worksheet D, Part V, of their Medicare cost reports. The fiscal intermediaries applied 5.8% and 10% reductions to the reported ambulance costs in order to determine the "base year" costs for purposes of the ambulance "cost-per-trip limit." *See* Decisions of the Administrator, *AR* at 2-3, 1365-66.

4.      The 5.8% and 10% reductions reduced the base year costs that were then included in the formula used to determine the Plaintiffs' cost-per-trip limits for 2000 and 2001. *See* Calculations of Amount in Controversy, *AR* at 197-199, 495, 1421.

5.      The reduced 2000 and 2001 cost-per-trip limits were then multiplied by the Plaintiff Providers' total number of ambulance trips, and the Providers' reimbursement was lowered as a result. *Id.*

---

[1]      The Defendant filed the Administrative Record for this matter with the Court on or before January 23, 2008. For the convenience of the Court, the cited excerpts from the Administrative Record are attached as Exhibit A to the Plaintiffs' Motion.

Respectfully submitted,


  /s/ Jacqueline E. Bennett
Jacqueline E. Bennett
DC Bar #474355
**REED SMITH LLP**
1301 K Street, N.W.
Suite 1100 – East Tower
Washington, DC  20005
(202) 414-9200
(202) 414-9299 Facsimile
JBennett@ReedSmith.com
Attorney for Plaintiffs

Dated: April 17, 2008

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **DECATUR COUNTY GENERAL HOSPITAL** and **NORTH MEMORIAL HEALTH CARE,** | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | **Case No.: 07-CV-01544 (JDB)** |
| v. | ) ) | |
| **MICHAEL O. LEAVITT, SECRETARY, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES** | ) ) ) ) | |
| Defendant. | ) ) ) | |

## ORDER GRANTING SUMMARY JUDGMENT

Upon consideration of Plaintiffs' Motion for Summary Judgment, and the Defendant's Opposition thereto, and the entire record herein, it is hereby

**ORDERED** that Plaintiffs' motion is hereby **GRANTED**, and it is further

**ORDERED** that this matter shall be remanded to the Secretary and his intermediaries such that reimbursement for ambulance services can be recalculated based on the costs actually incurred by the Plaintiffs, without limiting reimbursements in any way through the application of the 5.8% reduction, or the 10% reduction, and it is further

**ORDERED** that the Secretary shall pay the Plaintiffs statutory interest pursuant to 42 U.S.C. § 1395oo(f)(2).

Dated: _____          _____
                                      Hon. John D. Bates
                                      United States District Judge