# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

DECATUR COUNTY GENERAL              )
HOSPITAL and NORTH MEMORIAL         )
HEALTH CARE                         )
                                    )
     Plaintiffs,                    )
                                    )
     v.                             )     Case No. 1:07cv01544
                                    )     Judge:  John D. Bates
MICHAEL O. LEAVITT, Secretary of the )
United States Department of Health and )
Human Services,                     )
                                    )
     Defendant.                     )
_____)

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Michael O. Leavitt, through his undersigned counsel, hereby moves this Court that summary judgment be entered in his favor under Rule 56 of the Federal Rules of Civil Procedure and LRCiv 56.1, on the grounds that there is no genuine issue as to any material fact and the defendant is entitled to judgment as a matter of law.

The grounds for this motion are more fully set forth in the accompanying Defendant's Memorandum of Points and Authorities in Support of Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment.

Dated: June 17, 2008

                         Respectfully submitted,

                         GREGORY G. KATSAS
                         Acting Assistant Attorney General

                         JEFFREY A. TAYLOR
                         United States Attorney

SHEILA M. LIEBER
Deputy Director

 /s/ Vesper Mei
VESPER MEI
(D.C. Bar No. 455778)
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
Post Office Box 883
Washington, D.C. 20044
Telephone:  (202) 514-4686
Facsimile:  (202) 616-8470 (fax)
E-mail: vesper.mei@usdoj.gov

Counsel for Defendant

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
DECATUR COUNTY GENERAL                )
HOSPITAL and NORTH MEMORIAL        )
HEALTH CARE                                     )
                                                    )
          Plaintiffs,                              )
                                                    )
     v.                                             )          Case No. 1:07cv01544
                                                    )          Judge:   John D. Bates
MICHAEL O. LEAVITT, Secretary of the   )
United States Department of Health and    )
Human Services,                               )
                                                    )
          Defendant.                             )
_____ )

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND**
**IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

In this case, plaintiffs, Decatur County General Hospital ("Decatur") and North Memorial

Health Care ("North Memorial"), challenge the calculation of their Medicare payments for

ambulance services provided to Medicare beneficiaries during the fiscal years ending in 2000 and

2001.  During the relevant time period, ambulance services were reimbursed on a "reasonable

cost" basis.  This meant that hospitals would be reimbursed for the actual cost of the service

reduced by any incurred cost found to be unnecessary in the efficient delivery of the service.

These "reasonable costs" were then used to calculate a per trip limit for the submitted ambulance

services, which would be used to calculate a cost-per-trip limit for the relevant year.

The plaintiffs in this case contend that the Secretary's method of calculating the

reimbursement rate for ambulance services was contrary to the plain language of the statutory

scheme, and that ambulance services had to be reimbursed according to their actual cost, whether reasonable or not. Plaintiffs further argue that because ambulance services were not considered "outpatient services," they could not be subject to certain 5.8% and 10% reductions set forth in the statute. In fact, however, the definition of "reasonable cost" itself contemplates reduction of the actual cost of the service where a part of the incurred cost is found to be unnecessary, and the statute plainly defines ambulance services as "outpatient services," to which the 5.8% and 10% reductions would then apply. As a result, the Secretary's calculation of the reimbursement rates for ambulance services was wholly consistent with the statute, and the Secretary's motion for summary judgment should be granted, and the plaintiffs' motion denied.

## BACKGROUND

### I.    THE MEDICARE PROGRAM'S PROCEDURES FOR PROVIDER REIMBURSEMENT AND APPEALS.

This action arises under Title XVIII of the Social Security Act, 42 U.S.C., § 1395 et seq., commonly referred to as the Medicare statute, which establishes a federally funded health insurance program for the elderly and disabled. See 42 U.S.C. §§ 1395c, 1395j, 1395k.

The Secretary of Health and Human Services ("the Secretary") has delegated the authority to administer the Medicare program to the Centers for Medicare & Medicaid Services ("CMS").[1] The Medicare Act is divided into several parts. Part A of the Medicare program provides medical insurance coverage for institutional services such as hospital and skilled nursing care. See 42 U.S.C. §§ 1395c, 1395d. Part B of the Medicare program is a voluntary supplemental

---

[1] CMS was formerly named the Health Care Financing Administration ("HCFA"). On June 29, 2001, the Secretary changed HCFA's name to the Centers for Medicare & Medicaid Services ("CMS"), 66 Fed. Reg. 35437-03 (July 5, 2001).

medical insurance program paid for by the federal government and by co-payments from

Medicare beneficiaries, and covers certain outpatient services such as physician services, medical

supplies, x-rays and laboratory tests.  42 U.S.C. §§ 1395k, 1395l, 1395x(s).  Ambulance services

are also included within the scope of Part B coverage.  42 U.S.C. § 1395x(s)(7).

The ambulance services at issue here are furnished by "providers of services" that have

entered into a "provider agreement" with the Secretary.  42 U.S.C. §§ 1395x(u), 1395cc.  Private

insurance companies, known as "fiscal intermediaries," acting as agents of the Secretary, process

reimbursement to providers.[2]  42 U.S.C. § 1395h.  At the close of each fiscal year, a provider is

required to file a Medicare cost report with its intermediary.  42 C.F.R. §§ 405.1801(b);

413.24(f).  The intermediary then audits the cost report and makes a final determination of the

total amount of reimbursement owed by Medicare.  That final determination is set forth in a

"notice of program reimbursement" or "NPR."  42 C.F.R. § 405.1803.

If a provider is dissatisfied with a final determination of the Secretary, the provider may

request a hearing before the Provider Reimbursement Review Board ("PRRB" or "Board").  42

U.S.C. § 1395oo(a)(2), (3); 42 C.F.R. §§ 405.1807, 405.1835.  In order to qualify for Board

review, the amount in controversy must be at least $10,000, and the hearing request must be

submitted within 180 days of the initial NPR, among other jurisdictional requirements.  42

U.S.C. § 1395oo(a).  When appealing to the PRRB, the provider must "identify the aspects of the

determination with which the provider is dissatisfied, and explain why the provider believes the

---

[2] This process is generally used for Part A services.  Because institutional providers such as hospitals deal with fiscal intermediaries with respect to their payments for inpatient services, however, their outpatient services (such as the ambulance services at issue here) are also processed by the same intermediaries although they are Part B services.

determination is incorrect in such particulars . . . ." 42 C.F.R. § 405.1841(a)(1).

If the jurisdictional prerequisites are satisfied and the Board has authority to decide the matter at issue, see 42 C.F.R. § 405.1867, then the Board may hold a hearing and issue a decision. That decision is subject to review by the Secretary's delegate, the Administrator of CMS. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1875. The statute authorizes the provider to request judicial review within 60 days of the final agency decision, in a federal district court with venue. 42 U.S.C. § 1395oo(f)(1). The statute further provides that 42 U.S.C. § 1395oo(f)(1) is the exclusive jurisdictional basis for judicial review of all aspects of provider reimbursement disputes. 42 U.S.C. §§ 405(h), 1395ii.

## II.    REIMBURSEMENT FOR AMBULANCE SERVICES.

At its inception in 1965, Medicare reimbursed hospitals for operating costs on the basis of either the "reasonable cost" of providing covered medical services or the "customary charges" for the services, whichever was less. 42 U.S.C. § 1395f(b)(1). As a result, hospitals had little incentive to economize, since "[t]he more they spent, the more they were reimbursed." Tucson Med. Ctr. v. Sullivan, 947 F.2d 971, 974 (D.C. Cir. 1991).

In the 1980s and 1990s, Congress adopted a series of reforms designed to promote "efficiency in the provision of services by rewarding cost/effective hospital practices." H.R. Rep. No. 25, 98th Cong., 1st Sess. 132 (1983), reprinted in 1983 U.S.C.A.A.N. 219, 351. Consistent with these reforms was section 4531 (b) (2) of the Balanced Budget Act (BBA) of 1997, which added a new section 1834 (1) to the Social Security Act and mandated the implementation of a national fee schedule for ambulance services furnished as a benefit under Medicare Part B. 42 U.S.C. § 1395m(l). The fee schedule is effective for claims with dates of service on or after

April 1, 2002, and it applies to all ambulance services, including volunteer, municipal, private,

independent, and institutional providers, i.e., hospitals, critical access hospitals (except when it is

the only ambulance service within 35 miles), and skilled nursing facilities.  At the same time,

Congress implemented a "prospective payment system" ("PPS"), which was designed to give

hospitals a financial incentive to economize and deliver care more efficiently.  Relevant here, a

PPS system for hospital outpatient services was established by Congress in 1997, 42 U.S.C. §

1395l(t), subject to being put into effect through implementing regulations.  Ambulance services

are not included within outpatient PPS.  42 U.S.C. § 1395l(t)(1)(B)(iv).

Prior to implementation of the ambulance fee schedule, Medicare paid for ambulance

services furnished by a hospital-based provider on a reasonable cost basis.[3]  See 42 U.S.C. §

1395x(v)(1)(U); 67 Fed. Reg. 9100, 9102 (Feb. 27, 2002); 65 Fed. Reg. 55078, 55078 (Sept. 12,

2000).  Under this method of payment, ambulance services were reimbursed based on a cost-per-

trip limit for the previous fiscal year (base year).  In determining the reasonable cost of

ambulance services furnished by a provider of services, the Secretary would not recognize a cost

per trip in excess of the prior year's reasonable cost per trip updated by an inflation factor.  See

66 Feg. Reg. 39828, 39923 (Aug. 1, 2001).  The statute provides:

> In determining the reasonable cost of ambulance services (as described in
> subsection (s)(7) of this section) provided during fiscal year 1998, during fiscal
> year 1999, and during so much of fiscal year 2000 as precedes January 1, 2000,
> the Secretary shall not recognize the costs per trip in excess of costs recognized as

---

[3] Until April 1, 2002, the Medicare program paid for ambulance services on a "reasonable charge" basis when furnished by a Medicare-participating ambulance supplier.  See 67 Fed. Reg. 9100, 9102 (Feb. 27, 2002).  The reasonable charge system of payment utilized several different methods of payment of ambulance services furnished by suppliers.  Some of these methods provided separate charges for services, mileage and supplies, in different combinations.  Id.  One method provided for a single, all-inclusive charge reflecting services, mileage and supplies.  Id.

> reasonable for ambulance services provided on a per trip basis during the previous
> fiscal year (after application of this subparagraph), increased by the percentage
> increase in the consumer price index for all urban consumers (U.S. city average)
> as estimated by the Secretary for the 12-month period ending with the midpoint of
> the fiscal year involved reduced by 1.0 percentage point.

42 U.S.C. § 1395x(v)(1)(U).  This provision was also enacted as part of the 1997 Balanced

Budget Act, and was intended to limit the reimbursement for ambulance services.

The Medicare Act further defines reasonable costs as: "the cost actually incurred,

excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of

needed health services. . ."  42 U.S.C. § 1395x(v)(1)(A).  Notably, the statute does not preclude

the Secretary from reducing the reimbursement for ambulance services to an amount below the

costs actually incurred, and, indeed, specifically allows such deductions by requiring payment on

a "reasonable" rather than "actual" basis.  Id.

The Medicare Act also establishes a special rule for payment of ambulance services,

stating:

> The Secretary shall pay for hospital outpatient services that are ambulance
> services on the basis described in section 1395x(v)(1)(U) of this title, or, if
> applicable, the fee schedule established under section 1395m(l) of this title.

42 U.S.C. § 1395l(t)(10).  The Act further provides that "the reasonable cost of outpatient

hospital services" shall be reduced by 5.8% for other than capital-related services and 10% for

capital-related services.[4] 42 U.S.C. § 1395x(v)(1)(S)(ii)(I) and (II).  In determining the amount of

reimbursement for hospital ambulance services, the Secretary thus reduced the amount of

reimbursement by 5.8% for capital-related costs, and 10% for other than capital-related costs.

---

[4] "Capital" costs are those related to the provider's investment in plant, property, and
equipment related to patient care.

### III.    FACTUAL AND PROCEDURAL BACKGROUND.

Plaintiffs in this action    Decatur County General Hospital and North Memorial Health

Care    are hospitals in Tennessee and Minnesota, respectively, that provide ambulance services.

Compl. ¶ 1.  Plaintiffs challenge the amounts they were paid by Medicare for their ambulance

services:  Decatur for the fiscal years ending in 2000 and 2001, and North Memorial for the fiscal

year ending in 2000.  Id.  Plaintiffs contend that the Secretary's reimbursement calculations for

those years violated the Medicare statute and the Administrative Procedure Act, by reducing the

ambulance reimbursement rates submitted by the hospitals by 5.8% (for capital-related costs) and

10% (for other than capital-related costs), and by applying those reductions to also reduce the

base year rate used to determine the cost-per-trip limit.  Id. ¶¶ 20-26.  After receiving the Notice

of Program Reimbursements ("NPRs") from the fiscal intermediaries, both hospitals appealed to

the PRRB.

By letters dated January 22, 2003 and December 11, 2003, Decatur appealed to the PRRB

the Intermediary's determinations in the NPRs for the fiscal years ended June 30, 2000, and June

30, 2001.  Administrative Record ("AR") 1118, 1235.[5]  The issue before the PRRB was

"[w]hether the FYEs 6/30/00 and 6/30/01 ambulance cost per trip limits were improperly low

because the Intermediary improperly applied the 5.8% outpatient operating cost reduction and the

10% outpatient capital cost reduction to base year costs utilized to calculate those limits."  AR

21.

---

[5] The administrative record was filed with this Court on January 23, 2008.  Plaintiffs
included with their Motion for Summary Judgment most of the administrative record pages cited
in this section.  For ease of reference, the pages cited here that plaintiffs did not include with
their papers are attached separately.

By letter dated January 20, 2004, North Memorial appealed to the PRRB the Intermediary's determination in the NPR for the fiscal year ended December 31, 2000.  AR 2219. While it did not initially challenge the Intermediary's application of the 5.8% outpatient operating cost reduction and the 10% outpatient capital cost reduction to base year costs utilized to calculate those limits, by letter to the PRRB dated May 18, 2005, North Memorial added to its appeal the issue of "[w]hether the FYE 2000 ambulance cost per trip limits were improperly low because the Intermediary improperly applied the 5.8% outpatient operating cost reduction and the 10% outpatient capital cost reduction to base year costs utilized to calculate those limits."  AR 2203.

The PRRB rendered its decisions in these cases on April 20, 2007, concluding that the ambulance services at issue were subject to the 5.8% and 10% reduction factors, but also that the reduction factors should not be applied to the base year.  AR  20-27 (Decatur), 1379-88 (North Memorial).

By letters dated April 27, 2007, the Intermediary requested that the CMS Administrator review and reverse the parts of the PRRB's decisions that found in both cases that the base year should not be reduced by the cost reduction factors.  AR 16, 1378.  CMS submitted comments in both cases by memoranda dated June 4, 2007, supporting the Intermediary's position with respect to the reopening of the base year rates, on the grounds that "it would be contrary to consistent Medicare policy to reopen the base years for any adjustments or recalculations," and agreeing that the 5.8 and 10% reductions should be applied to the ambulance services for the years in question.  AR 10, 1372.  The Administrator agreed in both cases, concluding that the Intermediary's application of the 5.8% and 10% cost reductions to base year costs used to

-8-

calculate the Provider's FYE 2000 ambulance cost per trip limits was appropriate.  AR 2-9, 1365-71.  This lawsuit followed.

## ARGUMENT

### I.     STANDARD OF REVIEW

A court's review of the Secretary's decision under 42 U.S.C. § 1395oo(f) is limited. Novacare, Inc. v. Thompson, 357 F. Supp. 2d 268, 271 (D.D.C. 2005).  Judicial review is conducted under the terms of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq. Dialysis Clinic, Inc. v. Leavitt, 518 F. Supp. 2d 197, 201 (D.D.C. 2007).  Under APA review, "it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas 'the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" AM. Forest Resource Council v. Hall, 533 F.Supp.2d 84, 89 (D.D.C. 2008) (JDB) (quoting Occidental Eng'g Co. v. INS, 753 F.2d 766, 769-70 (9th Cir. 1985)).  The Court's review is limited to the administrative record, and "the Administrator's decision can be set aside only if it is 'unsupported by substantial evidence,' or 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" St. Elizabeth's Medical Center of Boston, Inc. v. Thompson, 396 F.3d 1228, 1233 (D.C. Cir. 2005)  (quoting 5 U.S.C. §§ 706(2)(E)); Pacific Shores Subdivision California Water Dist. v. U.S. Army Corps of Engineers, 538 F.Supp.2d 242, 248 (D.D.C. 2008).  "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).  The agency's decisions, moreover, are entitled to a "presumption of regularity," and the "ultimate

standard of review is a narrow one." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415, 416 (1971).

A court reviews an agency's interpretation of a statute under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). Under Chevron, the court first must determine whether Congress has spoken directly to the "precise question at issue." Id. at 842-43. If it has, "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. If the statute is silent or ambiguous on the issue, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id. at 843. The agency's interpretation, however, "need not be the best or most natural one by grammatical or other standards. . . . Rather [it] need be only reasonable to warrant deference." Pauley v. BethEnergy Mines, Inc., 501 U.S. 680, 702 (1991). Further, in the context of Medicare, "[t]he Court of Appeals for this Circuit has made clear that 'in framing the scope of review, the court takes special note of the tremendous complexity of the Medicare statute. That complexity adds to the deference which is due to the Secretary's decision.'" Dialysis Clinic, Inc., 518 F. Supp. 2d at 202 (quoting Methodist Hosp. of Sacramento v. Shalala, 38 F.3d 1225, 1229 (D.C. Cir. 1994)).

## II.    THE 5.8% AND 10% REDUCTIONS APPLY TO AMBULANCE SERVICES.

### A.    Ambulance Services are Outpatient Services.

Plaintiffs challenge the Secretary's reduction of the Medicare reimbursement for ambulance services that they provided by factors of 5.8% and 10%. Pls' Compl. ¶ 21; Pls' Mem. 1. They contend that ambulance services are not "outpatient services," and are thus not eligible for the reductions under the statute. Pls' Mem. 13-15; 42 U.S.C. § 1395x(v)(1)(S)(ii)(I) and (II).

This contention, however, is wrong.  A plain language reading of the statutes governing pre-fee schedule payments for ambulance services makes clear that the ambulance services covered under Medicare are, in fact, outpatient services.

Plaintiffs argue that "[i]t is clear that Congress, when it wishes to refer to outpatient services, does so by either expressly using the word 'outpatient' or by making an equivalently clear reference to the outpatient nature of the services."  Pls' Mem. 13.  Because, they contend, "Congress . . . has never referred to ambulance services as 'outpatient services' nor described ambulance services in such a way as to suggest that they were outpatient services," Pls' Mem. 14, ambulance services must not be outpatient services.  This argument is flatly contradicted by the language in the Medicare statute itself, and, indeed, by the very provisions cited by plaintiffs in support of their argument.

Plaintiffs cite to 42 U.S.C. § 1395l, which they contend makes clear (in conjunction with 1395x) that "ambulance services do not constitute 'outpatient services.'"  Pls' Mem. 15.  This argument, however, overlooks the plain language of § 1395l(t)(10), which provides a special rule for payment of ambulance services.  That provision states: "The Secretary shall pay for *hospital outpatient services that are ambulance services* on the basis described in section 1395x(v)(1)(U) of this title, or, if applicable, the fee schedule established under section 1395m(l) of this title." 42 U.S.C. § 1395l(t)(10) (emphasis added).  Contrary to plaintiffs' argument, this provision makes clear that the ambulance services eligible for reimbursement under Part B (and the reasonable cost determination cited by plaintiffs) are, in fact, outpatient services.

Consideration of ambulance services as outpatient services is also consistent with the exclusion of ambulance services from the outpatient prospective payment system (PPS).  While

-11-

plaintiffs contend that ambulance services are not viewed by Congress as "outpatient services" simply because ambulance services are not covered by outpatient PPS, that contention is without merit.

The statutory provision setting forth PPS broadly defines "covered OPD services" as "hospital outpatient services designated by the Secretary," 42 U.S.C. § 1395l(t)(1)(B), with certain specific exclusions: therapy services, ambulance services, and screening and diagnostic mammography. See 42 U.S.C. § 1395l(t)(1)(B)(iv) ("For purposes of this subsection, the term 'covered OPD services' . . . does not include therapy services described in (a)(8) of this section or ambulance services, for which payment is made under a fee schedule described in section 1395m(k) of this section or section 1395m(l) of this section."). Contrary to plaintiffs' argument that exclusion from outpatient PPS automatically means that Congress does not consider a service to be an outpatient service, the therapy services described in (a)(8) are "outpatient physical therapy services" clearly outpatient services under any reading of the statute. 42 U.S.C. § 1395l(a)(8). In fact, a better reading of the statutory language is that "covered OPD services" generally include hospital outpatient services, but that those outpatient services that are not included are explicitly set forth in the statutory language, and include ambulance services. If there was simply no question that ambulance services were *not* outpatient services, there would be no reason for their specific exemption from outpatient PPS. This is consistent with the regulations governing PPS (and cited by plaintiffs) as well. See 42 C.F.R. 419.22 (entitled "Hospital outpatient services excluded from payment under the hospital outpatient prospective payment system," including ambulance services within the regulation). A plain language reading of the statute makes clear that ambulance services are outpatient services.

-12-

**B.     Ambulance Services, as Outpatient Services, are Subject to the 5.8% and 10% Reductions.**

The Medicare statute provides that "outpatient hospital services" are subject to reductions of 5.8% for non capital-related costs and 10% for capital-related costs.  Because ambulance services are outpatient services, they are subject to these 5.8% and 10% reductions.  See 42 U.S.C. § 1395x(v)(1)(S)(ii)(I) and (II).

Plaintiffs contend that "Congress, when it wishes to refer to outpatient services, does so by either expressly using the word 'outpatient' or by making an equivalently clear reference to the outpatient nature of the services."  Pls' Mem. 13.  That is exactly what has happened here. As set forth above, ambulance services are paid for if they are "hospital outpatient services" pursuant to 42 U.S.C. § 1395l(t)(10).  While that provision does not specifically mention the 5.8% and 10% reductions, because ambulance services are outpatient services, they are subject to those reductions.  See 42 U.S.C. §§ 1395x(v)(1)(S)(ii)(I) ("in determining the amount of the payments that may be made under this subchapter with respect to *all the capital-related costs of outpatient hospital services*, the Secretary shall reduce the amounts of such payments otherwise established under this subchapter . . . by 10 percent for payments attributable to portions of cost reporting periods occurring during fiscal years 1992 through 1999 and until the first date that the prospective payment system under section 1395l(t) of this title is implemented") (emphasis added); § 1395x(v)(1)(S)(ii)(II) (same, for 5.8% reduction for outpatient hospital services other than the capital-related costs of services).   There is no basis to exclude ambulance services, which are outpatient services under the statute, from these reductions.

-13-

III.    **THE STATUTORY LANGUAGE SUPPORTS THE APPLICATION OF THE 5.8% AND 10% REDUCTIONS TO THE BASE YEAR COSTS.**

The language of the Medicare statute fully supports the 5.8% and the 10% reductions that were applied to the costs in calculating Medicare's payment for plaintiffs' ambulance services, both for reimbursement of ambulance services in general, and for calculation of the base year cost for the cost-per-trip limit.  Plaintiffs contend that the cost-per-trip provision of the Medicare statute "is highly specific," and "does not contemplate the application of the reduction to ambulance service costs."  Pls' Mem. 8.  As a result, plaintiffs contend, the Secretary violated the statute by applying the reductions to plaintiffs' ambulance service costs.  But although the cost-per-trip provision of the statute does not specifically mention application of the 5.8% and 10% reductions to ambulance services by name, such reductions are consistent with the language and the purpose of the statute, and there is nothing in the statute that *precludes* such application.  Indeed, the statute requiring the 5.8% and 10% reductions refers to outpatient services in general, and Congress considers ambulance services to be outpatient services.  Plaintiffs' claim is without merit.

The relevant statute providing for pre-fee schedule payment for ambulance services provides:

> In determining the reasonable cost of ambulance services (as described in subsection (s)(7) of this section) provided during fiscal year 1998, during fiscal year 1999, and during so much of fiscal year 2000 as precedes January 1, 2000, the Secretary shall not recognize the costs per trip in excess of costs recognized as reasonable for ambulance services provided on a per trip basis during the previous fiscal year (after application of this subparagraph), increased by the percentage increase in the consumer price index for all urban consumers (U.S. city average) as estimated by the Secretary for the 12-month period ending with the midpoint of the fiscal year involved reduced by 1.0 percentage point.

-14-

42 U.S.C. § 1395x(v)(1)(U).[6]  As discussed above, this statute was enacted as part of the BBA of 1997, as a means of promoting the efficiency of services and limiting the costs of ambulance services.

The Medicare statute further defines reasonable costs as follows:

The reasonable cost of any services shall be the cost actually incurred, *excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services*.

42 U.S.C. § 1395x(v)(1)(A) (emphasis added).

Plaintiffs contend that since "reasonable costs" are defined as "the cost actually incurred," 42 U.S.C. § 1395x(v)(1)(A), the 5.8% and 10% reductions cannot apply.  Pls' Mem. 9-10.  But the statutory language that plaintiffs quote is incomplete, omitting the crucial phrase allowing the exclusion of unnecessary costs.  Allowing the exclusion of unnecessary costs in determining what is "reasonable" of course makes sense   otherwise, reimbursement would simply occur on an *actual* (as opposed to reasonable) cost basis, which is not what Congress mandated.  And, allowing the exclusion of unnecessary costs also comports with the purpose of curbing costs for Medicare in general.  Similarly, rather than strictly limiting payment for ambulance services to "the costs actually incurred," the statute providing for payment for ambulance services itself states that "the Secretary shall *not* recognize the costs per trip in excess of costs *recognized as reasonable* for ambulance services."  42 U.S.C. § 1395x(v)(1)(U) (emphasis added).  Taken separately or together, the statutory language that defines reasonable costs and provides for payment for ambulance services thus contemplates that further reductions will be taken from the

---

[6] The ambulance fee schedule was initially to be effective January 1, 2000, but did not take effect until April 1, 2002.  See 67 Fed. Reg. at 9119, 9121.

costs actually incurred, and the 5.8% and 10% reductions are fully consistent with this language.

Nor does the statutory language providing for the 5.8% and 10% reductions make any exception for reducing the "reasonable cost" of ambulance services; rather, it specifically provides that the Secretary "shall reduce the reasonable cost of outpatient hospital services."  As result, because the 5.8% and 10% reductions are consistent with the statutory language used to determine the reasonable costs for ambulance services   which Congress specifically considered to be outpatient services   and the Secretary applied them to calculate reimbursements for such services, such reduced amounts would then become the costs "recognized as reasonable" under the cost-per-trip provision of the Medicare statute (42 U.S.C. § 1395x(v)(1)(U)), and would be used to calculate the base year costs.

## IV.    EVEN IF THE STATUTORY LANGUAGE IS AMBIGUOUS, THE SECRETARY'S READING IS REASONABLE, AND IS ENTITLED TO DEFERENCE.

Moreover, even to the extent that the statutory language may be ambiguous, the Secretary's reading is reasonable, and is entitled to deference.  As set forth above, the agency's interpretation "need be only reasonable to warrant deference."  Pauley v. BethEnergy Mines, Inc., 501 U.S. 680, 702 (1991).  And, the complexity of the Medicare statute "adds to the deference which is due to the Secretary's decision."  Dialysis Clinic, Inc., 518 F. Supp. 2d at 202.

Here, the Secretary's reading is a reasonable one.  Congress provided that Medicare would pay for ambulance services that were "outpatient services," and also determined that the cost-per-trip limit for ambulance services would be calculated according to the "reasonable cost of ambulance services," which would be based on "costs recognized as reasonable for ambulance services provided on a per trip basis during the previous fiscal year."  42 U.S.C. §

-16-

1395x(v)(1)(U).  Further, the statutory definition of "reasonable costs" itself contemplates that

further reductions may be taken in calculating what would constitute "reasonable costs," see 42

U.S.C. § 1395x(v)(1)(A), and the 5.8% and 10% reductions to all reasonable costs (see 42 U.S.C.

§ 1395x(v)(1)(S)(ii)(II) "[t]he Secretary shall reduce the reasonable cost of outpatient hospital

services . . . by 5.8 percent") are consistent with that understanding, and give effect to all of the

relevant provisions of the Medicare Act.

Plaintiffs contend that because the 5.8% and 10% reductions were to apply only until the

Secretary implemented outpatient PPS, the reductions should be limited only to those services to

be covered by outpatient PPS.  Pls' Mem. 14.  But the plain language of the statute provides that

it applies to all outpatient services (with only a few exceptions not applicable here), and the

Secretary had been consistently applying the statute across the board to reduce payments for

outpatient services, including ambulance services.  See, e.g., 65 Fed. Reg. 18434, 18436 (Apr. 7,

2000) ("During the 1980s, the Congress took steps to control the escalating costs of providing

outpatient care.  The Congress amended the statute to implement across-the-board reductions of

5.8 percent and 10 percent to the amounts otherwise payable by Medicare for hospital operating

costs and capital costs, respectively.").  Even though ambulance services were not included in

outpatient *PPS*, they were included within the language of the 5.8% and 10% reduction statutes

as outpatient *services* (which Congress considered them to be), and, where there existed a gap in

how reimbursements for ambulance services would occur, and Congress had not spoken on the

issue, it was certainly reasonable for the Secretary to continue applying those reductions (to

ambulance services as well as other outpatient services) until the ambulance fee schedule was put

in place.[7]  See Pharmaceutical Research and Mfrs. America v. Thompson, 362 F.3d 817, 821

(D.C. Cir. 2004) (according Chevron deference to Secretary's interpretation of the Medicaid Act

arrived at through less than formal rulemaking); Mylan Laboratories, Inc. v. Thompson

389 F.3d 1272, 1279 (D.C. Cir. 2004); accord Thomas Jefferson University v. Shalala, 512 U.S.

504, 512 (1994) (granting heightened deference to the Secretary's interpretation of regulatory

language for Medicare, a "complex and highly technical regulatory program"); Securities and

Exchange Commission v. Chenery Corp., 332 U.S. 194, 202 (1947) (agency can act either

through rulemaking or adjudication).

   In addition, while plaintiffs contend that "specific legislation" will trump "more general

legislation," Pls' Mem. 12, and that the enactment of the cost-per-trip limits for ambulance

services should trump the 5.8% and 10% reductions as a result, they overlook the fact that this

principle applies "only in the face of 'irreconcilably conflicting statutes.'" Detweiler v. Pena, 38

F.3d 591, 594 (D.C. Cir. 1994) (quoting Watt v. Alaska, 451 U.S. 259, 266 (1981)); accord Pls'

Mem. 12 (quoting Ginsburg, Feldman & Bress v. Federal Energy Admin., 591 F.2d 717, 720 n. 5

(D.C. Cir. 1978) ("Where statutes deal with a subject in both general and detailed terms, *and

there is conflict between the two*, the detailed expression prevails.") (emphasis added)).  Where,

on the other hand, "'two statutes are capable of coexistence, it is the duty of the courts, absent a

clearly expressed congressional intention to the contrary, to regard each as effective.'" Detweiler,

---

   [7] The hospital outpatient PPS was implemented on August 1, 2000   this would have
covered the period by which the ambulance fee schedule was to have been implemented.  See,
e.g., 72 Fed. Reg. 66580-01, 66585 (Nov. 27, 2007).  While the ambulance fee schedule did not
take effect until April 1, 2002, see 67 Fed. Reg. at 9119, 9121, it was initially to be effective
January 1, 2000.  See 42 U.S.C. § 1395x(v)(1)(U) (providing that the cost-per-trip limit would
apply until January 1, 2000).

38 F.3d at 594 (quoting <u>Morton v. Mancari</u>, 417 U.S. 535, 551 (1974)).

Here, the statutes providing for the cost-per-trip limit for outpatient ambulance services (42 U.S.C. §§ 1395l(t)(10) and 1395x(v)(1)(U)) and the statute providing for the 5.8% and 10% reductions for outpatient services (42 U.S.C. § 1395x(v)(1)(S)(ii)(I) and (II)) are entirely capable of coexistence, and should be read together and applied equally.  As set forth above, nothing in the statutory language precludes application of the 5.8% and 10% reductions to the "reasonable cost" of outpatient ambulance services, and, in fact, application of those reductions is consistent with the statutory scheme and Congressional purpose of reducing costs.  Indeed, plaintiffs' reading of the statutory language essentially    and improperly    reads the 5.8% and 10% reductions out of the Medicare Act with respect to ambulance services, ignoring the plain language of the statute itself, which mandates application to "reduce the reasonable cost of outpatient hospital services," 42 U.S.C. § 1395x(v)(1)(S)(ii)(II), for which ambulance services qualify.  Summary judgment should be granted to the Secretary.

## <u>CONCLUSION</u>

For the foregoing reasons, the Secretary respectfully submits that his motion for summary judgment should be granted and plaintiffs' motion should be denied.

Dated: June 17, 2008

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

SHEILA M. LIEBER
Deputy Director

___/s/ Vesper Mei_____
VESPER MEI
(D.C. Bar No. 455778)
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
Post Office Box 883
Washington, D.C. 20044
Telephone:  (202) 514-4686
Facsimile:  (202) 616-8470 (fax)
E-mail: vesper.mei@usdoj.gov

Counsel for Defendant

-20-

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| DECATUR COUNTY GENERAL<br>HOSPITAL and NORTH MEMORIAL<br>HEALTH CARE | ) <br> ) <br> ) |
|  | ) |
| Plaintiffs, | ) |
|  | ) |
| v. | ) |
|  | ) |
| MICHAEL O. LEAVITT, Secretary of the<br>United States Department of Health and<br>Human Services, | ) <br> ) <br> ) |
|  | ) |
| Defendant. | ) |

_____ )

Case No. 1:07cv01544

Judge:   John D. Bates

        Upon consideration of Defendant Michael O. Leavitt's Motion for Summary Judgment,

IT IS HEREBY ORDERED:

     1.     Defendant Leavitt's Motion for Summary Judgment is GRANTED.

     2.     Plaintiffs' Motion for Summary Judgment is DENIED.

Dated:

_____

JOHN D. BATES, U.S.D.J.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

———————————————————— )
                                                    )
DECATUR COUNTY GENERAL              )
HOSPITAL and NORTH MEMORIAL      )
HEALTH CARE                                   )
                                                    )
       Plaintiffs,                              )
                                                    )
       v.                                          )    Case No. 1:07cv01544
                                                    )    Judge:  John D. Bates
MICHAEL O. LEAVITT, Secretary of the  )
United States Department of Health and   )
Human Services,                               )
                                                    )
       Defendant.                             )
———————————————————— )

## DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

In support of its Motion for Summary Judgment, defendant Michael O. Leavitt, the

Secretary of the United States Department of Health and Human Services ("the Secretary")

submits the following Statement of Material Facts Not in Dispute:

1.      Plaintiffs in this action, Decatur County General Hospital ("Decatur") and North

Memorial Health Care ("North Memorial"), are hospitals in Tennessee and Minnesota,

respectively, that provide ambulance services.  Compl. ¶ 1.

2.      Plaintiffs challenge the amounts of Medicare reimbursement for their ambulance

services:  Decatur for the fiscal years ending in 2000 and 2001, and North Memorial for the fiscal

year ending in 2000, after each receiving an unfavorable decision by the Administrator for the

Centers for Medicare & Medicaid Services ("CMS").  Id.; AR 2-9 (Decatur), 1365-71 (North

Memorial).[1]

———————————————

[1] The administrative record was filed with this Court on January 23, 2008.  Plaintiffs
included with their Motion for Summary Judgment most of the administrative record pages cited

3.      Decatur received Notice of Program Reimbursements ("NPRs") from the fiscal intermediaries dated July 31, 2002 and June 26, 2003.  AR 1118, 1235.  By letters dated January 22, 2003 and December 11, 2003, Decatur then appealed to the Provider Reimbursement Review Board ("PRRB") the Intermediary's determinations in the NPRs for the fiscal years ended June 30, 2000, and June 30, 2001.  Id.

4.      The issue before the PRRB in Decatur's case was "whether the ambulance cost per trip limits were improperly low because the Intermediary improperly applied the 5.8% outpatient operating cost reduction and the 10% outpatient capital cost reduction to base year costs utilized to calculate those limits."  AR 21.

5.      By letter dated January 20, 2004, North Memorial appealed to the PRRB the Intermediary's determination in its NPR for the fiscal year ended December 31, 2000.  AR 2219.  While it did not initially challenge the Intermediary's application of the 5.8% outpatient operating cost reduction and the 10% outpatient capital cost reduction to base year costs utilized to calculate those limits, by letter to the PRRB dated May 18, 2005, North Memorial added to its appeal the issue of "[w]hether the FYE 2000 ambulance cost per trip limits were improperly low because the Intermediary improperly applied the 5.8% outpatient operating cost reduction and the 10% outpatient capital cost reduction to base year costs utilized to calculate those limits."  AR 2203.

6.      The PRRB rendered its decisions in both cases on April 20, 2007, concluding that the ambulance services at issue were subject to the 5.8% and 10% reduction factors, but also that

---

in this section.  For ease of reference, the pages cited here that plaintiffs did not include with their papers are attached separately.

the reduction factors should not be applied to the base year.  AR 20-27 (Decatur County),

1379-88 (North Memorial).

       7.      By letters dated April 27, 2007, the Intermediary requested that the CMS

Administrator review and reverse the parts of the PRRB's decisions that found in both cases that

the base year should not be reduced by the cost reduction factors.  AR 16, 1378.

       8.      CMS submitted comments in both cases by memoranda dated June 4, 2007,

supporting the Intermediary's position with respect to the reopening of the base year rates, on the

grounds that "it would be contrary to consistent Medicare policy to reopen the base years for any

adjustments or recalculations," and agreeing that the 5.8 and 10% reductions should be applied to

the ambulance services for the years in question.  AR 10, 1372.

       9.      The Administrator agreed with CMS in both cases, concluding that the

Intermediary's application of the 5.8% and 10% cost reductions to base year costs used to

calculate the Provider's FYE 2000 ambulance cost per trip limits was appropriate.  AR 2-9,

1365-71.

Dated: June 17, 2008

                           Respectfully submitted,

                           GREGORY G. KATSAS
                           Acting Assistant Attorney General

                           JEFFREY A. TAYLOR
                           United States Attorney

                           SHEILA M. LIEBER
                           Deputy Director

_/s/ Vesper Mei_____
VESPER MEI
(D.C. Bar No. 455778)
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
Post Office Box 883
Washington, D.C. 20044
Telephone:  (202) 514-4686
Facsimile:  (202) 616-8470 (fax)
E-mail: vesper.mei@usdoj.gov

Counsel for Defendant

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| DECATUR COUNTY GENERAL HOSPITAL and NORTH MEMORIAL HEALTH CARE | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. 1:07cv01544 Judge: John D. Bates |
| MICHAEL O. LEAVITT, Secretary of the United States Department of Health and Human Services, | ) ) ) ) | |
| Defendant. | ) ) ) | |

_____

## DEFENDANT'S RESPONSE TO
## PLAINTIFFS' STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Pursuant to Local Civil Rule 7.1(h), defendant Michael O. Leavitt, Secretary of the

United States Department of Health and Human Services ("the Secretary") submits his Response

to Plaintiffs' Statement of Material Facts Not in Dispute.

1.    Admit, except to state that defendant is without knowledge as to how many beds

Decatur County General Hospital has or whether it is licensed.  Those facts are immaterial.

2.    Admit.

3.    Admit.

4.    Admit.

5.    Admit.

Dated: June 17, 2008

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

SHEILA M. LIEBER
Deputy Director

 /s/ Vesper Mei
VESPER MEI
(D.C. Bar No. 455778)
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
Post Office Box 883
Washington, D.C. 20044
Telephone:  (202) 514-4686
Facsimile:  (202) 616-8470 (fax)
E-mail: vesper.mei@usdoj.gov

Counsel for Defendant

EXCERPTS FROM ADMINISTRATIVE RECORD

June 4, 2007

NOTE TO:    Jacqueline Vaughn
            Attorney Advisor

*Received 6/4/07 [initials]*

FROM:       Terrence Kay
            Acting Director
            Hospital and Ambulatory Policy Group

SUBJECT:    Decatur County General Hospital (Case #03-0513 and #04-0456 –
            Decision #2007-D28)

On April 20, 2007, the Provider Reimbursement Review Board (PRRB) rendered a
decision on the appeal for Decatur County General Hospital concerning the Medicare
payments for its hospital-owned and operated ambulance service under the reasonable
cost methodology which was used to pay providers for their ambulance services prior to
the implementation of the ambulance fee schedule. The provider contends that the fiscal
intermediary erred when it applied certain reduction factors to the payment amounts
during the ambulance company's base year of operations as well as continuing to apply
the cost per trip limit after January 1, 2000. The PRRB agreed and remanded the case to
the fiscal intermediary to recalculate the base year. In addition, the PRRB concluded that
the ambulance services at issue were subject to the 5.8 percent and 10 percent reduction
factors according to Section 1861(v)(1)(S)(ii)(III) of the Social Security Law (the Act)
for subsequent years, however, such reduction factors should not be applied to the base
year. Finally, the PRRB agreed that the cost per trip limit should not be applied to
payments for ambulance services after January 1, 2000.

First, while we recognize that the PRRB remanded this case to the fiscal intermediary to
recalculate the base year in question for the provider concerning its ambulance services,
we believe it would be contrary to consistent Medicare policy to reopen the base year for
any adjustments or recalculations. Across the Medicare program, and especially
concerning the calculation of the base rate for ambulance services, we have followed the
procedure that, once the base year rates are determined, they are not altered as this would
have ramifications for all subsequent cost years.

Second, the PRRB found that the ambulance services at issue were subject to the 5.8
percent and 10 percent reduction factors as they were considered to be outpatient hospital
services under Section 1861(v)(1)(S)(ii)(III) of the Act. We agree that the 5.8 and 10
percent reductions should be applied to the ambulance services for the provider for the
years in question.

Page 2

Third, the PRRB found that payments for ambulance services were not subject to the cost per trip limit as of January 1, 2000. However, Congress' intent was to have the ambulance fee schedule implemented by January 1, 2000, which would have negated the need for the cost per trip limit if there had also been no transition period to the full ambulance fee schedule payment. In fact, the ambulance fee schedule was not implemented until April 1, 2002, and, even at that point, it was implemented with a 5-year transition period. This meant that all the provisions of the reasonable cost payment method had to remain in place as established by the Balanced Budget Act (BBA) of 1997 so that Congressional intent to limit the cost of ambulance services would not be undermined until the full implementation of the ambulance fee schedule was accomplished.

As a result, we request that the Administrator reverse the PRRB's decision to remand this case to the fiscal intermediary to recalculate the base year and the ambulance cost per trip limit for Decatur County General Hospital.

cc:
Steven B. Roosa, Esq., Provider's Representative
James R. Grimes, Esq., Intermediary's Representative



**BlueCross BlueShield Association**

An Association of Independent
Blue Cross and Blue Shield Plans

April 27, 2007

Jacqueline R. Vaughn
Center for Medicare & Medicaid Services
Office of the Attorney Advisor
Dept. of Health & Human Services
7500 Security Blvd.
Baltimore, MD 21244-1850

225 North Michigan Avenue
Chicago, Illinois 60601-7680
312.297.6000
Fax 312.297.6609
www.BCBS.com

Re:  Decatur County General Hospital
     PRRB Decision No. 2007-D28
     PRRB Case Nos. 03-0513 and 04-0456
     FYE: 12/31/2000 and 6/30/2001

Dear Ms. Vaughn:

The Intermediary requests review of the PRRB's Decision in the above captioned case pursuant to regulation 405.1875.

In this case, the Provider challenged the application of the 5.8% operating cost reduction and the 10% outpatient capital cost reduction to the ambulance cost per trip limit for the base year. The Provider argued that the 5.8% and 10% reduction factors should not be applied to ambulance costs. Further, the Provider claimed the reductions should not have been applied to the base year calculation because the statute required that the base year should be actual costs.

The Intermediary contended the ambulance cost was subject to the 5.8% and 10% reductions because the ambulance service is an outpatient service subject to the cost reductions. Further, the cost reductions were correctly computed in the base year, as the base year was to reflect reasonable cost.

While the PRRB agreed with the Intermediary's position that ambulance cost is an outpatient cost subject to the reductions, it incorrectly found that the base year should not be reduced by the cost reduction factors. The Intermediary believes the PRRB erred in not applying the cost reduction factors to the base year ambulance costs, and requests the Administrator review and reverse that part of the Board's Decision.

Very truly yours,

James R. Grimes
Associate Counsel

cc:   Stephen B. Roosa, Esq.

16

June 4, 2007

NOTE TO:     Jacqueline Vaughn
             Attorney Advisor

FROM:        Terrence Kay
             Acting Director
             Hospital and Ambulatory Policy Group

SUBJECT:     North Memorial Health Care (Case #04-0552 – Decision #2007-D27)


On April 20, 2007, the Provider Reimbursement Review Board (PRRB) rendered a decision on the appeal for North Memorial Health Care concerning the Medicare payments for its hospital-owned and operated ambulance service under the reasonable cost methodology which was used to pay providers for their ambulance services prior to the implementation of the ambulance fee schedule. The provider contends that the fiscal intermediary erred when it applied certain reduction factors to the payment amounts during the ambulance company's base year of operations. The PRRB agreed, concluding that Section 1861(v)(1)(S)(ii)(III) of the Social Security Law (the Act) which specifies a 5.8 percent and a 10 percent reduction factor for outpatient hospital services, did not apply to the hospital's ambulance services, and remanded the case to the fiscal intermediary to recalculate the base year.

While we recognize that the PRRB remanded this case to the fiscal intermediary to recalculate the base year in question for the provider concerning its ambulance services, we believe it would be contrary to consistent Medicare policy to reopen the base years for any adjustments or recalculations. Across the Medicare program, and especially concerning the calculation of the base rate for ambulance services, we have consistently followed the procedure that, once the base year rates are determined, they are not altered as this would have ramifications for all subsequent cost years. Further, we agree with the fiscal intermediary that the 5.8 percent and the 10 percent reduction factors were correctly applied to the hospital's base year for its ambulance services under Section 1861(v)(1)(S)(ii)(III) of the Act.

As a result, we request that the Administrator reverse the PRRB's decision to remand this case to the fiscal intermediary to recalculate the base year for North Memorial Health Care.

cc:
David E. Doph, Esq., Provider's Representative
James R. Grimes, Esq., Intermediary's Representative

1373



**BlueCross BlueShield Association**

An Association of Independent
Blue Cross and Blue Shield Plans

April 27, 2007

Jacqueline R. Vaughn
Center for Medicare & Medicaid Services
Office of the Attorney Advisor
Dept. of Health & Human Services
7500 Security Blvd.
Baltimore, MD 21244-1850

*rec'd. 05/08/07
aeg*

225 North Michigan Avenue
Chicago, Illinois 60601-7680
312.297.6000
Fax 312.297.6609
www.BCBS.com

Re:    North Memorial Health Care
       PRRB Decision No. 2007-D27
       PRRB Case No. 04-0552
       FYE: 12/31/2000

Dear Ms. Vaughn:

The Intermediary requests review of the PRRB's Decision in the above captioned case pursuant to regulation 405.1875.

In this case, the Provider challenged the application of the 5.8% operating cost reduction and the 10% outpatient capital cost reduction to the ambulance cost per trip limit for the base year. The Provider argued that the 5.8% and 10% reduction factors should not be applied to ambulance costs. Further, the Provider claimed the reductions should not have been applied to the base year calculation because the statute required that the base year should be actual costs.

The Intermediary contended the ambulance cost was subject to the 5.8% and 10% reductions because the ambulance service is an outpatient service subject to the cost reductions. Further, the cost reductions were correctly computed in the base year, as the base year was to reflect reasonable cost.

While the PRRB agreed with the Intermediary's position that ambulance cost is an outpatient cost subject to the reductions, it incorrectly found that the base year should not be reduced by the cost reduction factors. The Intermediary believes the PRRB erred in not applying the cost reduction factors to the base year ambulance costs, and requests the Administrator review and reverse that part of the Board's Decision.

Very truly yours,

James R. Grimes
Associate Counsel

cc:    David E. Doph, Esq.

1378

REC  VED

MAY 28 /005

EAGAN OFFICE

# ReedSmith

Reed Smith LLP
Princeton Forrestal Village
136 Main Street - Suite 250
Princeton, NJ 08540 7839
609.987.0050
Fax 609.951.0824

Murray J. Klein
Direct Phone: 609.520.6022
Email: mklein@reedsmith.com

May 18, 2005

156/PL

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Suzanne Cochran, Chairperson
Department of Health and Human Services
Provider Reimbursement Review Board
2520 Lord Baltimore Drive, Suite L
Baltimore, Maryland  21244-2670

> Re:  Provider:        North Memorial Health Care
>      Provider No.:    24-0001
>      FYE:             12/31/2000
>      PRRB Case No.:   04-0552
>
>      Addition of Issue to Pending Appeal

Dear Chairperson Cochran:

North Memorial Health Care (the "Provider") hereby adds the following issue to its existing appeal, PRRB Case No. 04-0552:

> Whether the FYE 2000 ambulance cost per trip limits were improperly low because the Intermediary improperly applied the 5.8% outpatient operating cost reduction and the 10% outpatient capital cost reduction to base year costs utilized to calculate those limits.

The Provider contends that the Intermediary's determination with respect to this issue was inconsistent with the Social Security Act and other applicable Medicare program statutes, regulations or guidelines

As noted in previous correspondence, the Provider has appointed this firm to serve as its representative in this appeal. Please direct all future correspondence regarding this matter to the

LONDON ♦ NEW YORK ♦ LOS ANGELES ♦ SAN FRANCISCO ♦ WASHINGTON, D.C. ♦ PHILADELPHIA ♦ PITTSBURGH ♦ OAKLAND

MUNICH ♦ PRINCETON ♦ FALLS CHURCH ♦ WILMINGTON ♦ NEWARK ♦ MIDLANDS, U.K. ♦ CENTURY CITY ♦ RICHMOND ♦ LEESBURG

r e e d s m i t h . c o m

Murray J. Klein - Office Administrative Partner  ♦  A Limited Liability Partnership formed in the State of Delaware

PHXLIB-348570.1-DCDOFF 5/18/05 2:36 PM

2203

Suzanne Cochran, Chairperson
May 18, 2005
Page 2

ReedSmith

attention of the undersigned.

Very truly yours,

Murray J. Klein

MJK/es

c:      Marsha Roone (via certified mail, return receipt requested)
        John Bloom, Appeals Coordinator, Noridian Mutual Insurance (via certified mail, return receipt
        requested)
        Jeff Miller (via certified mail, return receipt requested)
        Jerry Peyerl (via regular mail)