UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DECATUR COUNTY GENERAL
HOSPITAL and NORTH MEMORIAL
HEALTH CARE,

    Plaintiffs,

    v.

CHARLES E. JOHNSON,[1] Secretary,
United States Department of Health and
Human Services,

    Defendant.

Civil Action No. 07-1544 (JDB)

## MEMORANDUM OPINION

This case involves a dispute about the calculation of Medicare reimbursement for hospital ambulance services. Plaintiffs Decatur County General Hospital and North Memorial Health Care (the "Hospitals") seek judicial review of a final agency action -- the reimbursement decision of the Secretary of the United States Department of Health and Human Services ("Secretary") -- pursuant to the Administrative Procedure Act ("APA"). Currently before the Court are the parties' cross-motions for summary judgment. The Hospitals assert that they are entitled to summary judgment because the Secretary's reimbursement decision contravenes the Medicare statute and regulations, and is arbitrary and capricious in violation of the APA. Conversely, the Secretary contends that he is entitled to summary judgment because his ruling is consistent with the text of the Medicare statute and regulations and, in any event, is entitled to deference because

---

[1] Former Secretary of HHS, Michael O. Leavitt, was named as the original defendant in this action. Pursuant to Federal Rule of Civil Procedure 25(d), the Court automatically substitutes his successor, Secretary Charles E. Johnson, as the new defendant.

it is reasonable. For the reasons set forth below, the Court will deny the Hospitals' motion for summary judgment and will grant the Secretary's motion.

## BACKGROUND

**I.     Statutory and Regulatory Background**

    **A.     The Medicare Cost Reporting and Reimbursement Process**

This action arises under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq., commonly referred to as the Medicare Act, which established a federally funded health insurance program for the elderly and disabled. See 42 U.S.C. §§ 1395c, 1395j, 1395k. The Secretary has delegated authority to administer the Medicare program to the Centers for Medicare & Medicaid Services ("CMS"). See 42 U.S.C. §§ 1395h, 1395u. The Medicare Act is divided into four parts, A through D; only Parts A and B are relevant to this case. Part A typically covers "inpatient hospital services" furnished by participating providers. 42 U.S.C. § 1395d(a)(1). Part B covers hospital services furnished to outpatients, physicians' services, and other medical and health services. 42 U.S.C. §§ 1395k(a), 1395x(s). Ambulance services are included within the scope of Part B coverage. 42 U.S.C. § 1395x(s)(7).

Part B services are furnished by "providers of services" that have entered into an agreement with the Secretary. 42 U.S.C. §§ 1395x(u), 1395cc. "Providers of services" include hospitals, critical access hospitals, skilled nursing facilities, comprehensive outpatient rehabilitation facilities, home health agencies, and hospice programs. 42 U.S.C. § 1395x(u). Private insurance companies, known as "fiscal intermediaries," acting as agents of the Secretary, process reimbursements to providers. See 42 U.S.C. § 1395h. At the close of each fiscal year, a provider is required to file a Medicare cost report with its intermediary. 42 C.F.R. §§

405.1801(b), 413.24(f).  The intermediary then audits the cost report and makes a final determination of the total amount of reimbursement owed by Medicare.  That final determination is set forth in a "notice of program reimbursement" or "NPR."  42 C.F.R. § 405.1803.  If a provider is dissatisfied with a final determination of the Secretary, the provider may request a hearing before the Provider Reimbursement Review Board ("Board" or "PRRB").  42 U.S.C. § 1395oo(a); see also 42 C.F.R. §§ 405.1807, 405.1835.  By request, or on its own motion, a decision by the Board is subject to review by the Secretary's delegate, the Administrator of CMS.  42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1875.  Once a final decision is rendered, the provider may seek judicial review of the final agency decision in federal district court within 60 days.  42 U.S.C. § 1395oo(f)(1).

### B.     Reimbursement for Ambulance Services

During the early years of the Medicare program, providers were reimbursed for operating costs on the basis of either the "reasonable cost" of providing covered medical services or the "customary charges" for the services, whichever was less.  42 U.S.C. § 1395f(b)(1).  Consequently, providers had little incentive to economize because "[t]he more they spent, the more they were reimbursed."  Tucson Med. Ctr. v. Sullivan, 947 F.2d 971, 974 (D.C. Cir. 1991).

Congress sought to realign these incentives by adopting a series of reforms designed to promote "efficiency in the provision of services by rewarding cost/effective hospital practices."  H.R. Rep. No. 98-25(I), at 132 (1983), reprinted in 1983 U.S.C.A.A.N. 219, 351.  One such reform was section 4531(b)(2) of the Balanced Budget Act ("BBA") of 1997, which mandated the implementation of a national fee schedule for ambulance services furnished as a benefit under Medicare Part B.  42 U.S.C. § 1395m(l); see also 67 Fed. Reg. 9100, 9102 (Feb. 27, 2002).

Because the fee schedule did not take effect immediately,[2] however, the statute provided that "[t]he Secretary shall pay for hospital outpatient services that are ambulance services on the basis described in section 1395x(v)(1)(U) of this title, or, if applicable, the fee schedule established under section 1395m(l) of this title."  42 U.S.C. § 1395l(t)(10).  Section 1395x(v)(1)(U) provides that ambulance services are to be reimbursed on a reasonable cost basis.  See 42 U.S.C. § 1395x(v)(1)(U); see also 67 Fed. Reg. 9100, 9102 (Feb. 27, 2002); 65 Fed. Reg. 55078, 55078 (Sept. 12, 2000).  "Reasonable cost" is generally defined under the Medicare Act as "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services."  42 U.S.C. § 1395x(v)(1)(A).  In calculating the reasonable cost of ambulance services, the Act also established a cost per trip limit:

> In determining the reasonable cost of ambulance services (as described in subsection (s)(7) of this section) provided during fiscal year 1998, during fiscal year 1999, and during so much of fiscal year 2000 as precedes January 1, 2000, the Secretary shall not recognize the costs per trip in excess of costs recognized as reasonable for ambulance services provided on a per trip basis during the previous fiscal year (after application of this subparagraph), increased by the percentage increase in the consumer price index for all urban consumers (U.S. city average) as estimated by the Secretary for the 12-month period ending with the midpoint of the fiscal year involved reduced by 1.0 percentage point.

42 U.S.C. § 1395x(v)(1)(U).  Because the cost per trip method relies on "the previous fiscal year" as a baseline for cost calculations, those costs are sometimes referred to as "base year costs."

Another reform introduced by the BBA was a prospective payment system ("PPS") for hospital outpatient department ("OPD") services.  42 U.S.C. § 1395l(t).  Like the national fee schedule for ambulance services, the prospective payment system was designed to give providers

---

[2] Congress's intent was to have the fee schedule implemented by January 1, 2000.  Administrative Record ("AR") at 11.  However, the fee schedule did not take effect until April 1, 2002.  67 Fed. Reg. 9100, 9102 (Feb. 27, 2002).

the incentive to deliver care more efficiently. The definition of "'covered OPD services' . . . does not include any. . . ambulance services, for which payment is made under a fee schedule described in . . . section 1395m(l) of this section." 42 U.S.C. § 1395l(t)(1)(B)(iv). Thus, ambulance services are excluded from the OPD prospective payment system.

As an additional way to reduce costs, Congress also mandated an across-the-board reduction in all payments for outpatient hospital services.[3] "[W]ith respect to all the capital-related costs of outpatient hospital services, the Secretary shall reduce the amounts of such payments . . . by 10 percent." 42 U.S.C. § 1395x(v)(1)(S)(ii)(I). Likewise, "[t]he Secretary shall reduce the reasonable cost of outpatient hospital services (other than the capital-related costs of such services) . . . by 5.8 percent." 42 U.S.C. § 1395x(v)(1)(S)(ii)(II). These reductions are inapplicable "to payments with respect to the capital-related costs of any hospital that is a sole community hospital . . . or a critical access hospital." 42 U.S.C. § 1395x(v)(1)(S)(ii)(III).

## II.     Factual and Procedural Background

Decatur County General Hospital ("Decatur") and North Memorial Health Care ("North Memorial") are hospitals that provide ambulance services. Compl. ¶ 1; Def.'s Stmt. of Material Facts Not in Dispute ("Def.'s Stmt.") ¶ 1. Following unfavorable final decisions by the Administrator of CMS, the Hospitals brought this action challenging the amounts of their Medicare reimbursements for ambulance services provided during fiscal years 2000 (both) and 2001 (Decatur only). Compl. ¶ 1; Def.'s Stmt. ¶ 2; AR at 2-9, 1365-71.

Decatur appealed the NPRs for the 2000 and 2001 fiscal years to the PRRB. AR at 20-27, 1235-36. The issue before the PRRB was whether the "ambulance cost per trip limits were

---

[3] These reductions were originally implemented by Congress in the 1980s, but they were extended by the BBA. See 65 Fed. Reg. 18434, 18436-37 (Apr. 7, 2000).

improperly low because the Intermediary improperly applied the 5.8% outpatient operating cost reduction and the 10% outpatient capital cost reduction to base year costs utilized to calculate those limits." Id. at 21. North Memorial also filed an appeal with the PRRB contesting, inter alia, the intermediary's reimbursement determination for ambulance services provided during the 2000 fiscal year. Id. at 1382-88, 2219-20. Although not raised initially, North Memorial subsequently added to its appeal the identical issue presented by Decatur -- the intermediary's application of the 5.8 percent and 10 percent reductions to base year costs. Id. at 2203.

The PRRB rendered decisions in both cases on April 20, 2007, concluding that the ambulance services at issue were outpatient hospital services subject to the 5.8 and 10 percent cost reductions set forth in 42 U.S.C. § 1395x(v)(1)(S)(ii)(I)-(II), but also concluding that those reductions should not be applied to the base year costs. Id. at 24-27, 1385-88. That decision was based primarily on the PRRB's analysis of the relevant provisions of the Medicare Act, the BBA, and their enacting regulations. Id. Shortly thereafter, the intermediary requested that the CMS Administrator review the PRRB's decisions and reverse the finding that base year costs should not be reduced by the cost reduction factors. Id. at 16, 1378. CMS submitted comments in both cases supporting the intermediary's position, and asserting that the 5.8 and 10 percent reductions should be applied to the costs for ambulance services for the years in question. Id. at 10-11, 1372-73.

On June 27, 2007, the Administrator sided with the intermediary and CMS in reversing the challenged portions of the PRRB's decisions. Initially, the Administrator found that "the Board correctly determined [that] the ambulance services at issue are subject to the 5.8 percent and 10 percent cost reduction factors, as ambulance services are outpatient services." Id. at 6, 1369. Moreover, "[r]egarding whether the costs recognized as reasonable in the base year should

include the application of 5.8 percent and 10 percent reduction factors," id., the Administrator concluded that "application of these reductions to the cost per trip base year is consistent with the statutory language of [42 U.S.C. § 1395x(v)(1)(U)] and congressional concerns regarding escalating costs of outpatient and ambulance services," id. at 7, 1370.  The Administrator further stated that "[a]pplication of the cost reduction factors to the base year produces costs that are reasonable as recognized by the Secretary and effectuates the intent of Congress to reduce and avoid excess cost per trip."  Id.

Pursuant to 42 U.S.C. § 1395oo(f)(1), the Hospitals filed this action in August 2007 shortly after being notified of the Administrator's final decision.  The Hospitals allege that the Administrator's reimbursement decision violates the Medicare statute, applicable regulations, and policies and is "arbitrary, capricious, and unreasonable" in violation of the APA.  Compl. ¶¶ 22-26.  The Secretary asserts that the Administrator's decision is consistent with the text of the Medicare statute and regulations and, in any event, warrants deference because it is reasonable.

## STANDARD OF REVIEW

The Court's review of the Administrator's decision is informed by the deferential standard of review under the APA.  A court may vacate the agency's decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Agency actions are entitled to much deference, and the standard of review is narrow.  See Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971).  The reviewing court is not permitted to substitute its judgment for that of the agency.  See id.  That is, it is not enough for the agency decision to be incorrect -- as long as the agency decision has a rational basis, the court is bound to uphold it.  See id.  The court may only review the agency action to determine "whether

the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Id.

Because the Administrator's reimbursement decisions turned upon the interpretation of a statute, the familiar framework of Chevron USA, Inc. v. Natural Resources Defense Council, 467 U.S. 837 (1984), applies here. The first step is determining whether Congress has spoken directly to the "precise question at issue," for if it has, "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. at 842-43; State of New Jersey v. EPA, 517 F.3d 574, 581 (D.C. Cir. 2008). When determining "whether Congress has spoken to the precise question at issue," courts "must first exhaust the 'traditional tools of statutory construction.'" Natural Resources Defense Council v. Browner, 57 F.3d 1122, 1125 (D.C. Cir. 1995) (quoting Chevron, 467 U.S. at 843 n.9). This typically includes an analysis of "the Act's language, legislative history, structure, and purpose." New York v. EPA, 413 F.3d 3, 18 (D.C. Cir. 2005). If, however, the statute is silent or ambiguous on the specific issue, in the second step of the inquiry "the question for the court is whether the agency's answer is based on a permissible construction of the statute." Chevron, 467 U.S. at 843. When the agency's construction of a statute is challenged at Chevron step two, the agency's "interpretation need not be the best or most natural one by grammatical or other standards . . . . Rather [it] need be only reasonable to warrant deference." Pauley v. BethEnergy Mines, Inc., 501 U.S. 680, 702 (1991) (citations omitted).

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In a case involving review of a final agency action under the APA, 5 U.S.C. § 706, however, the standard set forth in Rule 56(c) does not

apply because of the limited role of a court in reviewing the administrative record.  See North Carolina Fisheries Ass'n v. Gutierrez, 518 F. Supp. 2d 62, 79 (D.D.C. 2007).  Under the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did."  Occidental Eng'g Co. v. INS, 753 F.2d 766, 769-70 (9th Cir. 1985).  Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review.  See Richards v. INS, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977), cited in Bloch v. Powell, 227 F. Supp. 2d 25, 31 (D.D.C. 2002), aff'd, 348 F.3d 1060 (D.C. Cir. 2003).  The same considerations regarding the deferential standard of review under the APA apply when a court considers whether summary judgment is appropriate.  See Overton Park, 401 U.S. at 416; Chevron, 467 U.S. at 842-43.

## DISCUSSION

**I.   Ambulance services are hospital outpatient services.**

The Hospitals contend that the Administrator reduced their reimbursement for ambulance services in part because he concluded erroneously that ambulance services are hospital outpatient services.  See Pls.' Mem. of P. & A. in Supp. of Mot. for Summ. J. ("Pls.' Mem.") at 13-15.  The Secretary responds that the Administrator reached this conclusion properly based on the language of the Medicare Act and the BBA, which establish unequivocally that ambulance services are in fact hospital outpatient services.  See Def.'s Mem. of P. & A. in Supp. of Mot. for Summ. J. and in Opp'n to Pls.' Mot. for Summ. J. ("Def.'s Mem.") at 10-12.  Because this dispute hinges on the

Administrator's interpretation of statutory language, the Court will analyze his decision under the familiar Chevron framework.

The first step under Chevron requires the Court to determine whether Congress "has directly spoken to the precise question at issue." Chevron, 467 U.S. at 842. At this stage, the Court employs the traditional tools of statutory construction -- i.e., the text, legislative history, structure, and purpose. See New York, 413 F.3d at 18. "When Congress has spoken, we are bound by that pronouncement and that ends this Court's inquiry." Nat'l Treasury Employees Union v. Federal Labor Relations Auth., 392 F.3d 498, 500 (D.C. Cir. 2004). Only when "Congress's intent is ambiguous" does the Court proceed to the second step of the inquiry and consider "whether the agency's interpretation is based on a permissible construction of the statute." New York, 413 F.3d at 18 (internal quotation marks omitted).

Here, the analysis ends at step one because a careful review of the relevant statutory provisions confirms that ambulance services are hospital outpatient services. The Hospitals assert that when Congress "wishes to refer to outpatient services, [it] does so by either expressly using the word 'outpatient' or by making an equivalently clear reference to the outpatient nature of the services." Pls.' Mem. at 13. Moreover, the Hospitals claim that "Congress . . . has never referred to ambulance services as 'outpatient services' nor described ambulance services in such a way as to suggest that they were outpatient services." Id. at 14. The text of the BBA, however, belies the Hospitals' assertions by providing a special rule for payment of ambulance services: "[t]he Secretary shall pay for <u>hospital outpatient services that are ambulance services</u> on the basis described in section 1395x(v)(1)(U) of this title, or, if applicable, the fee schedule established under section 1395m(l) of this title." 42 U.S.C. § 1395l(t)(10) (emphasis added). This statutory

language plainly states that ambulance services are a type of hospital outpatient services. The Hospitals never come to grips with this point.

The exclusion of ambulance services from the outpatient prospective payment system is also entirely consistent with the conclusion that ambulance services are nonetheless hospital outpatient services. The BBA provision that establishes a prospective payment system for hospital outpatient department ("OPD") services, 42 U.S.C. § 1395l(t), defines "covered OPD services" broadly. But ambulance services, therapy services, and screening and diagnostic mammographies are specifically excluded from the definition of "covered OPD services" for purposes of the prospective payment system. See 42 U.S.C. § 1395l(t)(1)(B)(iv). To the Hospitals, this exclusion signals that "ambulance services are not viewed by Congress as 'outpatient services' because ambulance services are not covered by [an] outpatient [prospective payment system]." Pls.' Mem. at 14. Closer examination reveals, however, that the Hospitals' contention is incorrect.

In excluding ambulance services from the outpatient prospective payment system, the statute provides that "'covered OPD services' . . . does not include . . . ambulance services, for which payment is made under a fee schedule described in . . . section 1395m(l) of this section." 42 U.S.C. § 1395l(t)(1)(B)(iv). Likewise, "therapy services described in subsection (a)(8) of this section . . . for which payment is made under a fee schedule described in section 1395m(k)" are also excluded from the definition of "covered OPD services." Id. But the therapy services described in (a)(8) are "outpatient physical therapy services." 42 U.S.C. § 1395l(a)(8). Given the title and definition of outpatient physical therapy services, then, such services are unquestionably hospital outpatient services. See 42 U.S.C. § 1395x(p). The plain language of section

-11-

1395l(t)(1)(B) establishes that therapy services have only been excluded from the outpatient prospective payment system because Congress established an alternative means -- a fee schedule -- to achieve its goals of greater efficiency and cost savings with respect to that particular outpatient service.

So, too, with respect to ambulance services. Because "payment is made [for ambulance services] under a fee schedule described in . . . section 1395m(l) of this section," 42 U.S.C. § 1395l(t)(1)(B)(iv), use of the prospective payment system is simply unnecessary. Indeed, the structure of the statute clarifies the reason for the exclusion by including the special payment rule for ambulance services within the same subsection that creates the prospective payment system for hospital outpatient department services. Compare 42 U.S.C. § 1395l(t)(1) with 42 U.S.C. § 1395l(t)(10). The inclusion of a special payment rule for ambulance services within a subsection detailing the methods of payment for hospital outpatient services would make little sense if ambulance services were not within the category of hospital outpatient services.[4] Thus, the exclusion of ambulance services from "covered OPD services" establishes that the Secretary shall not pay for hospital outpatient services that are ambulance services by utilizing the prospective payment system, but rather "[t]he Secretary shall pay for hospital outpatient services that are ambulance services on the basis described in section 1395x(v)(1)(U) of this title, or, if applicable, the fee schedule established under section 1395m(l) of this title." 42 U.S.C. § 1395l(t)(10).

The text, legislative history, structure, and purpose of the foregoing statutory provisions demonstrate, then, that "Congress has directly spoken to the precise question at issue," Chevron,

---

[4] The regulations governing the prospective payment system for OPD services also support this conclusion. See 42 C.F.R. § 419.22(i) (listing ambulance services as one of the "hospital outpatient services excluded from payment under the hospital outpatient prospective payment system").

467 U.S. at 842, i.e., whether ambulance services are hospital outpatient services. Accordingly, "we are bound by that pronouncement and that ends this Court's inquiry." Nat'l Treasury, 392 F.3d at 500; see also Chevron 467 U.S. at 842-43. The Court concludes therefore that the Administrator's finding that ambulance services are hospital outpatient services reflects the unambiguously expressed intent of Congress.

II.     **As hospital outpatient services, the 5.8 percent and 10 percent cost reduction factors apply to ambulance services.**

Having properly determined that ambulance services are hospital outpatient services, the Administrator also concluded that ambulance services were subject to cost reductions pursuant to 42 U.S.C. § 1395x(v)(1)(S)(ii)(I)-(II). Here too, Congress's intent is clear and the Administrator's determination will be upheld at Chevron step one.

The Medicare Act includes cost reduction factors of 10 percent and 5.8 percent, respectively, for capital-related costs of outpatient hospital services and the reasonable cost of outpatient hospital services other than capital-related costs. 42 U.S.C. § 1395x(v)(1)(S)(ii)(I)-(II). The Hospitals argue that "the plain language of the statute evidences that Congress intended the reductions to be limited to only those services that would be covered by outpatient PPS" because the 5.8 and 10 percent cost reductions "only applied until the Secretary implemented [an] outpatient [prospective payment system]." Pls.' Mem. at 14. But there is nothing in the language of section 1395x(v)(1)(S)(ii) that supports the Hospitals' position. Both cost reduction factors apply "to portions of cost reporting periods . . . until the first date that the prospective payment system under section 1395l(t) of this title is implemented." 42 U.S.C. § 1395x(v)(1)(S)(ii)(I)-(II). The language states, without qualification, that these reductions apply to "outpatient hospital services." Id. Rather than establishing that the cost reductions apply only to those services

-13-

covered by the outpatient prospective payment system, then, this language simply creates a temporal limitation on the provisions' applicability to all outpatient hospital services.  This conclusion is entirely consistent with Congress's purpose in enacting these cost reductions factors -- to foster provider efficiency and to control escalating hospital outpatient costs.[5]  Moreover, there is a carve-out provision that renders the cost reductions inapplicable "to payments with respect to the capital-related costs of any hospital that is a sole community hospital . . . or a critical access hospital."  42 U.S.C. § 1395x(v)(1)(S)(ii)(III).  Ambulance services are, quite plainly, not covered by this narrow carve-out.

Once again, Congress's intent is clear from the text, legislative history, structure, and purpose of section 1395x(v)(1)(S)(ii).  Hence, the Court's inquiry need go no further and the Administrator's finding that ambulance services, as hospital outpatient services, are subject to the 5.8 and 10 percent cost reduction factors will be sustained.

**III.    Application of the cost reduction factors to the base year costs was reasonable.**

Finally, and irrespective of any other issues, the Hospitals claim that the Secretary's decision to apply the 5.8 and 10 percent reduction factors to the base year costs was a violation of the BBA because the calculation of "costs recognized as reasonable" pursuant to 42 U.S.C. § 1395x(v)(1)(U) does not permit such reductions.  See Pls.' Mem. at 8-12.  In response, the Secretary argues that "although the cost-per-trip provision of the statute does not specifically

---

[5] "During the 1980s, the Congress took steps to control the escalating costs of providing outpatient care.  The Congress amended the statute to implement across-the-board reductions of 5.8 percent and 10 percent to the amounts otherwise payable by Medicare for hospital operating costs and capital costs, respectively, and enacted a number of different payment methods for specific types of hospital outpatient services."  65 Fed. Reg. 18434, 18436 (Apr. 7, 2000).  The 5.8 and 10 percent reductions were later extended by section 4522 of the BBA of 1997.  Id. at 18437.

mention application of the 5.8% and 10% reductions to ambulance services by name, such reductions are consistent with the language and the purpose of the statute, and there is nothing in the statute that precludes such application." Def.'s Mem. at 14 (emphasis in original). Therefore, the Secretary contends that "to the extent that the statutory language may be ambiguous, the Secretary's reading is reasonable, and is entitled to deference." Id. at 16. The Court agrees,[6] and also notes that with the exception of one conclusory footnote, the Hospitals did not attempt to rebut the Secretary's position in their opposition and reply. See Pls.' Opp'n to Def.'s Mot. for Summ. J. and Reply in Supp. of Mot. for Summ. J. ("Pls.' Opp'n") at 6 n.3.

In calculating the reasonable cost of ambulance services prior to the implementation of the fee schedule, the BBA established a cost per trip limit. See 42 U.S.C. § 1395x(v)(1)(U). In pertinent part, the cost per trip limit provides that "the Secretary shall not recognize the costs per trip in excess of costs recognized as reasonable for ambulance services provided on a per trip basis during the previous fiscal year." Id. Under the Medicare Act, "reasonable costs" are defined generally as "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services." 42 U.S.C. § 1395x(v)(1)(A). As discussed above, the Court has already concluded that the 5.8 and 10 percent cost reduction factors are generally applicable to calculate the cost of ambulance services because they are hospital outpatient services. Given these multiple considerations, how then is the Secretary to determine the "costs recognized as reasonable for ambulance services provided on a per trip basis during the previous fiscal year"?

---

[6] Although the Secretary argues, in the alternative, that the Court could end its inquiry at Chevron step one, see Def.'s Mem. at 14-16, he concedes that there may be some ambiguity in the statutory language, see id. at 16-19. The Court agrees and, hence, it will focus on step two of the Chevron inquiry.

The Administrator answered the question by concluding that "[t]he Secretary, in implementing the further cost containment measures reflected in the 'cost per trip' provision, reasonably determined that the costs 'recognized as reasonable' in the base year, should reflect the 10 percent and 5.8 percent reduction. That is, the base year costs, after application of the outpatient reductions, are in fact the costs 'recognized as reasonable' under the Medicare program." AR at 7, 1370. Moreover, he found "that the application of these reductions to the cost per trip base year is consistent with the statutory language of [42 U.S.C. § 1395x(v)(1)(U)] and congressional concerns regarding escalating costs of outpatient and ambulance services." Id. Lastly, the Administrator also noted that "[a]pplication of the cost reduction factors to the base year produces costs that are reasonable as recognized by the Secretary and effectuates the intent of Congress to reduce and avoid excess cost per trip." Id.

The Court, applying the deferential standard of review under the APA, agrees with the Administrator's assessment and finds that the decision to apply the reduction factors to arrive at "costs recognized as reasonable" for the base year costs of ambulance services was based on a permissible construction of the statute. See Chevron, 467 U.S. at 843; see also Overton Park, 401 U.S. at 416 (concluding that a court may only review the agency action to determine "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment"). Accordingly, the Administrator's interpretation is entitled to deference at Chevron step two and the Court will not disturb it.[7]

---

[7] The Secretary's decision is entitled to no less deference because he chose to act, through his designee the Administrator of CMS, by virtue of individualized adjudications rather than a general rulemaking. See SEC v. Chenery, 332 U.S. 194, 202 (1947); see also United States v. Mead, 533 U.S. 218, 229 (2001) ("We have recognized a very good indicator of delegation meriting Chevron treatment in express congressional authorizations to engage in the process of rulemaking or adjudication that produces regulations or rulings for which deference is claimed.").

**CONCLUSION**

For the foregoing reasons, the Court will deny the Hospitals' motion for summary judgment and will grant the Secretary's motion for summary judgment. A separate Order accompanies this Memorandum Opinion.

/s/
JOHN D. BATES
United States District Judge

Dated: March 17, 2009